CARTER L. NORFLEET, SBN 318152
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:   310.820.8800
Facsimile:    310.820.8859
Email:         cnorfleet@bakerlaw.com

*Attorneys for Defendant*
GENESCO INC.

# UNITED STATES DISTRICT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS LICEA, an individual,<br><br>                Plaintiff,<br><br>        v.<br><br>GENESCO INC., a Tennessee corporation; and DOES 1-10, inclusive,<br><br>                Defendant. | Case No.:<br><br>**NOTICE OF REMOVAL**<br><br>[Filed Concurrently with Civil Cover Sheet; Certification And Notice of Interested Parties; and Corporate Disclosure Statement]<br><br>Date Action Filed: December 30, 2019<br>FAC: August 31, 2020 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, Defendant Genesco, Inc. ("Defendant") hereby provides notice of removal of this action from the Superior Court of the State of California for the County of San Bernardino to the United States District Court for the Central District of California.  In support of this Notice of Removal, Defendant states as follows:

On December 30, 2019, Plaintiff Luis Licea filed a complaint against Defendant in the Superior Court of California for the County of San Bernardino, Case No. CIVDS1939376 (the "Action"). The Action asserted certain legal claims against Defendant under California's Unruh Civil Rights Act, California Civil Code §§ 51 *et seq.* ("Unruh Act").  On August 31, 2020, Plaintiff filed a First Amended Complaint in the Action to include additional allegations and to assert a claim arising under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.* ("ADA"). Defendant was served with a copy of the First Amended Complaint in the State Court Action on August 31, 2020.

**(a)**    This Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(3) because it is filed within 30 days after receipt by Defendant, through service or otherwise, of a copy of an amended complaint from which it could first be ascertained that the case is one which is or has become removable.

**(b)**    A copy of the Superior Court of California for the County of San Bernardino case docket as of the date of this filing is attached as Exhibit 1.  Pursuant to 28 U.S.C. §1446(a), all process, pleadings, and orders that have been filed and/or served in the State Court Action are attached hereto as Exhibit 2.

**(c)**    Pursuant to 28 U.S.C. §§ 1331 and 1441(a), removal is proper because Plaintiff's First Amended Complaint ("Complaint") includes claims arising under the laws of the United States.  Specifically, the Complaint includes claims under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**(d)**      Venue is also proper in the U.S. District Court for the Central District of California, because the State Court Action is pending within the jurisdictional confines of this Court.  28 U.S.C. § 1446(a).

**(e)**      Defendant will provide written notice of the filing of this Notice of Removal to Plaintiff and the Superior Court of California for the County of San Bernardino.

WHEREFORE, Defendant hereby removes this civil action to this Court on the basis of federal question jurisdiction.

Dated:  September 8, 2020

Respectfully submitted,

BAKER & HOSTETLER LLP

By: _____
       Carter L. Norfleet (318152)
       Email:  cnorfleet@bakerlaw.com

Attorneys for Defendant
GENESCO INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# EXHIBIT 1

# Actions

**Home**    **Complaints/Parties**    **Actions**    **Minutes**    **Pending Hearings**    **Case Report**    **Images**

Case Type: [                    ▾]

Case Number: [              ] [ Search ]

## Case CIVDS1939376 - LICEA V GENESCO INC.

[              ] [ Move To This Date ]

| Viewed | Date | Action Text | Disposition | Image |
|---|---|---|---|---|
|  | 11/06/2020 9:00 AM DEPT. S32 | HEARING RE: FURTHER TSC - Minutes |  |  |
| N | 08/17/2020 | ORDER ON STIP TO WITHDRAW DEMURRER/VACATE TSC/ ALLOW PLA TO AMEND COMPLAINT FILED | Not Applicable | 🖼 |
|  | 08/07/2020 10:00 AM DEPT. S32 | TRIAL SETTING CONFERENCE - Minutes | Pre-D Complete |  |
|  | 08/07/2020 10:00 AM DEPT. S32 | MOTION RE: DEMURRER TO COMPLAINT FILED BY DEFENDANT GENESCO INC., A TENNESSEE CORPORATION - Minutes | Off Calendar |  |
|  | 08/06/2020 | FILING FEE PAID BY GENESCO INC., A TENNESSEE CORPORATION FOR STIP FEE | Not Applicable |  |
| N | 07/31/2020 | REPLY TO IN SPPT TO MOTION RE: DEMURRER SET FOR HEARING ON 08/07/20 FILED BY GENESCO INC., A TENNESSEE CORPORATION. (IMAGED) | Not Applicable | 🖼 |
| N | 07/17/2020 | NOTICE (SECOND NOTICE) SUPPLEM AUTHORITY RE DEMURRER FILED BY LUIS LICEA. | Not Applicable | 🖼 |
|  | 06/30/2020 8:30 AM DEPT. S32 | TRIAL SETTING CONFERENCE | VACATED |  |
|  | 06/23/2020 | VACATE L&M HEARING SCHEDULED FOR 06/23/20 AT 08:30 IN DEPARTMENT S32. | Not Applicable |  |
|  | 06/23/2020 10:00 AM DEPT. S32 | MOTION RE: DEMURRER TO COMPLAINT FILED BY DEFENDANT GENESCO INC., A TENNESSEE CORPORATION - Minutes | Continued |  |
| N | 06/23/2020 | PLAS NOTICE TO SUPPLEMENTAL AUTHORITYRE: DEFENDANTS DEMURRER TO COMPLAINT FILED. | Not Applicable | 🖼 |
|  | 06/23/2020 8:30 AM DEPT. S32 | MOTION RE: DEMURRER TO COMPLAINT FILED BY DEFENDANT GENESCO INC., A TENNESSEE CORPORATION | VACATED |  |
|  | 06/19/2020 | FILING FEE PAID BY LUIS LICEA FOR STIP/ORDER TO CONTINUE TRIAL SETT. CONFERENCE | Not Applicable |  |
|  | 06/19/2020 | FILING FEE PAID BY LUIS LICEA FOR STIP TO CONTINUE DEMURRER HEARING | Not Applicable |  |
| N | 06/17/2020 | NOTICE OF RETURN OF DOCUMENT(S) | Not Applicable | 🖼 |
|  | 06/17/2020 | STIP TO CONTINUE 6/23/20 DEMURRER & 6/30/20 TSC IS RETURNED BY COURT FOR THE FOLLOWING REASON(S): MOTION DATE UNAVAILABLE- NEED 2 STIPS FOR DIFFERENT H. | Not Applicable |  |

| N | 06/17/2020 | INITIAL TRIAL SETTING CONFERENCE STATEMENT FILED BY | Not Applicable | |
| | 06/15/2020 | FILING FEE PAID BY LUIS LICEA FOR STIP/ORDER TO CONTINUE DEMURRER HEARING | Not Applicable | |
| N | 06/10/2020 | POINTS & AUTHORITIES FILED BY LUIS LICEA. | Not Applicable | |
| N | 06/10/2020 | EVIDENTIARY OBJECTIONS FILED. | Not Applicable | |
| | 05/18/2020 | FILING FEE PAID BY GENESCO INC., A TENNESSEE CORPORATION FOR FAX FILING | Not Applicable | |
| N | 05/18/2020 | NOTICE OF RETURN OF DOCUMENT(S) | Not Applicable | |
| | 05/18/2020 | DEMURRER TO COMPLAINT IS RETURNED BY COURT FOR THE FOLLOWING REASON(S): FILED ON 3/11/20. DUPLICATE. | Not Applicable | |
| | 04/30/2020 8:30 AM DEPT. S32 | MOTION RE: DEMURRER TO COMPLAINT FILED BY DEFENDANT GENESCO INC., A TENNESSEE CORPORATION | VACATED | |
| | 04/03/2020 | VACATE L&M HEARING SCHEDULED FOR 04/30/20 AT 08:30 IN DEPARTMENT S32. | Not Applicable | |
| N | 04/03/2020 | NOTICE IMAGED | Not Applicable | |
| | 04/03/2020 | ON COURT'S MOTION, THE DEMURRER TO COMPLAINT HEARING PRESENTLY SET IN THIS CASE, IS ORDERED RESET FOR 06/23/20 AT 08:30 IN DEPARTMENT S32. NOTICE SENT TO ALL COUNSEL OF RECORD. | Not Applicable | |
| | 04/03/2020 | ON THE COURTS OWN MOTION, THE COURT CONTINUES THIS MATTER PURS. TO GEN. ORDER OF TRHE PRESIDING JUDGE IN RE: IMPLEMENTATIN OF EMERGENCY RELIEF AUTHORIZED PURS. GC6815 BY CHAIR OF JUDICIAL COUNCIL. | Not Applicable | |
| N | 03/12/2020 | DECLARATION OF JOEL GRISWOLD IN SUPPORT OF DEMURRER FILED | Not Applicable | |
| N | 03/11/2020 | NOTICE OF DEMURRER FILED BY GENESCO INC., A TENNESSEE CORPORATION. | Not Applicable | |
| N | 03/11/2020 | REQUEST FOR JUDICIAL NOTICE FILED. | Not Applicable | |
| N | 03/11/2020 | DECLARATION OF JOHN TIGHE FILED | Not Applicable | |
| N | 03/11/2020 | DECLARATION OF GOOD FAITH ATTEMPT TO MEET & CONFER | Not Applicable | |
| N | 03/11/2020 | DEMURRER FILED BY GENESCO INC., A TENNESSEE CORPORATION; REPRESENTED BY BAKER & HOSTETLER LLP(IMAGED) | Not Applicable | |
| N | 03/05/2020 | ORDER BY STIPULATION EXTENDING TIME TO MARCH 11, 2020 TO RESPOND TO THE COMPLAINT FILED | Not Applicable | |
| | 02/24/2020 | DEFENDANT GENESCO INC., A TENNESSEE CORPORATION FIRST PAPER FEE PAID IN FULL | Not Applicable | |
| | 02/24/2020 | FILING FEE PAID BY GENESCO INC., A TENNESSEE CORPORATION FOR 1ST APPEARANCE | Not Applicable | |
| N | 02/24/2020 | STIPULATION RE: TO EXTEND TIME TO RESPOND TO COMPLAINT FILED. | Not Applicable | |
| N | 02/21/2020 | NOTICE OF RETURN OF DOCUMENT(S) | Not Applicable | |
| | 02/21/2020 | STIP/ORDER TO EXTEND TIM TO RESPOND + $20 CK IS RETURNED BY COURT FOR THE FOLLOWING REASON(S): RE-SUBMIT WITH 1ST APPEARANCE FEE OF $435. | Not Applicable | |
| | 02/21/2020 | ON COMPLAINT (UNLIMITED) FILED 12/30/2019 OF LUIS LICEA FOR | Not | |

| | | | | |
|---|---|---|---|---|
| | | GENESCO INC., A TENNESSEE CORPORATION, ATTORNEY BAKER & HOSTETLER LLP ADDED. | Applicable | |
| N | 01/22/2020 | PROOF OF SERVICE OF SUMMONS AND COMP/PET ON GENESCO INC., A TENNESSEE CORPORATION; DEFENDANT/RESPONDENT SERVED ON 01/08/20 WITH COSTS OF $119.00 FILED. | Not Applicable | 🖼 |
| | 12/30/2019 | PLAINTIFF LUIS LICEA FIRST PAPER FEE PREVIOUSLY PAID IN FULL. | Not Applicable | |
| | 12/30/2019 | FILING FEE PAID BY LUIS LICEA FOR 1ST APPEARANCE | Not Applicable | |
| N | 12/30/2019 | CERTIFICATE OF ASSIGNMENT RECEIVED. | Not Applicable | 🖼 |
| N | 12/30/2019 | NOTICE IMAGED | Not Applicable | 🖼 |
| | 12/30/2019 | CASE ASSIGNED FOR ALL PURPOSES TO DEPARTMENT S32 | | |
| N | 12/30/2019 | CIVIL CASE COVER SHEET FILED. | Not Applicable | 🖼 |
| N | 12/30/2019 | SUMMONS ISSUED AND FILED | Not Applicable | 🖼 |
| N | 12/30/2019 | COMPLAINT AND PARTY INFORMATION ENTERED | Not Applicable | 🖼 |

# EXHIBIT 2

1   PACIFIC TRIAL ATTORNEYS
    A Professional Corporation
2   Scott J. Ferrell, Bar No. 202091
    sferrell@pacifictrialattorneys.com
3   Victoria C. Knowles, Bar No. 277231
    vknowles@pacifictrialattorneys.com
4   4100 Newport Place Drive, Ste. 800
    Newport Beach, CA  92660
5   Tel: (949) 706-6464
    Fax: (949) 706-6469
6
    Attorneys for Plaintiff
7

8

9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                **FOR THE COUNTY OF SAN BERNARDINO**

11

12  LUIS LICEA, an individual,              Case No. CIVDS1939376

13              Plaintiff,
                                            **FIRST AMENDED COMPLAINT**
14              v.

15  GENESCO INC., a Tennessee corporation; and   Filed: December 30, 2019
    DOES 1-10, inclusive,                         Trial Date: None Set
16
                Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Luis Licea ("Plaintiff") alleges the following upon information and belief based upon investigation of counsel, except as to his own acts, which he alleges upon personal knowledge:

## INTRODUCTION

1.      As recently recognized by the Supreme Court of the United States, "The Internet's prevalence and power have changed the dynamics of the national economy."  *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018) (noting that in 1992, less than 2 percent of Americans had Internet access whereas today that number is about 89 percent).  According to 2018 polling data, 89 percent of American adults use the Internet.[1]  Indeed, one federal district court has noted that "few areas are more integral to 'the economic and social mainstream of American life,' than the Internet's websites."  *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *9 (S.D.N.Y. Dec. 20. 2017); *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001) ("Computers and Internet access have become virtually indispensable in the modern world of communications and information gathering.").

2.      According to recent U.S. Census data, approximately 8 million Americans describe themselves as disabled because they are visually-impaired.[2]  Thus, depriving blind persons of equal access to commercial websites on the internet would allow American businesses to treat blind persons as second-class citizens who can be segregated from the rest of American society, which is antithetical to the very purpose that motivated Congress to enact the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.* ("ADA"), almost three decades ago, as well as the enactment of California's Unruh Civil Rights Act.  "'Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.'"  *Del-Orden*, 2017 WL 6547902, at *9 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75, 121 S. Ct.

---

[1]  http://www.pewinternet.org/fact-sheet/internet-broadband/ (last visited July 30, 2018).  Indeed, 98 percent of adults between the ages of 18-29 use the Internet, and 97 percent of adults between the ages of 30-49 use the Internet.  *Id.*

[2]  In 2016, an estimated 7.7 million Americans reported having a visual disability. http://www.disabilitystatistics.org/reports/acs.cfm?statistic=1 (last visited July 30, 2018).  The statistics were calculated by the Cornell University Yang Tan Institute using the U.S. Census Bureau's 2016 American Community Survey (ACS) Public Use Microdata Sample (PUMS) data.  The estimate is based on a sample of 3,085,278 persons who participated in the 2016 ACS.

1879 (2001) (quoting 42 U.S.C. § 12101(a)(2))).  "Congress found that 'physical or mental disabilities in no way diminish a person's right to fully participate in *all aspects of society*, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination.'"  *Del-Orden*, 2017 WL 6547902, at *9 (quoting 42 U.S.C. § 12101(a)(1)) (emphasis added in *Del-Orden*).  "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'"  *PGA Tour*, 532 U.S. at 675 (quoting S. Rep. No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), U.S.C.C.A.N. 1990, pt. 2, pp. 303, 332).  To remedy these ills, "Congress provided [a] broad mandate" in the ADA to effect the statute's "sweeping purpose."  *Id.*  "In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would[:] 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages *available indiscriminately to other members of the general public*'".  *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (emphasis added) (quoting *Carparts Distrib. Ctr. v. Auto Wholesaler's Ass'n*, 37 F.3d 12, 20 (1st Cir. 1994)).

3.      Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA, shall also constitute a violation of the Unruh Civil Rights Act.  A person who visits a business's website with intent to use its services and encounters terms or conditions that exclude the person from full and equal access to its services has standing under the Unruh Act, with no further requirement that the person enter into an agreement or transaction with the business.  *White v. Square, Inc.,* 7 Cal.5th 1019, 2019 WL 3771912, at *7 (Cal. Sup. Ct. Aug. 12, 2019).

4.      Plaintiff is a blind individual who requires screen reading software to read website content and access the internet.  Defendant Genesco Inc. ("Defendant") maintains its website, journeys.com (the "Website") in such a way that it contains numerous access barriers preventing Plaintiff, and other blind and visually-impaired individuals, from gaining equal access to the Website.  Defendant's denial of full and equal access to its website, and therefore its products and services

offered thereby, is a violation of Plaintiff's rights under the ADA and California's Unruh Civil Rights Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action.  This Court has personal jurisdiction over Defendant because Defendant has conducted and continues to conduct substantial business in the State of California, and because Defendant's offending website is available across California.

6.      Venue is proper in this Court because Defendant conducts substantial business in this County, and because a substantial portion of the misconduct alleged herein occurred in the County of San Bernardino.

## PARTIES

7.      Plaintiff Luis Licea resides in San Bernardino County, California.  Plaintiff is permanently blind and uses screen readers in order to access the internet and read website content.  At all relevant times, as detailed above, despite several attempts to use and navigate the Website, Plaintiff was denied the full use and enjoyment of the facilities and services of the Website as a result of accessibility barriers on the Website.  At all relevant times, the access barriers on the Website caused a denial of Plaintiff's full and equal access multiple times in the past, and deterred Plaintiff on a regular basis from accessing Defendant's Website.  Similarly, at all relevant times the access barriers on the Website deterred Plaintiff from visiting Defendant's California retail location.

8.      While Plaintiff genuinely wants to avail himself of Defendant's goods and services as offered on Defendant's Website, Plaintiff has a dual motivation: he is also a "tester," which one federal court has defined to be "individuals with disabilities who visit places of public accommodation to determine their compliance with Title III [of the ADA]."  *Harty v. Burlington Coat Factory of Penn., L.L.C.*, Civil Action No. 11-01923, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011).  Indeed, it is widely accepted that "testers" such as Plaintiff advance important public interests and should be "praised rather than vilified."  *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).  Plaintiff has filed multiple lawsuits against various operators of commercial websites under the Unruh Civil Rights Act as part of his advocacy work on behalf of the civil rights of visually-

1    impaired persons.  Plaintiff intends to continue to engage in such advocacy work into the foreseeable

2    future to ensure that Defendant's commercial Website and others are fully and equally enjoyable to

3    and usable by visually-impaired persons, including himself.

4         9.      Plaintiff is informed and believes, and thereon alleges, that Defendant Genesco Inc. is a

5    Tennessee corporation with its principal place of business located in Nashville, Tennessee.  Plaintiff is

6    informed and believes, and thereon alleges, that Defendant owns and operates a retail location in

7    California.  This location constitutes a place of public accommodation.  Defendant's location provides

8    to the public important goods and/or services.  Defendant also provides to the public the Website.  The

9    Website provides access to Defendant's array of services, including a store locator for its locations,

10   descriptions of its products, amenities and services, and many other benefits related to these facilities

11   and services.  Defendant's locations are public accommodations within the definition of Title III of the

12   ADA and are likewise "business establishments" within the meaning of the California Civil Code § 51

13   et seq.  The Website is a service, privilege, and advantage and accommodation of Defendant's services

14   and locations.  The Website is a service, privilege, advantage, and accommodation that is heavily

15   integrated with Defendant's store locations.

16        10.     At all relevant times, each and every Defendant was acting as an agent and/or employee

17   of each of the other Defendants and was acting within the course and/or scope of said agency and/or

18   employment with the full knowledge and consent of each of the Defendants.  Each of the acts and/or

19   omissions complained of herein were alleged and made known to, and ratified by, each of the other

20   Defendants (Genesco Inc. and DOE Defendants will hereafter collectively be referred to as

21   "Defendant").

22        11.     The true names and capacities of the Defendants sued herein as DOES 1 through 10,

23   inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by fictitious names.

24   Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged

25   herein.  Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and

26   capacities of the DOE Defendants when such identities become known.

27                                        **FACTS**

28

12.     The Internet has become a significant source of information, a portal and tool for conducting business, and a means for doing everyday activities such as shopping, banking, etc. for both the sighted and blind, and/or visually-impaired persons.

13.     Blind individuals may access websites by using keyboards in conjunction with screen-reading software that vocalizes visual information on a computer screen.  Screen access software provides the only method by which a blind person may independently access the internet.  Unless websites are designed to be read by screen reading software, blind persons are unable to fully access websites and the information, products and services, privileges, advantages, and accommodations contained thereon.

14.     The international website standards organization, W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0").  WCAG 2.0 are well-established, industry standard guidelines for ensuring websites are accessible to blind and visually-impaired people.  These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible.  These guidelines recommend several basic components for making websites accessible including, but not limited to, adding invisible alternative text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible, and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader.

15.     Defendant offers the Website, which provides, as set forth above, a breadth of information concerning its products and other amenities and services, privileges, advantages, and accommodations, and allows users to find a retail location to visit.

16.     Based on information and belief, it is Defendant's policy and practice to deny blind users, including Plaintiff, equal enjoyment of and access to the Website.  Due to Defendant's failure and refusal to remove access barriers on the Website, Plaintiff and other blind and visually impaired individuals were denied equal enjoyment of and access to the retail locations and to Defendant's other services, advantages, privileges, and accommodations offered to the public through the Website.

17.     Defendant has denied blind individuals equal enjoyment of and access to the products, services, privileges, advantages, and accommodations and information made available through the Website by preventing them from freely navigating the Website.  The Website contains access barriers that prevent free and full use by Plaintiff and other blind persons using screen reading software.

18.     The Website's barriers are pervasive and include, but are not limited to, the following: (1) Missing alternative text which presents a problem because an image without alternative text results in an empty link.  Alternative Text is invisible code embedded beneath a graphical image on a website. Web accessibility requires that Alternative Text be coded with each picture so that a screen reader can speak the Alternative Text where a sighted user sees pictures.  Alternative Text does not change the visual presentation, but instead generates a text box that will pop-up when the mouse moves over the picture.  The lack of Alternative Text on these graphics prevents screen readers from accurately vocalizing a description of the graphics; (2) Empty headings, which present no information and may introduce confusion; and (3) Empty links that contain no text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen reader users.

19.     Due to the inaccessibility of the Website, blind and otherwise visually impaired customers who use screen readers have been hindered from effectively browsing for Defendant's products, amenities and services, privileges, advantages, and accommodations that exist online unlike sighted users.  If the Website were accessible, Plaintiff would independently and privately investigate Defendant's products, services, privileges, advantages, accommodations, and amenities, as sighted individuals can and do.

20.     Despite several attempts to access the Website in recent months, the numerous access barriers contained on Defendant's website have denied Plaintiff full and equal access, and deterred Plaintiff on a regular basis from accessing the Website.  Similarly, based on the numerous access barriers contained on the Website, Plaintiff has been deterred from purchasing Defendant's products as Plaintiff would have been able to do by using the Website.  Plaintiff continues to attempt to utilize the Website and plans to continue to attempt to utilize such Website in the near future.  Plaintiff's dignitary interests as a disabled person has been harmed by Defendant's actions.

/ / /

**FIRST CAUSE OF ACTION**

**Violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.***

**(By Plaintiff Against All Defendants)**

21.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

22.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

23.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations"; and "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden".  42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).  "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense."  28 C.F.R. § 36.303(a).  In order to be effective, auxiliary aids and services must be

provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

24.    Defendant's Website constitutes a "public accommodation" within the meaning of 42 U.S.C. § 12181 *et seq.* Defendant generates millions of dollars in revenue from the sale of its products and services, privileges, advantages, and accommodations.  The Website is a service, privilege, advantage, and accommodation provided by Defendant that is inaccessible to patrons who are visually-impaired like Plaintiff.  This inaccessibility denies visually-impaired patrons full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that Defendant made available to the non-disabled public.  Defendant is violating the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, in that Defendant denies visually-impaired customers the services, privileges, advantages, and accommodations provided by the Website.  These violations are ongoing.

25.    Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.,* in that: Defendant has constructed a website that is inaccessible to Plaintiff; knowingly maintains the website in this inaccessible form; and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

26.    Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

**SECOND CAUSE OF ACTION**

**Violations of the Unruh Civil Rights Act, California Civil Code § 51 *et seq.***

**(By Plaintiff Against All Defendants)**

27.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

28.    California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever.  Defendant is systematically violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*

29.     The Website is a "business establishment" within the meaning of the California Civil Code § 51 et seq. Defendant generates hundreds of thousands of dollars in revenue from the sale of its goods and services in California through the Website. The Website is a service provided by Defendant that is inaccessible to patrons who are visually-impaired like Plaintiff. This inaccessibility has denied visually-impaired patrons full and equal access to the facilities and services that Defendant makes available to the non-disabled public. Defendant has violated the Unruh Civil Rights Act by denying visually-impaired customers the services and products provided by the Website. These violations are ongoing.

30.     Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability in violation of the Unruh Civil Rights Act because Defendant has constructed a Website that is inaccessible to Plaintiff, knowingly maintains the Website in this inaccessible form, and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

31.     Defendant is also violating the Unruh Civil Rights Act because the conduct alleged herein likewise constitutes a violation of various provisions of the ADA, 42 U.S.C. § 12101 et seq. Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

32.     The actions of Defendant were and are in violation of the Unruh Civil Rights Act and, therefore, Plaintiff is entitled to injunctive relief remedying the discrimination.

33.     Plaintiff is also entitled to a preliminary and permanent injunction enjoining Defendant from violating the Unruh Civil Rights Act and requiring Defendant to take the steps necessary to make the Website readily accessible to and usable by visually-impaired individuals.

34.     Plaintiff is also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense. Plaintiff is also entitled to reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

1.     For a judgment that Defendant violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. and the Unruh Civil Rights Act, California Civil Code § 51 et seq.;

2.    For a preliminary and permanent injunction requiring Defendant to take the steps necessary to make the Website, journeys.com, readily accessible to and usable by visually-impaired individuals;

3.    An award of statutory minimum damages of $4,000 per violation pursuant to section 52(a) of the California Civil Code;

4.    For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, California Civil Code § 52(a);

5.    For pre-judgment interest to the extent permitted by law;

6.    For costs of suit; and

7.    A judgment for all such other relief as this Court deems just and proper.

Dated:  August 31, 2020        PACIFIC TRIAL ATTORNEYS, APC

By:_____
Scott. J. Ferrell
Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this lawsuit.

Dated:  August 31, 2020                                    PACIFIC TRIAL ATTORNEYS, APC

By:_____

Scott. J. Ferrell
Attorneys for Plaintiff

1 | SCOTT J. FERRELL, SBN 202091
VICTORIA C. KNOWLES, SBN 277231
2 | **PACIFIC TRIAL ATTORNEYS, APC**
4100 Newport Place Drive, Suite 800
3 | Newport Beach, CA 92660
Tel: (949) 706-6464
4 | Fax: (949) 706-6469
Email:
5
*Attorneys for Plaintiff*
6 | *LUIS LICEA*

7 | CARTER L. NORFLEET, SBN 280725
**BAKER & HOSTETLER LLP**
8 | 11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
9 | Telephone:     310.820.8800
Facsimile:     310.820.8859
10 | Email:          cnorfleet@bakerlaw.com

11

*Attorneys for Defendant*
12 | GENESCO INC.

13 |                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14 |                        **COUNTY OF SAN BERNARDINO**

15 | LUIS LICEA, an individual,                    Case No.: CIVDS1939376

16 |             Plaintiff,                        [Honorable Wilfred J. Schneider, Jr., Dept. S32]

17 |        v.

**STIPULATION TO WITHDRAW**
18 | GENESCO INC., a Tennessee corporation; and     **PENDING DEMURRUER; VACATE**
DOES 1-10, inclusive,                          **DEMURRER HEARING AND TRIAL**
19 |                                               **SETTING CONFERENCE; AND TO**
            Defendant.                            **ALLOW PLAINTIFF TO FILE AN**
20 |                                               **AMENDED COMPLAINT;**
                            **[**~~PROPOSED~~**] ORDER**
21

22

23 |                                               Action Filed:  December 30, 2019

24

25

26

27

28

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

AUG 1 7 2020

By _____
                        Deputy

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiff LUIS LICEA ("Plaintiff") and Defendant GENESCO INC. ("Genesco" and together with Plaintiff, the "Parties"), by and through their respective counsel of record, stipulate, subject to approval by the Court, as follows:

1.      The trial setting conference and hearing on Defendant's Demurrer in this matter are set for August 7, 2020 pursuant to this Court's order.

2.      The Parties have agreed that Plaintiff will have 14 days from the filing of this Stipulation to file an amended complaint with this Court.

3.      To promote judicial economy and preserve the Parties' and this Courts resources, the Parties have agreed, subject to the Court's approval, that Defendant will withdraw its pending Demurrer without prejudice and the Parties will vacate the hearing scheduled for August 7, 2020. The Parties have also agreed, subject to the Court's approval, to vacate the trial setting conference in the matter scheduled for August 7, 2020.  The Parties further agree, subject to the Court's approval, that Plaintiff will file an amended complaint with this Court within 14 days from the filing of this Stipulation. The Parties agree that this proposed course of action is the best use of resources at this time.

IT IS SO STIPULATED.

Dated:    August 5, 2020

PACIFIC TRIAL ATTORNEYS

By: _____
SCOTT J. FERRELL
VICTORIA C. KNOWLES

Attorneys for Plaintiff
LUIS LICEA

Dated:    August 5, 2020

BAKER & HOSTETLER LLP

By: _____
CARTER L. NORFLEET

Attorneys for Defendant
GENESCO INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**(~~PROPOSED~~) ORDER**

Having considered the Parties' Stipulation and good cause appearing, the Court grants the Stipulation and ORDERS:

1. The hearing set for Defendant's Demurrer to Plaintiff's Complaint scheduled for August 7, 2020 is _____.

2. The trial setting conference scheduled for August 7, 2020 is 11·6·2020

3. Plaintiff has 14 days from the date this Stipulation was filed to file an amended complaint with this Court.

IT IS SO ORDERED.

Dated: _8/17/2020_       _[signature]_

HONORABLE WILFRED J. SCHNEIDER, JR.

Wilfred J. Schneider, Jr.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## **PROOF OF SERVICE**

I am employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA  90025-0509.  On **August 5, 2020**, I served a copy of the within document(s):  **STIPULATION TO WITHDRAW PENDING DEMURRUER; VACATE DEMURRER HEARING AND TRIAL SETTING CONFERENCE; AND TO ALLOW PLAINTIFF TO FILE AN AMENDED COMPLAINT; [PROPOSED] ORDER**

☑     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐     by placing the document(s) listed above in a sealed  envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an Overnite agent for delivery.

☐     by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐     by causing to be personally delivered by an ATTORNEY SERVICE the document(s) listed above to the address(es) set forth below.

☐     by transmitting via electronic mail the document(s) listed above to the e-mail address(es) set forth below on this date before 5:00 p.m. and the transmission was reported as complete and without error.

Scott J. Ferrell, Esq.
Victoria C. Knowles, Esq.
**PACIFIC TRIAL ATTORNEYS, APC**
4100 Newport Place Drive, Suite 800
Newport Beach, CA  92660


I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on **August 5, 2020**, at Los Angeles, California.

_____
Denise Walker

1  Carter L. Norfleet (318152)
   BAKER & HOSTETLER LLP
2  11601 Wilshire Boulevard
   Suite 1400
3  Los Angeles, CA  90025-0509
   Telephone:     310.820.8800
4  Facsimile:     310.820.8859
   Email:         cnorfleet@bakerlaw.com
5
   Attorneys for Defendant
6  GENESCO INC.

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF SAN BERNARDINO

10 LUIS LICEA, an individual,          Case No.: CIVDS1939376

11              Plaintiff,             [Hon. Wilfred J. Schneider, Jr. Dept. S32]

12     v.                             **DEFENDANT'S REPLY IN SUPPORT
                                       OF IT'S DEMURRER TO COMPLAINT**
13 GENESCO INC., a Tennessee corporation;
   and DOES 1-10, inclusive,          Date:      August 7, 2020
14                                     Time:      10:00 a.m.
                Defendant.             Dept:      S32
15
                                       Date Action Filed:  December 30, 2019
16                                     Trial Date:  TBA

17

18        Defendant Genesco Inc. ("Defendant" or "Genesco"), by and through its undersigned

19 counsel, hereby files its Rely in Support of its Demurrer to Plaintiff Luis Licea's Complaint

20 ("Complaint") and respectfully moves this Court to sustain its Demurrer and dismiss the

21 Complaint without leave to amend for the reasons set forth herein.

22

23

24

25

26

27

28

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JUL 29 2020

By _____
                        Deputy

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

4816-7282-2982.1

1   **I.**       **INTRODUCTION**

2            Plaintiff's Opposition scarcely contains any argument that could help the Court evaluate

3   Defendant's Demurrer or the sufficiency of Plaintiff's Complaint. In the Opposition, Plaintiff

4   discusses at great length topics not broached by the Demurrer; he proffers facts not pled in, or

5   attached to, the Complaint (or the Opposition for that matter); and he relies on inapposite case law

6   and applies faulty analysis regarding what constitutes relevant binding precedent. Upon

7   appropriately setting aside these arguments, there is very little Opposition left to consider. And,

8   that which remains does not refute the firmly established bases for dismissal submitted in

9   Defendant's Demurrer. Accordingly, as discussed in more detail below, the Court should grant

10  Defendant's largely unopposed Demurrer and dismiss Plaintiff's Complaint without leave to

11  amend.

12  **II.**      **AGRUMENT**

13           **A.**       **Plaintiff's Opposition is Not Responsive to the Demurrer**

14           In his Opposition, Plaintiff mainly argues against himself. The majority of the 26-page

15  Opposition is devoted to countering arguments Defendant never raised in its Demurrer. (*See e.g.*,

16  Op. at §§ A (1) and C (1-8).) Notably, Plaintiff fills most of his Opposition pages with discussion

17  of the applicability of the "nexus" requirement, which is neither argued nor implicated by the

18  arguments in Defendant's Demurrer. (*See Id.*) Defendant will not respond to these red herrings

19  here but will instead refocus the briefing on the arguments at hand.

20           To reiterate, Defendant's Demurrer consisted of two arguments. One, Plaintiff did not

21  adequately plead and cannot prove that Defendant intentionally discriminated against him, which

22  is a necessary element of Plaintiff's Unruh Civil Rights Act, California Civil Code § 51 *et seq.*

23  ("Unruh Act"), claim. *And, two,* Defendant's website journeys.com complies with the Americans

24  with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"); therefore, even if Plaintiff amended the

25  Complaint to include an ADA claim, the Complaint would still fail to state a cause of action.

26           The Court should summarily disregard Plaintiff's voluminous and distracting discourse

27  that has nothing to do with the arguments up for consideration on Defendant's Demurrer.

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

4816-7282-2982.1

**B.** **Plaintiff Has Not Adequately Pled Intentional Discrimination, Nor Can He Prove It**

    **1.** **Plaintiff's Newly Alleged Support For Intentional Discrimination Was Not Pled In the Complaint and Therefore Should Not be Considered**

Plaintiff urges the Court to determine he has met his pleading burden with respect to Defendant's alleged intentional discrimination by referencing facts that were not in fact pled in the Complaint. But, "[a] demurrer tests the legal sufficiency of factual allegations *in a complaint*," not facts that can be conjured up in the opposition. *Rakestraw v. California Physicians' Service* (2000) 81 Cal. App. 4th 39, 42 (emphasis added.)

For the first time in his Opposition, Plaintiff alleges that "the Court can and should determine that Plaintiff has satisfied his burden to plead ultimate facts, if not evidentiary facts, of intentional discrimination by Defendant because Defendant, the owner and operator of the Website, knew of the accessibility problems Plaintiff had with the Website by no later than the timeframe when Defendant received Plaintiff's counsel's pre-filing demand letter dated April 2, 2019, but nevertheless took no steps to address the communication barriers specifically encountered by Plaintiff to make the Website accessible, making the filing of this action necessary." (Op. at p. 12.)

This purported pre-filing demand letter, however, was not referenced or quoted in the Complaint. Nor was it attached to the Complaint. *See Holly Sugar Corp. v. McColgan* (1941) 18 Cal.2d 218 ("It is well settled that a written instrument which is the foundation of a cause of action may be pleaded . . . either by setting forth a copy in the body of the complaint or by attaching a copy as an exhibit and incorporating it by proper reference."). And, most importantly, Plaintiff's alleged pre-filing demand letter was not offered as support for Defendant's alleged intentional discrimination in the Complaint. Furthermore, Defendant has no record of receiving such a letter either on April 2, 2019 or at any other time prior to filing.[1]

Contrary to Plaintiff's claims, the Court is most certainly **not** "required to assume as true" (Op. at p. 12) these unpled facts and conclusions related to the alleged pre-filing demand letter

---

[1] To the extent the Court considers Plaintiff's unsworn and unpled representations regarding sending a pre-filing demand letter, the Court should too consider Defendant's representations regarding receipt of such letter.

- 3 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

4816-7282-2982.1

1   and its undisclosed contents. *See e.g., Czajkowski v. Haskell & White, LLP* (2012) 208 Cal. App.

2   4th 166 ("On demurrer, a court must accept ***properly pleaded facts*** as true, but a demurrer does

3   not admit the plaintiff's contentions nor conclusions of law or fact.") (emphasis added.)

4          Plaintiff also boldly relies on these unpled facts while attempting to distinguish one of the

5   cases cited by Defendant in its Demurrer. According to Plaintiff, *Greater Los Angeles Agency on*

6   *Deafness, Inc. v. Cable News Network, Inc.*, (9th Cir. 2014) 742 F.3d 414, 425, cannot apply here

7   because that defendant at least attempted to provide an accommodation in response to a prior

8   demand letter; whereas, here, "no such attempt was made to accommodate Plaintiff's request to

9   remove communication barriers from Defendant's Website (despite Defendant being put on

10  notice as to Plaintiff's explicit accommodation request for more than eight months before filing

11  suit." Of course, in actuality, Defendant is not even now on notice of the contents of this

12  purported pre-filing accommodation request. It was not mentioned in the Complaint, and

13  tellingly, is again not described or quoted in, or attached to, Plaintiff's Opposition. If this pre-

14  filing demand letter even exists (which Defendant contests), neither Defendant nor the Court has

15  been provided the opportunity to ascertain its contents, let alone rely on it to distinguish case law

16  or to "infer" that Defendant intentionally discriminated against Plaintiff.

17         For the foregoing reasons, the Court should therefore disregard all references to Plaintiff's

18  alleged pre-filing demand letter, which was not mentioned in, nor attached to, the Complaint (or

19  any other filing). Because Plaintiff provides no other support for Defendant's claimed intentional

20  discrimination, a necessary element of Plaintiff's Unruh Act claim, Defendant's Demurer should

21  be sustained.

22         **2.    The Cases Plaintiff Cites In Support Of A Finding of Intentional**
              **Discrimination Are Inapposite**

23         Plaintiff continues his strategy of revisionist history by arguing that "two recent federal

24  district court decisions, [] [*Martinez and Thurston*] held that nearly identical complaints plausibly

25  alleged intentional discrimination in violation of the Unruh Act." (Op. at p. 13.) These cases,

26  however, are by no means "nearly identical" to the case at hand.

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

1    In both *Martinez v. Adidas America, Inc.* (July 9, 2019) 2019 WL 3002864 and *Thurston*

2    *v. ClearPath Lending, Inc.* (Jan. 28, 2019) 2019 WL 366405, the courts were considering remand,

3    not the sufficiency of the complaint. Additionally, the *Martinez* plaintiffs' theory of intentional

4    discrimination was based on the following allegations in the complaint: "they sent Defendant a

5    letter notifying it about the website's UCRA violation before they filed the Complaint," and

6    "Defendant ignored the notice and failed to make changes to their website which would ensure

7    accessibility." *Martinez*, 2019 WL 3002864, at *4.

8    Here, although Plaintiff now attempts to retroactively add similar allegations to his

9    Complaint, such allegations were not actually pled or supported in the Complaint. It is unclear

10   how the *Martinez* and *Thurston* courts would have ruled on a demurrer (which tests the

11   sufficiency of the allegations in the complaint), rather than a motion for remand (which does not),

12   where, as here, such allegations were not actually pled. Accordingly, these decisions are

13   unhelpful in resolving the present issues.

14   Plaintiff also inaptly argues that the Court is bound by the California Court of Appeal's

15   decision in *Ruiz v. Musclewood Inv. Props., LLC* (2018) 28 Cal. App. 5th 15. (Op. at pp. 10, 13.)

16   *Ruiz* is neither binding nor is it on point. Plaintiff's zealous reliance on *Ruiz* is, in fact, somewhat

17   puzzling. *Ruiz* is based on a claim under the Disabled Persons Act, Civ. Code, § 54 *et seq.*

18   ("DPA"), not Unruh or even the ADA, and its ***dicta related to intent (not binding precedent)***,

19   reproduced in full below, could not be any less germane to the case at hand:

20

21   > We need not decide for purposes of resolving plaintiff's appeal
     > from the demurrer ruling here whether section 54.3 should be

22   > construed to include an intent element, i.e., that liability may only
     > attach where a plaintiff alleges not only interference with

23   > admittance to or enjoyment of public facilities, but also an intent to
     > so interfere. Defendants' guard dog's repeated attacks on plaintiff's

24   > guide dog and defendants' alleged knowledge of those attacks
     > permits a reasonable inference of intent here.

25

26   *Id.* at 22. In light of the ***striking dissimilarities***, highlighted by the foregoing excerpt, it is

27   unsurprising that Plaintiff did not so much as summarize the holding in Ruiz or include a single

28

- 5 -

4816-7282-2982.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    quote form it. Yet, Plaintiff confidently argues that two Ninth Circuit cases regarding the Unruh

2    Act cited by Defendant in its Demurrer, *Greater Los Angeles Agency on Deafness*, 742 F.3d 414

3    and *Earll v. eBay, Inc.* (9th Cir. 2015) 599 Fed. Appx. 695, would have had different outcomes

4    had they been decided after the California Court of Appeal discussed in passing a possible intent

5    element under the DPA. Although it should go without saying, this analysis is woefully flawed.

6              Although Plaintiff fervently exaggerates the applicability and importance of these three

7    cases as applied here, as Defendant depicted above, these cases should have little to no bearing on

8    the resolution of its Demurrer. As such, in ruling on the Demurrer, the Court should afford them

9    the minimal consideration (if any) they deserve.

10             Plaintiff has not offered any factual support (at least none which has been pled) or any

11   pertinent legal support for its position that Defendant intentionally discriminated against him. The

12   Court should therefore sustain Defendant's Demurrer for the reasons stated therein.

13        **C.    The Webpage Defendant Included With Its Request For Judicial Notice Is
                  Admissible Under The Incorporation By Reference Doctrine**
14

15             Plaintiff incorrectly argues that the Court must reject Defendant's Request for Judicial

16   Notice. Defendant submits that the Court may accept its Request for Judicial Notice under

17   California Evidence Code section 452(h) because the fact that Defendant's webpage appeared in

18   the manner stated is not reasonably subject to dispute and it is capable of accurate determination

19   by simple reference to the webpage.

20             Although courts infrequently take judicial notice of the website of a private entity, an

21   exception to that general rule applies here and warrants this Court granting Defendant's Request

22   for Judicial Notice as to the contents of the Defendant's webpage.  Under the incorporation by

23   reference doctrine, "a court may take judicial notice of material which is included in, ***referenced***

24   ***in, or relied upon by the complaint***, matters in the public record, and facts not subject to

25   reasonable dispute." *See Better Homes Realty, Inc. v. Watmore* (S.D. Cal. Apr. 18, 2017) 2017

26   WL 1400065, at *2 (emphasis added).  A document not attached to a complaint may be

27   considered on a motion to dismiss "if the plaintiff refers extensively to the document or the

28

Baker & Hostetler llp
Attorneys at Law
Los Angeles

- 6 -

1   document forms the basis of the plaintiff's claim." *United States v. Ritchie* (9th Cir. 2003) 342

2   F.3d 903, 908. "Specifically, courts may take into account 'documents whose contents are alleged

3   in a complaint and whose authenticity no party questions, but which are not physically attached to

4   the [plaintiff's] pleading.'" *Davis v. HSBC Bank Nev., N.A.* (9th Cir.2012) 691 F.3d 1152, 1160.

5         The incorporation by reference doctrine applies to Defendant's webpage because

6   Plaintiff's Complaint extensively refers to Defendant's website, and the website forms the basis

7   for Plaintiff's claim.  Plaintiff refers to Defendant's website repeatedly throughout his Complaint,

8   including in paragraphs 4, 7-9, 15-20, 23 and 24. Further, the focus of Plaintiff's Complaint and

9   theory of liability articulated therein is that due to the design of Defendant's website, the website

10   allegedly cannot "be read by screen reading software," and consequently Plaintiff has been denied

11   equal access to the website in violation of the Unruh Act.  Also, Plaintiff's Opposition does not

12   question the authenticity of the webpage included with Defendant's Request for Judicial Notice.

13   Indeed, such a challenge would be groundless.

14         In addition, the three cases cited by Plaintiff in opposition to Defendant's Request for

15   Judicial Notice are inapposite.  *Ion Equipment Corp. v. Nelson* (1980) 110 Cal. App. 3d 868, 881

16   did not address a request for judicial notice.  Rather, in the page of the opinion cited by Plaintiff,

17   the court stated that in the context of a demurrer, the defense of collateral estoppel may be raised

18   only when the plaintiff's complaint "discloses the matter relied upon to support the plea." *Id.*  To

19   the extent that opinion is relevant to the admissibility of the copy of Defendant's webpage

20   provided via request for judicial notice here, the opinion supports admission of the webpage.

21   Plaintiff's Complaint is replete with allegations concerning the content and operation of

22   Defendant's website, and consequently Plaintiff has disclosed the website to such an extent that it

23   is properly subject to judicial notice.

24         Neither does *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal. App. 4th 182, 193

25   support Plaintiff's argument against Defendant's Request for Judicial Notice. The portion of the

26   opinion in *Ragland* cited by Plaintiff stands for the proposition that a court may not take judicial

27   notice of the truth of the contents of a matter subject to judicial notice, such as a website. Clear

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

1  from the opinion in *Ragland*, however, is the distinction between taking judicial notice of the

2  existence or contents of a matter, such as a website, and the truth of the contents. The court

3  declared, "[w]hile we may take judicial notice of the existence of the audit report, Web sites, and

4  blogs, we may not accept their contents as true." *Id.* at 193; *see also Fremont Indem. Co. v.*

5  *Fremont Gen. Corp.* (2007) 148 Cal. App. 4th 97, 113 ("Taking judicial notice of a document is

6  not the same as accepting the truth of its contents or accepting a particular interpretation of its

7  meaning.").

8      *Ragland* provides no support for Plaintiff's argument against Defendant's Request for

9  Judicial Notice because Defendant's request did not ask the Court to take notice of the truth of the

10  matters stated within Defendant's website.  Rather, Defendant merely asks the Court to take

11  notice of the contents of the website and the fact that the website contains an accessibility banner

12  that instructs persons experiencing problems utilizing a screen reader with the website to call the

13  number provided. Defendant did not request the Court accept the "truth" of this statement.

14  Indeed, it is not the truth or falsity of this statement that is relevant in the context of Defendant's

15  demurrer. Rather, it is the fact that the website contains this statement that is relevant, and which

16  constitutes the reason Defendant requested judicial notice of its website.

17      Further, the footnote from *People v. Morales* (2018) 25 Cal.App.5th 502, 511 to which

18  Plaintiff cites merely notes that courts may take judicial notice of legislative history materials and

19  other information published on a government website. *Morales* says nothing about admissibility

20  of the material for which Defendant seeks judicial notice.

21      Defendant therefore submits that this Court may either accept Defendant's Request for

22  Judicial Notice as to its webpage under California Evidence Code section 452(h) or according to

23  the doctrine of incorporation by reference.

24  **D.**    **Plaintiff Did Not Plead And Could Not Prove An ADA Violation**

25      In his Opposition, Plaintiff appears to argue that mere allusion to the ADA is sufficient to

26  carry the burden of establishing an ADA violation. It is not. While it is true that "[a]ny violation

27  of the ADA necessarily constitutes a violation of the Unruh Act" (Op. at p. 15, quoting *Molski v.*

28

- 8 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   *MJ. Cable, Inc.*, (9th Cir. 2007) 481 F.3d 724, 731), Plaintiff has not even alleged an ADA

2   violation. The one count Complaint alleges only a violation of the Unruh Act.

3       This is a clear attempt by Plaintiff to enjoy the benefits of federal law, while skirting

4   federal jurisdiction. Such gamesmanship should not be tolerated. "A plaintiff may not [] avoid

5   federal jurisdiction simply by omitting from the complaint federal law essential to his claim, or by

6   casting in state law terms a claim that can be made only under federal law." *Olguin v. Inspiration*

7   *Consol. Copper Co.* (1984) 740 F.2d 1468, 1472. Should Plaintiff continue to claim an ADA

8   violation, or amend the Complaint to allege an ADA violation, Defendant will seek removal.

9   "Jurisdiction is determined on the basis of the *well-pleaded* complaint." *Id.* "A complaint that is

10  'artfully pleaded' to avoid federal jurisdiction may be recharacterized as one arising under federal

11  law." *Id.*

12      Regardless of whether an ADA violation has been pled, as stated in the Demurrer,

13  Plaintiff could not carry his burden to prove it because Defendant has taken steps to make its

14  website accessible to blind or otherwise visually impaired website users through the accessibility

15  banner of which Defendant requested the Court take judicial notice: "If you are using a screen

16  reader and are having problems using this website, please call 1-888-324-6356 for assistance in

17  English or 1-866-322-9099 for assistance in Spanish." *See Nondiscrimination on the Basis of*

18  *Disability; Accessibility of Web Information and Services of State and Local Government Entities*

19  *and Public Accommodations*, 75 FR 43460–01 (July 26, 2010) ("covered entities with

20  inaccessible websites may comply with the ADA's requirement for access by providing an

21  accessible alternative, such as a staffed telephone line, for individuals to access the information,

22  goods, and services of their Web site.").

23      Because Plaintiff has failed to properly allege an ADA claim, and even if he had,

24  Defendant has shown its website is facially compliant with the ADA, the Complaint should be

25  dismissed with prejudice for the reasons discussed in more detail in Defendant's Demurrer.

26  ///

27  ///

28

- 9 -

III.    **CONCLUSION**

For the foregoing reasons, Defendant Genesco Inc. respectfully requests that the Court sustain Defendant's Demurrer and dismiss Plaintiff Luis Licea's Complaint with prejudice and without leave to amend.

Dated:    July 31, 2020                          Respectfully submitted,

                                                 BAKER & HOSTETLER LLP


                                                 By: _____
                                                     Carter L. Norfleet (318152)
                                                     Email:   cnorfleet@bakerlaw.com

                                                 Attorneys for Defendant
                                                 GENESCO INC.

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

- 10 -

4816-7282-2982.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## PROOF OF SERVICE

I am employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA  90025-0509.  On July 31, 2020, I served a copy of the within document(s):

### DEFENDANT'S REPLY IN SUPPORT OF IT'S DEMURRER TO COMPLAINT

☑   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐   by placing the document(s) listed above in a sealed  envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a **FEDERAL EXPRESS** agent for delivery.

☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐   by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below.

☐   by transmitting via electronic mail the document(s) listed above to the e-mail address(es) set forth below on this date before 5:00 p.m. and the transmission was reported as complete and without error.

Scott J. Ferrell, Esq.                                  *Attorneys for Plaintiff*
**PACIFIC TRIAL ATTORNEYS, APC**      LUIS LICEA
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Tel.: (949) 706-6464
Fax: (949) 706-6469
Email: sferrell@pacifictrialattorneys.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 31, 20200, at Los Angeles, California.

_____
Denise Walker

4816-7282-2982.1



1   Scott J. Ferrell (Bar No. 202091)
    sferrell@pacifictrialattorneys.com
2   **PACIFIC TRIAL ATTORNEYS, APC**
    4100 Newport Place Drive, Suite 800
3   Newport Beach, California 92660
    Telephone: (949) 706-6464
4   Facsimile: (949) 706-6469

5   Attorneys for Plaintiff

6

7

8              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

9                     **COUNTY OF SAN BERNARDINO**

10

11  LUIS LICEA, an individual,              Case No. CIVDS1939376
                                            Judge: Hon. Wilfred J. Schneider, Jr.
12                 Plaintiff,               Dept.: S32

13        v.                                **PLAINTIFF'S SECOND NOTICE OF
                                            SUPPLEMENTAL AUTHORITY RE:**
14  GENESCO INC., a Tennessee corporation, and   **DEFENDANT'S DEMURRER TO
    DOES 1-10, inclusive,                   COMPLAINT**
15
                   Defendants.              Date:  August 7, 2020
16                                          Time:  8:30 a.m.
                                            Dept.: S32
17
                                            Action Filed: December 30, 2019
18                                          Trial Date:   TBA

19

20

21

22

23

24

25

26

27

28

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JUL 1 7 2020

By _____
                        Deputy

**TO THE COURT AND ALL PARTIES IN THIS ACTION:**

Plaintiff Luis Licea ("Plaintiff") hereby submits this Second Notice of Supplemental Authority in regards to Defendant Genesco Inc.'s Demurrer to the Complaint, which is scheduled to be heard on August 7, 2020 at 10:00 a.m. in Department S32 of this Court, in order to bring to the Court's attention a recent decision in a very similar action filed in the California Superior Court in Los Angeles County by Plaintiff Licea alleging an Unruh Act cause of action based on an allegedly inaccessible website whereby the court overruled a demurrer to the complaint. *See Licea v. Creative Work Media, Inc.*, No. 19STCV45182 (Cal. Super. Ct. July 16, 2020). Attached hereto as **Exhibit "1"** is a true and correct copy of the tentative ruling in *Licea*, which became the final order on July 16, 2020, after oral argument was conducted on such demurrer on that date. Such recent decision was issued *after* Plaintiff filed her response to Defendant's Demurrer on June 10, 2020.

In addition, the Court should consider a recent decision issued in *Thorne v. Boston Market Corp.*, 2020 WL 3504178, at *7 (S.D.N.Y. June 29, 2020) ("a number of courts in this district have held that private commercial websites that affect commerce are 'place[s] of public accommodation' under the ADA"); *id.* at *8 ("In *Del-Orden [v. Bonobos, Inc.*, 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017)], for instance, Judge Engelmayer concluded that a website was a 'place of public accommodation' because 'interpretive tools strongly support construing the term 'public accommodation' to apply to commercial marketplaces, including on the Internet, whether or not these marketplaces take a conventional physical form.'"); *id.* at 8 (citing *Dominguez v. Banana Republic, LLC*, 2020 WL 1950496, at *7 (S.D.N.Y. Apr. 23, 2020) ("coupled with the word 'of,' the phrase 'place of public accommodation' most logically reads as referring to a space-figurative or not-that can provide the services of a public accommodation").

Finally, the Court should consider *Dominguez v. Taco Bell Corp.*, - F. Supp. 3d -, 2020 WL 3263258, at *5 (S.D.N.Y. June 17, 2020) ("Some courts have found [websites that offer goods for sale] to be a place of public accommodation. These decisions state that a place of public accommodation need not be a physical space as long as it is a place where goods and services are provided.").

Dated:  July 16, 2020

PACIFIC TRIAL ATTORNEYS, P.C.

By: _____
     Scott J. Ferrell
     Attorneys for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3

PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY ISO OPPOSITION TO DEMURRER

## DEPARTMENT 74 LAW AND MOTION RULINGS

Counsel may submit on the tentative ruling by emailing Dept. 74 before 8:30 the morning of the hearing. The email address is **smcdept74@lacourt.org**. Please do not call the court to submit on the tentative.

IF THE DEPARTMENT DOES NOT RECEIVE AN EMAIL INDICATING THE PARTIES ARE SUBMITTING ON THE TENTATIVE RULING AND THERE ARE NO APPEARANCES AT THE HEARING, THE MOTION WILL BE PLACED OFF CALENDAR.

**If you decide not to submit on the tentative ruling, REMOTE APPEARANCES ARE AUTHORIZED AND STRONGLY ENCOURAGED.** Please visit the court's **Here for You | Safe for You News Center** for the latest orders governing court business.  http://www.lacourt.org/newsmedia/ui/HfySfy.aspx

**A NOTE ABOUT COURT REPORTERS**:  Government Code §69959 prohibits remote court reporting.  If you plan to hire a court reporter for your hearing, the reporter must be present in the courtroom.

**In deciding whether to submit on the tentative ruling or attend the hearing and present oral argument, please keep the following in mind**: The tentative rulings authored by this court reflect that the court has read and considered all pleadings and evidence timely submitted to the court in connection with the motion, opposition, and reply (if any). Because the pleadings were filed, they are part of the public record. Oral argument is not an opportunity to simply repeat that which a party set forth in its pleadings. Nor, is oral argument an opportunity to "make a record" when there is no court reporter present and the statements and arguments of counsel are already part of the record because they were set forth in the pleadings. Finally, simply because a party or attorney disagrees with the court's analysis and ruling or is not satisfied with it does not necessarily warrant oral argument when no new arguments will be articulated. If you submit on the tentative, you must immediately notify all other parties email that you will not appear at the hearing. If you submit on the tentative and elect not to appear at the hearing, the opposing party may nevertheless appear at the hearing and argue the motions. If all parties to the motion submit, this tentative ruling will become the final ruling after the hearing date and it will be memorialized in a minute order. This tentative ruling is not an invitation, nor an opportunity, to file further documents relative to the hearing in question. No such document will be considered by the Court.

---

**Case Number:** 19STCV45182   **Hearing Date:** July 16, 2020   **Dept:** 74

**19STCV45182        LUIS LICEA vs CREATIVE WORK MEDIA, INC**

**Creative Work Media's Demurrer**

**TENTATIVE RULING**:      The demurrer is OVERRULED.  Defendant shall file an answer within 10 days. Moving party to give notice.

The court takes judicial notice of the Statement of Interest of the United States of America in National Ass'n of the Deaf v. Netflix, Inc., Case No. 3:11-cv-30168-MAP, Dkt. 45 at pg. 6 n.4 (D. Mass. May 15, 2012).  Evid. Code § 452; CRC rules 3.1306(c) and 3.1113(1).

The complaint sufficiently alleges facts to give rise to a cause of action for the violation of Civ. Code, § 51. In his complaint, Plaintiff noted that he, and members of society like himself were impeded from enjoying the benefits of the website and making purchases. (Complaint ¶19.) Moreover, Plaintiff attempted to access the website on several occasions, which resulted in the following access barriers "(1) Empty links that contain no text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen reader users; (2) Empty or missing form labels which presents a problem because, if a form control does not have a properly associated text label, the function or purpose of that form control may not be presented to screen reader users. Form labels provide visible descriptions and larger clickable targets for form controls; and (3) Empty buttons, which means that a button is empty or has no value text. When navigating to a button, descriptive text must be presented to screen reader users to indicate the function of the button." (Complaint ¶18.)

The complaint in this case is similar to the complaint in Thurston v. ClearPath Lending, Inc.  There, the court determined plaintiff plead sufficient facts to establish a plausible claim because plaintiff noted that "(1) denying visually-impaired customers the services provided by the website, (2) constructing and maintaining a website that is inaccessible to Plaintiff and by failing to take adequate actions to correct these barriers, and (3) because Defendant's conduct 'likewise constitutes a violation of various provisions of the ADA.' Complaint ¶¶ 29-31. Plaintiff also alleges that 'it is Defendant's policy and practice to deny blind users, including Plaintiff, equal enjoyment of and access to [the website].' Complaint at ¶ 22." (Thurston v. ClearPath Lending, Inc. (C.D. Cal., Jan. 28, 2019, No. SACV182094JVSJDEX) 2019 WL 366405, at *3.) Such is the case here. An inaccessible website is a violation of the ADA and a violation of the ADA constitutes a violation of Civ. Code, § 51.

1

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

2

3        I am employed in the County of Orange, State of California.  I am over the age of 18 and not a
party to the within action; my business address is 4100 Newport Place Drive, Suite 800, Newport Beach,
CA 92660.

4

5        On July 17, 2020, I served the foregoing document described as **PLAINTIFF'S SECOND**
**NOTICE OF SUPPLEMENTAL AUTHORITY RE:   DEFENDANT'S DEMURRER TO**
**COMPLAINT** on the following person(s) in the manner indicated:

6

7                                **SEE ATTACHED SERVICE LIST**

☒        (BY MAIL)   I am familiar with the practice of Pacific Trial Attorneys for collection and
8    processing of correspondence for mailing with the United States Postal Service.  Correspondence so
collected and processed is deposited with the United States Postal Service that same day in the ordinary
9    course of business.  On this date, a copy of said document was placed in a sealed envelope, with postage
fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at
10   Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

11   ☐        (BY FEDERAL EXPRESS OVERNIGHT)  I am familiar with the practice of Pacific Trial
Attorneys for collection and processing of correspondence for delivery by overnight courier.
12   Correspondence so collected and processed is deposited in a box or other facility regularly maintained
by Federal Express that same day in the ordinary course of business.  On this date, a copy of said
13   document was placed in a sealed envelope designated by Federal Express with delivery fees paid or
provided for, addressed as set forth herein, and such envelope was placed for delivery by Federal Express
14   at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

15   ☐        (BY HAND DELIVERY) I am familiar with the practice of Pacific Trial Attorneys for collection
and processing of correspondence for hand delivery by courier.  I caused such document t be delivered
16   by hand to the addresse(s) designated.

17   ☐        (BY ELECTRONIC TRANSMISSION) I served electronically from the electronic notification
address of mjung@pacifictrialattorneys.com the document described above and a copy of this
18   declaration to the person and at the electronic notification address set forth herein.  The electronic
transmission was reported as complete and without error.

19

20        I declare under penalty of perjury under the laws of the State of California that the foregoing is
true and correct, and that this declaration was executed on July 17, 2020, at Newport Beach, California.

21

22                                                            Mandy K. Jung

23

24

25

26

27

28

-4-
PROOF OF SERVICE

1

## SERVICE LIST

2
3
4
5
6

Carter L. Norfleet, Esq.
Joel C. Griswold, Esq.
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
cnorfleet@bakerlaw.com
jcgriswold@bakerlaw.com

Attorneys for Defendant
Genesco Inc.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PROOF OF SERVICE

FIXED

1   Scott J. Ferrell (Bar No. 202091)
    sferrell@pacifictrialattorneys.com
2   **PACIFIC TRIAL ATTORNEYS, APC**
    4100 Newport Place Drive, Suite 800
3   Newport Beach, California 92660
    Telephone: (949) 706-6464
4   Facsimile: (949) 706-6469

5   Attorneys for Plaintiff

6

7

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

**JUN 23 2020**

BY _____
CELENA SAYRE, DEPUTY

8              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

9                      **COUNTY OF SAN BERNARDINO**

10

11   LUIS LICEA, an individual,                Case No. CIVDS1939376
                                               Judge: Hon. Wilfred J. Schneider, Jr.
12                 Plaintiff,                  Dept.: S32

13        v.                                   **PLAINTIFF'S NOTICE OF**
                                               **SUPPLEMENTAL AUTHORITY RE:**
14   GENESCO INC., a Tennessee corporation, and  **DEFENDANT'S DEMURRER TO**
     DOES 1-10, inclusive,                     **COMPLAINT**
15
                   Defendants.                 Date:   June 23, 2020
16                                             Time:   8:30 a.m.
                                               Dept.:  S32
17
                                               Action Filed:  December 30, 2019
18                                             Trial Date:    TBA

19

20

21

22

23

24

25

26

27

28

---

**TO THE COURT AND ALL PARTIES IN THIS ACTION:**

Plaintiff Luis Licea ("Plaintiff") hereby submits this Notice of Supplemental Authority in regards to Defendant Genesco Inc.'s Demurrer to the Complaint, which is scheduled to be heard on June 23, 2020 at 8:30 a.m. in Department S32 of this Court, in order to bring to the Court's attention a recently published California Court of Appeal decision entitled *Martinez v. San Diego County Credit Union*, Nos. D075360 & D076055, - Cal. App. 5th -, - Cal. Rptr. 3d -, 2020 WL 3396649 (Cal. Ct. App. June 19, 2020), a true and correct copy of which is attached hereto as **Exhibit "1,"** which reversed the Superior Court's judgment entered as a matter of law against the plaintiff, a blind individual, who had sued the owner and operator of a commercial website regarding communication barriers on its website under the Unruh Act.  Without considering the separate and distinct intentional discrimination theory of liability under the Unruh Act, the Fourth Appellate District, Division One, held that the plaintiff's allegations in his complaint sufficiently pled an actionable violation under Title III of the ADA.  *Martinez*, *supra*, slip op. at 19-38.  In support, the Court of Appeal cited with approval the reasoning in *Thurston v. Midvale Corp.*, 39 Cal. App. 5th 634, 642-44 (2019); *see Martinez*, *supra*, slip op. at 21, including its broad interpretation of the "nexus" test.  *Martinez*, *supra*, slip op. at 23 (citing *Thurston*, 39 Cal. App. 5th at 644-46).

Dated:  June 22, 2020

PACIFIC TRIAL ATTORNEYS, P.C.

By: _____
Scott J. Ferrell
Attorneys for Plaintiff

PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY ISO OPPOSITION TO DEMURRER

# Exhibit 1

Filed 6/19/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ABELARDO MARTINEZ, | D075360 |
| Plaintiff and Appellant, | (Consolidated with D076055) |
| v. | |
| SAN DIEGO COUNTY CREDIT UNION, | (Super. Ct. No. 37-2017-00024673-CU-CR-NC) |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald F. Frazier, Judge. Reversed.

Pacific Trial Attorneys, Scott J. Ferrell and Richard Hikida for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Gregory F. Hurley and Bradley J. Leimkuhler for Defendant and Respondent.

Abelardo Martinez, who is blind, brought an action against San Diego County Credit Union (Credit Union) claiming its website is incompatible with software permitting him to read website content. He alleged this defect denied him equal access to, and full enjoyment of, the Credit Union's website and its physical locations. Martinez asserted a single cause of action under the Unruh Civil Rights Act based on two alternate

theories: (1) Credit Union's website violates the American Disabilities Act (ADA); and (2) Credit Union's actions constitute intentional discrimination prohibited by the Unruh Civil Rights Act. (See Civ. Code, § 51 et seq.; 42 U.S.C., § 12101 et seq.)[1]

On the day scheduled for jury selection, the court dismissed the action on its own motion based on its understanding Martinez was intending to pursue only the ADA theory, and the court's finding Martinez had not sufficiently alleged Credit Union's website constitutes a "public accommodation" within the meaning of the ADA. (§ 12182(a).) Although the court characterized its ruling as a nonsuit, the parties agree it was a conclusion based solely on Martinez's pleadings.

Martinez appeals. We determine the court erred in dismissing the action at the pleadings stage based on the ADA's public-accommodation element. Although the courts have not yet articulated a single clear standard on this issue, most of the federal circuits and one California Court of Appeal have held a disabled plaintiff can state a viable ADA claim for alleged unequal access to a private entity's website if there is a sufficient nexus between the claimed barriers and the plaintiff's ability to use or enjoy the goods and services offered at the defendant's physical facilities. Under this standard, we conclude Martinez has alleged a sufficient nexus to state an ADA violation. We thus do not reach the broader issue whether a website constitutes a public accommodation governed by the ADA even without a nexus to the defendant's physical location.

---

[1] Unspecified statutory references are to Title 42 of the United States Code.

2

We reject Credit Union's alternate argument that the dismissal was proper because the United States Congress has not enacted specific website accessibility standards. Even without these standards, the courts have the authority to interpret applicable ADA provisions and apply them to website accessibility issues. We also find unavailing Credit Union's challenges to potential remedies for alleged defects on its website. These challenges are based on facts outside the appellate record and are premature at the pleading stage.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### *Complaint*

Martinez is permanently blind and requires screen reading software to vocalize visual information on the computer screen, allowing him to "read" website content and access the Internet.

In July 2017, Martinez filed a complaint against Credit Union. According to his allegations, Credit Union maintains its website in such a way that it contains "numerous access barriers" precluding him from using his screen reading software to access the information on the website. Specifically, Martinez alleged Credit Union's website is incompatible with this software because the website contains: (1) missing alternative text, which is code embedded beneath a graphical image that allows screen readers to vocalize a description of the graphics and permits users to determine the website content;

---

[2]     Credit Union devotes significant portions of its appellate brief to negatively characterize ADA lawsuits in general. These assertions are unhelpful and unsupported by the record, and we disregard them.

(2) empty links, creating confusion for keyboard and screen reader users; (3) redundant links resulting in additional navigation and unnecessary repetition; and (4) missing form labels, which creates a problem because the function or purpose of the form control may not be presented to screen reader users.

Martinez alleged the screen reading software is "the only method by which a blind person may independently access the internet," and described the online industry standards organization's publication of the Web Content Accessibility Guidelines version 2.0 (Accessibility Guidelines), which sets forth rules to ensure website accessibility for visually impaired individuals. These rules include adding "invisible alternative text to graphics" to ensure "all functions can be performed using a keyboard" and "that image maps are accessible." He alleged that without these basic components, "a website will be inaccessible to a blind or visually impaired person using a screen reader."

With respect to Credit Union, Martinez alleged it operates multiple credit union locations, and that its website is "integrated" with the physical locations. He claimed Credit Union's website provides "access to the array of [Credit Union's] services, including a location locator, descriptions of its products and services, and many other benefits related to these facilities and services." He alleged that he has made multiple attempts to use and navigate the website, but because of the website's formatting, he has been unable to do so. He claimed this inability to use the website has deterred him from visiting Credit Union's physical locations, using the website, and obtaining the benefits of Credit Union's goods and services. Specifically, he alleged he is unable to "effectively browse for [Credit Union's] locations, products and services online," and claimed that if

4

the website were accessible, he "could independently investigate services and products, and find the locations to visit via Defendant's website as sighted individuals can and do."

Martinez asserted a single cause of action for violation of the Unruh Civil Rights Act. (Civ. Code, § 51.) He alleged two theories for recovery. First, he alleged Credit Union's conduct in maintaining its website in a form inaccessible to visually impaired individuals, and failing to take corrective action after notice, constituted prohibited "intentional discrimination" under the Unruh Civil Rights Act. Second, he claimed Credit Union's website violates the ADA, an independent basis for liability under the Unruh Civil Rights Act.

Martinez sought: (1) $4,000 per violation; (2) injunctive relief requiring Credit Union to take steps necessary to make its website accessible to visually impaired individuals (but limiting his request to the expenditure of no more than $50,000 to correct the deficiencies); and (3) attorney fees and costs not to exceed $74,999.

Credit Union answered, denying the allegations, but did not challenge the pleadings or move for summary judgment. Trial was scheduled for Tuesday, November 13, 2018.

*November 8, 2018 Hearing*

Several days before the trial date, on Thursday, November 8, the court held a hearing on the parties' motions in limine, proposed jury instructions, and verdict forms. The court and counsel first discussed each of Martinez's eight motions and Credit Union's three motions. Of relevance here, during the discussion, Credit Union asked the court to exclude any reference to the Accessibility Guidelines, and after lengthy arguments, the

5

court said it would reserve ruling on the issue, but commented it was "up to the jury to decide" if the Credit Union's website violated statutory standards, and therefore it may permit Martinez to present evidence of the Accessibility Guidelines "for limited purposes [and] with a limiting instruction." On Credit Union's motion to exclude any evidence of barriers that were not specifically alleged, the court also reserved ruling on the motion, but noted that Credit Union had not brought a demurrer, and to the extent the complaint was not sufficiently detailed to provide adequate notice, Credit Union had the full opportunity to conduct discovery.

After reiterating November 13 as the trial start date and informing counsel of its department trial rules, the court and counsel discussed the proposed jury instructions and verdict forms. Toward the end of this discussion, counsel told the court there is a split among the federal circuits as to whether a website is subject to the ADA, and whether a nexus between the defendant's website and its physical facilities is required to trigger ADA protection. The court responded that the arguments on the issue of "accessing the physical" space and any required "nexus" had "piqued [its] interest," and that it was "interested in briefing on that." After counsel told the court that most of the case law has arisen in the federal courts, and no California appellate court has yet ruled on this issue, the court said, "Lucky me. So you . . . need to brief this. You both need to put together a trial brief for me. I've got a pretty good feel, but you [both] know this area inside and out . . . since there aren't any California appellate court cases. . . ." The court asked counsel to email their briefs by Monday morning (the day before jury selection was

6

scheduled to begin), and said, "I'll go through the briefs Tuesday, and then we'll start picking the jury Tuesday afternoon."

On Monday November 12, the parties emailed their trial briefs to the court. Credit Union's brief was 44 pages and addressed numerous legal issues in addition to the public accommodations issue raised by the court. Martinez's brief was 19 pages and more limited than Credit Union's brief.

*November 13 Hearing and Order*

The next day, the parties met in chambers for an unrecorded discussion. After the discussion, the court held a hearing on the record. At the outset of the hearing, the court said:

> "We have had [a] chambers discussion. I have reviewed both sides' trial briefs, and I have given . . . this matter a tremendous amount of thought over the three-day weekend. And with the benefit of the trial briefs, I think the Court's position has clarified.

> "And I asked counsel back in chambers . . . if they would be opposed to not going through the procedure of picking a jury and doing opening statements given the fact that *I have decided to grant the defendant's motion for nonsuit as I read their brief in terms of the website not being subject to the ADA*." (Italics added.)

When the court asked Martinez's counsel whether he agreed with its comments about the procedure, counsel responded:

> "[I]*t is my understanding that the Court is sua sponte granting a nonsuit on the basis that the Court has determined, as a matter of law, that neither the Unruh Act nor the Americans with Disabilities Act applies to a website as alleged here, which is a website that is in a nexus to a physical building.* [¶] With that being the case, I agree that it would be futile to proceed in that the Court has determined that as a matter of law. We would simply ask that for purposes of

7

creating a complete record for appeal, that the court receive and
accept the trial briefs that were filed herein." (Italics added.)

After defense counsel agreed with this description, the court said it would prepare a brief
order that would be "pretty much very similar to the defense brief on this point."

Several days later, the court issued an order entitled "Sua Sponte Order Granting
Motion for Nonsuit." (Some capitalization omitted.) The order stated Credit Union's
motion was essentially a challenge to the pleadings, and the court "agreed with the
Defense position . . . [that] the complaint failed to state facts sufficient to constitute a
cause of action." The court then identified the two alternative legal grounds for proving
an Unruh Civil Rights Act violation based on disability discrimination (violation of the
ADA and intentional discrimination), but addressed only the first ground because it said
"Plaintiff has indicated that he intends to proceed solely by proving that Defendant
violated the ADA."

The court then stated its conclusion that Credit Union's website was not subject to
the ADA because the ADA applies only to "a place of public accommodation," and a
website does not constitute a "public accommodation." The court said it was following
the Third, Sixth, Ninth, and Eleventh Circuits holding that the phrase "public
accommodation" means a physical structure, but did not mention the "nexus" theory
adopted by these circuits. The court also quoted an unpublished federal district court
decision from the Eastern District of Virginia, dismissing a visually impaired plaintiff's
action against a credit union for website deficiencies based on the court's conclusion the
ADA did not apply to the website. (*Carroll v. Northwest Fed. Credit Union* (E.D.Va.,

8

Jan. 26, 2018, No. 1:17-CV-01205) 2018 WL 2933407, at p. *2 (*Northwest*).) The court did not mention (because neither party cited) other federal court decisions reaching contrary conclusions and upholding a visually impaired plaintiff's action against a credit union for a defective website on a nexus theory. (See Discussion section, part II.B.)

## DISCUSSION

### I. *Review Standard*

Although the court labeled its "sua sponte" dismissal ruling a "nonsuit," both parties agree that in substance the court's order reflected a determination on the sufficiency of Martinez's pleading. We agree with this characterization. The court made clear it was ruling on the ADA "public accommodations" issue based solely on the complaint's allegations, and was not considering any proposed evidence or factual assertions made during the in limine motions hearing or chambers discussion, or in the parties' trial briefs.

When a court rules on a challenge to a pleading after a complaint and answer have been filed, the motion is in the nature of a judgment on the pleadings and can be made before or during trial. (See *Stoops v. Abbassi* (2002) 100 Cal.App.4th 644, 650.) A court may grant a judgment on the pleadings on its own motion. (Code Civ. Proc., § 438, subds. (b)(2), (c)(3)(B)(ii).) A motion for judgment on the pleadings " 'performs the same function as a general demurrer, and [thus] attacks only defects disclosed on the face of the pleadings or by matters that can be judicially noticed. [Citations.]' " (*Burnett v. Chimney Sweep* (2004) 123 Cal.App.4th 1057, 1064; see *People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777 (*Harris*).) The court must

9

determine whether the complaint states a cause of action assuming all of the alleged facts are true. (*Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* (1996) 44 Cal.App.4th 194, 198.)

We review the court's ruling de novo. (*Harris, supra,* 59 Cal.4th at p. 777; *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1490 (*Rossberg*).) We do not review the validity of the trial court's reasoning, and must affirm the court's ruling if it was correct on any legal theory raised by the parties. (*Orange Unified School Dist. v. Rancho Santiago Community College Dist.* (1997) 54 Cal.App.4th 750, 757.)

## II. *Unruh Civil Rights Act*

California's Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b).) A plaintiff can recover under the Unruh Civil Rights Act on two alternate theories: (1) a violation of the ADA (§ 51, subd. (f)); or (2) denial of access to a business establishment based on intentional discrimination. (See *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 670.)

We begin with the ADA violation claim. Because we conclude the court erred in dismissing the complaint on this theory, we do not reach the issue whether the alleged intentional discrimination theory also supports the cause of action and/or whether the court correctly found that Martinez had abandoned this theory for purposes of the "nonsuit" motion. We are required to reverse if the plaintiff has stated a viable cause of

10

action on any legal theory, and we do so based on the ADA theory. On remand, Martinez may also pursue the alternate intentional discrimination claim if it is supported by the facts and applicable legal principles and the trial court finds there has been no forfeiture.

## A. *Generally Applicable Legal Principles*

Title III of the ADA prohibits discrimination against disabled individuals by private entities, such as Credit Union. Title III provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations *of any place of public accommodation* by any person who owns, leases (or leases to), or operates a place of public accommodation." (§ 12182(a), italics added.)

The purpose of this title is " 'to bring individuals with disabilities into the economic and social mainstream of American life . . . in a clear, balanced, and reasonable manner.' Congress intended that people with disabilities have equal access to the array of goods and services offered by private establishments and made available to those who do not have disabilities. . . ." (*Gniewkowski v. Lettuce Entertain You Enters.* (W.D.Pa. 2017) 251 F.Supp.3d 908, 916; accord *PGA Tour, Inc. v. Martin* (2001) 532 U.S. 661, 674-675 (*PGA Tour*).)

To establish a violation, a plaintiff must show: (1) a covered disability; (2) "the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied *public accommodations* by the defendant because of [the] disability." (*Molski v. M.J. Cable, Inc.* (9th Cir. 2007) 481 F.3d 724, 730, italics added; accord, *Brown v. Whole Foods Mkt. Grp., Inc.* (D.C. Cir.

11

2015) 789 F.3d 146, 151; *Ariz. ex rel. Goddard v. Harkins Amusement Enters.* (9th Cir. 2010) 603 F.3d 666, 670; see § 12182(a), (b).)

It is undisputed that Martinez alleged a covered disability, and the Credit Union's physical buildings are "places of public accommodations" within the meaning of the ADA. (§ 12182(a).) But Martinez alleges he was discriminated against based on barriers on Credit Union's website, not at one of its buildings. Thus, the issue before us is whether the website qualifies as a place of public accommodation.

The ADA defines the phrase "place of public accommodation" by enumerating 12 categories of covered "places" and "establishments," giving non-exclusive examples of types of enterprises falling into each category.[3] (§ 12181(7)(A)-(L); *Suvino v. Time Warner Cable Inc.* (S.D.N.Y., Aug. 31, 2017, No. 16 CV 7046-LTS-BCM) 2017 WL 3834777, at p. *1; see *PGA Tour*, *supra*, 532 U.S. at pp. 676-677; *National Ass'n of the*

---

[3]     These categories are: "(A) an inn, hotel, motel, or other place of lodging . . . . [¶ . . . ¶] (B) a restaurant, bar, or other establishment serving food or drink; [¶ . . . ¶] (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment; [¶ . . . ¶] (D) an auditorium, convention center, lecture hall, or other place of public gathering; [¶ . . . ¶] (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment; [¶ . . . ¶] (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment; [¶ . . . ¶] (G) a terminal, depot, or other station used for specified public transportation; [¶ . . . ¶] (H) a museum, library, gallery, or other place of public display or collection; [¶ . . . ¶] (I) a park, zoo, amusement park, or other place of recreation; [¶ . . . ¶] (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education; [¶ . . . ¶] (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and [¶ . . . ¶] (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation." (§ 12181(7)(A)-(L).)

12

*Deaf v. Netflix, Inc.* (D.Mass. 2012) 869 F.Supp.2d 196, 201 (*Netflix*).) The listed examples mainly reference physical locations. The implementing regulations similarly define a public accommodation by referring to a "facility," which is in turn defined as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock . . . or other real or personal property, including the site where the building, property, structure, or equipment is located." (28 C.F.R. § 36.104.)

A website is not identified in any of the statutory categories. This is not surprising as there were no commercial websites when the ADA was enacted in 1990. But in the 30 years since, websites have become central to American life. They are widely used by both consumers and businesses to communicate information and conduct transactions, and are now essential tools in conducting daily affairs.[4] Thus, the issue whether websites are subject to ADA requirements has been the subject of a growing number of lawsuits, judicial attention, and academic commentary. (See Daniel Sorger, *Writing the Access Code: Enforcing Commercial Web Accessibility Without Regulations Under Title III of the Americans with Disabilities Act* (2018) 59 B.C. L.Rev. 1121; see also Alissa Carter Verson, *A New Era of Accessibility: Website Compliance with the Americans with Disabilities Act* (2019) 32 DCBA Brief 14; Abrar & Dingle, *From Madness to Method: The Americans with Disabilities Act Meets the Internet* (2009) 44 Harv. C.R.-C.L. L.Rev. 133.)

---

[4] During the current pandemic, the Internet and websites have become even more critical, but we consider the issues before us based on circumstances at the time they arose, in 2017.

The regulatory agency charged with implementing the ADA (the Department of Justice (DOJ)) has previously endorsed the applicability of Title III to " 'Web sites of public accommodations,' " but has not provided specific regulatory guidance. (*Robles v. Domino's Pizza, LLC* (9th Cir. 2019) 913 F.3d 898, 903, 906-907, 910 (*Robles*); *Reed v. 1-800-Flowers.com, Inc.* (E.D.N.Y. 2018) 327 F.Supp.3d 539, 549-550; *Gorecki v. Hobby Lobby Stores, Inc.* (C.D.Cal., June 15, 2017, No. CV 17-1131-JFW(SKX)) 2017 WL 2957736, at pp.*4-*5.)[5]

And the courts have reached different conclusions on the issue whether a website is a public accommodation. The federal courts have expressed two main views. The different views stem primarily from the extent to which the court adheres to the express statutory language *or* whether it finds legislative history and intent to be paramount considerations.

One view (the minority view) is that websites are "public accommodations" within the meaning of the ADA. This approach has been adopted by courts in the First, Second, and Seventh Circuits. (*National Ass'n of the Deaf v. Harvard University* (D.Mass. 2019)

---

[5]     In 2010, the DOJ issued an "Advance Notice of Proposed Rulemaking" on web accessibility to clarify private entities' " 'obligations to make websites accessible' " (*Robles, supra,* 913 F.3d at p. 903), and the DOJ has also filed statements of interest and amicus briefs in Title III cases supporting ADA website applicability (*Gorecki, supra,* 2017 WL 2957736, at p. *4; see *Gil v. Winn Dixie Stores, Inc.* (S.D.Fla. 2017) 242 F.Supp.3d 1315, 1316-1317 (*Gil*)). But the DOJ has not issued specific regulations, and in 2017, withdrew its proposed website rule. (*Robles,* at p. 910.) In explaining the withdrawal, the DOJ stated it " 'continue[s] to assess whether specific technical standards are necessary and appropriate to assist covered entities with complying with the ADA.' " (*Id.* at p. 909.)

377 F.Supp.3d 49, 57-59 (*Harvard*); *Gil*, *supra*, 242 F.Supp.3d at pp. 1318-1319; see *Carparts Distrib. Ctr. v. Automotive Wholesaler's Ass'n* (1st Cir. 1994) 37 F.3d 12, 19-20 (*Carparts*); *Netflix*, *supra*, 869 F.Supp.2d at pp. 201-203; *Doe v. Mutual of Omaha Ins. Co.* (7th Cir. 1999) 179 F.3d 557, 559; *Access Living of Metropolitan Chicago v. Uber Technologies, Inc.* (N.D.Ill. 2018) 351 F.Supp.3d 1141, 1155-1156; *Pallozzi v. Allstate Life Ins. Co.* (2nd Cir. 1999) 198 F.3d 28, 32; *Andrews v. Blick Art Materials, LLC* (E.D.N.Y. 2017) 268 F.Supp.3d 381, 390-393 (*Andrews*); *National Federation of the Blind v. Scribd Inc.* (D.Vt. 2015) 97 F.Supp.3d 565, 567-576 (*Scribd*).)

Courts adopting this view have relied on the "service establishment[s]" category of the statutory definition, and particularly the fact that "travel service" is contained in the illustrative list of these establishments (§ 12181(7)(F); see fn. 3, *ante*), suggesting that Congress must have contemplated a public accommodation would "include providers of services which do not require a person to physically enter an actual physical structure." (*Carparts*, *supra*, 37 F.3d at p. 19; see *Scribd*, *supra*, 97 F.Supp.3d at p. 572.) The *Carparts* court observed, "[i]t would be irrational to conclude that persons who enter an office to purchase services are protected by the ADA, but persons who purchase the same services over the telephone or by mail are not. Congress could not have intended such an absurd result." (*Carparts*, at p. 19; *see Andrews*, *supra*, 268 F.Supp.3d at p. 396; *Scribd*, at pp. 572-573.)

These courts have also emphasized the critical nature of websites for transacting business in one's daily life, and that Congress made clear its intention that the ADA adapt to changes in technology. (See *Andrews*, *supra*, 268 F.Supp.3d at p. 395 [ADA's " 'broad

15

mandate' " and its " 'comprehensive character' are resilient enough to keep pace with the fact that the virtual reality of the Internet is almost as important now as physical reality alone was when the statute was signed into law."]; *Scribd, supra*, 97 F.Supp.3d at p. 575 ["excluding disabled persons from access to covered entities that use [websites] as their principal means of reaching the public would defeat the purpose of this important civil rights legislation"]; *Netflix, supra*, 869 F.Supp.2d at p. 200 ["In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would run afoul of the purposes of the ADA" in that it would prevent "individuals with disabilities" from "fully enjoy[ing] the goods, services, privileges and advantages available indiscriminately to other members of the general public."]; *Del-Orden v. Bonobos, Inc.* (S.D.N.Y., Dec. 20, 2017, No. 17 CIV. 2744 (PAE)) 2017 WL 6547902, at p. *9 ["Congress's purposes in adopting the ADA would be frustrated were the term 'public accommodation' given a narrow application, under which access to the vast world of Internet commerce would fall outside the statute's protection."]; see also H.R.Rep. No. 101-485(II), at p. 108 (1990), reprinted in 1990 U.S.C.C.A.N. at pp. 303, 391 ["The Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times."].)

The second view (the majority view) is that websites are not "public accommodations" under the ADA, *but* a denial of equal access to a website can support an ADA claim if the denial has prevented or impeded a disabled plaintiff from equal access to, or enjoyment of, the goods and services offered at the defendant's physical

16

facilities. This view has been adopted by courts in the Third, Sixth, Ninth, and Eleventh Circuits. (*Gil, supra*, 242 F.Supp.3d at p. 1319; see *Robles, supra*, 913 F.3d at pp. 905-906;[6] *Menkowitz v. Pottstown Mem'l Med. Ctr.* (3rd Cir. 1998) 154 F.3d 113, 122 (*Menkowitz*); *Mahoney v. Bittrex, Inc.* (E.D.Pa., Jan. 14, 2020, No. CV 19-3836) 2020 WL 212010, at p. *2 (*Mahoney*); *Parker v. Metropolitan Life Ins. Co.* (6th Cir. 1997) 121 F.3d 1006, 1010-1014 (*Parker*); *Castillo v. Jo-Ann Stores, LLC* (N.D.Ohio 2018) 286 F.Supp.3d 870, 876-881 (*Castillo*); *Haynes v. Dunkin' Donuts, LLC* (11th Cir. 2018) 741 Fed. Appx. 752, 754 (*Haynes*); *Gomez v. General Nutrition Corp.* (S.D.Fla. 2018) 323 F.Supp.3d 1368, 1375 (*General Nutrition*); see also *Rendon v. Valleycrest Prods., Ltd.* (11th Cir. 2002) 294 F.3d 1279, 1284-1286.)

The courts adopting this narrower statutory definition of a "public accommodation" have relied on Congress's explicit listing of the type of places considered to be "public accommodations," and have emphasized that essentially all of these categories describe a physical location. (§ 12181(7)(A)-(L); see *Parker, supra*, 121 F.3d at pp. 1010-1014; *Weyer, supra*, 198 F.3d at p. 1114.) With respect to section 12181(7)(F)'s identification of "service establishment[s]" such as a "travel service," these courts have noted that under the statutory construction canon "*noscitur a sociis*," a statutory term must be construed in the context of the accompanying words, thus

6    In recently applying this standard, the Ninth Circuit adhered to its earlier decision finding a public accommodation is a physical building (absent a "nexus") (see *Weyer v. Twentieth Century Fox Film Corp.* (9th Cir. 2000) 198 F.3d 1104, 1115 *(Weyer)*), but left open the issue whether it would be receptive to adopting a broader view. (*Robles, supra*, 913 F.3d at pp. 905-906 & fn. 6.)

supporting that a "travel service" also identifies a physical place. (*Parker*, at p. 1014; see *Weyer*, 198 F.3d at p. 1114; *Ford v. Schering-Plough Corp.* (3rd Cir. 1998) 145 F.3d 601, 613-614 (*Ford*); see also *Magee v. Coca-Cola Refreshments USA, Inc.* (5th Cir. 2016) 833 F.3d 530, 534-535; *Harvard, supra,* 377 F.Supp.3d at pp. 59-60.)

But these courts also recognize that a website can be important to providing access to a defendant's public accommodation (physical premises) and to a disabled person's ability to use and enjoy services provided at those places, and thus to the extent barriers on the website impinges on the plaintiff's ability to access such benefits at a physical premises, the claim can be actionable under a nexus theory. (See *Robles, supra,* 913 F.3d at pp. 904-906; *Gil, supra,* 242 F.Supp.3d at pp. 1320-1321; *National Federation of the Blind v. Target Corp.* (N.D.Cal. 2006) 452 F.Supp.2d 946, 951-956 (*Target*); *Gomez v. Bang & Olufsen Am., Inc.,* (S.D.Fla., Feb. 2, 2017, No. 1:16-CV-23801) 2017 WL 1957182, at p. *3.) The rationale underlying the adoption of this nexus standard mirrors many of the public policies discussed by the courts in adopting the broader view that all websites are directly subject to the ADA, e.g., that Congress would have intended this result given the growing importance of websites for consumers and businesses. (See *Target,* at p. 955 [contrary interpretation would "effectively read[ ] out of the ADA the broader provisions enacted by Congress"].)

The first California appellate decision on the ADA website-coverage issue was filed while this appeal was pending. (*Thurston v. Midvale Corp.* (2019) 39 Cal.App.5th 634 (*Thurston*).) In *Thurston,* a blind woman sued a restaurant for disability discrimination under the Unruh Civil Rights Act for maintaining a website that was

18

incompatible with her screen reading software. (*Id.* at pp. 636-638.) The *Thurston* court upheld a summary judgment in the plaintiff's favor on her ADA violation claim based on the majority nexus theory, and thus found it unnecessary to reach whether it agreed with the more expansive view that all websites are "public accommodations" under the ADA.[7] (*Id.* at pp. 642-646.) In adopting the nexus standard, the court noted that neither the United States Supreme Court nor California Supreme Court have ruled on the issue and in the absence of such controlling authority, a California Court of Appeal may " 'make an independent determination of federal law.' " (*Id.* at p. 640.)

### B. *Analysis*

Martinez argues that this court should adopt the broader view that a website falls within the ADA's definition of a public accommodation as a matter of law and therefore his complaint satisfies the public accommodation element of his ADA claim. Martinez alternatively urges us to reverse the judgment based on a finding that he has sufficiently alleged facts to come within the nexus theory.

---

[7] The *Thurston* court identified a third view—that even with a showing of a nexus, a plaintiff cannot recover for unequal access to a website—citing the Third Circuit's decision in *Ford, supra,* 145 F.3d 601. (See *Thurston, supra,* 39 Cal.App.5th at p. 640.) However, a close reading of the *Ford* decision and later authority clarifies that the Third Circuit follows the majority nexus view. (See *Mahoney, supra,* 2020 WL 212010, at p. *2 [" 'Third Circuit has held . . . the ADA applies to services and privileges of a place of public accommodation as long as there is "some nexus between the services or privileges denied and the physical place . . . as a public accommodation." ' "]; *Walker v. Sam's Oyster House, LLC* (E.D.Pa., Sept. 18, 2018, No. CV 18-193) 2018 WL 4466076, at p. *2; *McGann v. Cinemark USA, Inc.* (3rd Cir. 2017) 873 F.3d 218, 229; *Menkowitz, supra,* 154 F.3d at pp. 120, 122; see also *Target, supra,* 452 F.Supp.2d at p. 954.)

Credit Union counters that we should determine a website is not a public accommodation as a matter of law and reject the nexus theory (arguing *Thurston* was wrongly decided), and thus determine Martinez cannot state a claim under any factual circumstances. Credit Union alternatively contends that if the nexus theory is applicable, Martinez's alleged facts do not bring his case within that theory.

We first find unmeritorious Credit Union's position that we should reject the nexus theory. Credit Union cites no relevant authority supporting this position. As discussed, virtually all of the courts adopting the majority view that a website is not a "public accommodation" under the ADA have also recognized ADA Title III liability can attach if the plaintiff shows a connection between the alleged disability discrimination on a website and the plaintiff's ability to access and/or enjoy the benefits of the entity's physical location.

*Northwest, supra,* 2018 WL 2933407, relied upon by the trial court and Credit Union, does not support a contrary rule. In dismissing the visually impaired plaintiff's claim against a credit union for ADA website deficiencies, the *Northwest* court did not discuss or even mention the nexus standard, and instead relied on another district court decision holding that a chatroom was not a " 'place of public accommodation' " because it was not a physical space. (*Id.* at p. *2, citing *Noah v. AOL Time Warner, Inc.* (E.D. Va. 2003) 261 F.Supp.2d 532.) However, because there was no claim in *Noah* that the chat room had any nexus to a physical facility, the *Noah* court did not reach the nexus issue. Accordingly, neither *Northwest* nor *Noah* provides useful guidance on the nexus issue.

We agree instead with each of the courts specifically addressing the issue that the nexus test governs if the ADA is construed to define a public accommodation to include only a physical place. (See, e.g., *Robles*, *supra*, 913 F.3d at pp. 904-906; *Thurston*, *supra*, 39 Cal.App.5th at pp. 642-644; *Gil*, *supra*, 242 F.Supp.3d at pp. 1320-1321.) As stated by the *Thurston* court, " ' "The statute applies to the services *of* a place of public accommodation, not services *in* a place of public accommodation. To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute." ' " (*Thurston*, at p. 642, quoting *Robles*, at p. 905.) Moreover, a narrower construction would defeat the purposes of the ADA. "The ADA is a remedial statute and as such should be construed broadly to implement its fundamental purpose of eliminating discrimination against individuals with disabilities." (*Thurston*, at pp. 642-643.) We would be undermining this purpose if we were to conclude that under no circumstances can discrimination on a website be actionable regardless of the connection between the discrimination and the place of public accommodation.

The nexus rule is further consistent with the ADA provision requiring an entity to provide "auxiliary aids" necessary to ensuring equal access for disabled individuals. (§ 12182(b)(2)(A)(iii).) The implementing regulation requires that a "public accommodation . . . take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals *because of the absence of auxiliary aids and services*, unless the public accommodation can demonstrate that taking those steps would fundamentally alter

21

the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." (28 C.F.R. § 36.303(a), italics added.) The regulation further clarifies that a public accommodation must *"furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities."* (28 C.F.R. § 36.303(c)(1), italics added.) Under this rule, "auxiliary aids and services" include "accessible electronic and information technology" and "other effective methods of making visually delivered materials available to individuals who are blind or have low vision." (28 C.F.R. § 36.303(b)(2).) The regulation identifies a "screen reader" as an "[e]xample[ ]" of an "auxiliary aid." (*Ibid.*)

These federal mandates requiring that a "public accommodation" ensure that its services are communicated and made available to disabled persons including by technical means (absent undue burdens or changes to the fundamental nature of the business) strongly support the application of the nexus theory if a public accommodation is defined as a physical place, i.e., that courts must consider the connection between a public accommodation and its website when evaluating whether the ADA applies to deficiencies on a website that make it more difficult for a disabled person to access the defendant's products and services.

Having found the nexus theory applicable if a public accommodation is defined as a physical place, we next turn to the issue whether Martinez alleged sufficient facts to trigger liability under the nexus theory.

The courts have not been consistent in defining the scope of the nexus requirement. (See *General Nutrition, supra,* 323 F.Supp.3d at p. 1375 ["While courts agree a nexus is necessary, few have defined the nexus precisely."].) But most courts have interpreted the requirement broadly to conclude that a plaintiff has made the requisite showing if the facts show the website "connect[s] customers to the goods and services of [the defendant's] physical" place. (*Robles, supra,* 913 F.3d at pp. 905-906; *Thurston, supra,* 39 Cal.App.5th at pp. 644-646; see *General Nutrition,* at p. 1376; see also *Castillo, supra,* 286 F.Supp.3d at pp. 878-881.) We agree with this standard. Because the nexus test presupposes that Congress did not intend ADA to apply directly to a website, courts applying the nexus test consider whether the alleged website deficiencies impinge on the plaintiff's ability to have equal access to, and enjoyment of, the products and services offered at the physical location. This standard requires a court to focus on the connection between the website and the goods and services offered by the defendant.

*Robles* and *Thurston* both applied this standard to uphold a visually impaired plaintiff's ADA claim against a restaurant. The *Robles* court found the plaintiff alleged sufficient facts to show the requisite nexus in her action against Domino's Pizza based on allegations that Domino's website (and related "app") permitted the customer to find the location of the nearest restaurant and is the primary means of ordering pizzas "to be picked up at or delivered from Domino's restaurants." (*Robles, supra,* 913 F.3d at p. 905.) The *Thurston* court found the nexus test was satisfied by facts showing the restaurant's website provided consumers with the opportunity to review the menu and

23

make a reservation, which the court found *expedited the customer's ability to obtain the benefits of the restaurant's physical facility.* (*Thurston, supra,* 39 Cal.App.5th at pp. 638, 645-646.) *Thurston* explained these website features "speed[ ] up" the customer's "experience at the physical location" and thus facilitate the use and enjoyment of the services offered at the restaurant. (*Id.* at p. 645.) The court further stated the nexus test was met even though the website was not necessarily an "extension" of the restaurant's physical services (*id.* at pp. 644-645) because, as in *Robles,* "the *website connects customers to the services of the restaurant*" (*id.* at p. 646, italics added).

Closer to the circumstances here, three federal district courts found the nexus test was satisfied in an action by a visually impaired plaintiff against a credit union for a website containing defects similar to those alleged here. (See *Carroll v. FedFinancial Federal Credit Union* (E.D.Va. 2018) 324 F.Supp.3d 658 (*FedFinancial*); *Jones v. Fort McPherson Credit Union* (N.D.Ga. 2018) 347 F.Supp.3d 1351 (*Fort McPherson*); *Jones v. Piedmont Plus Federal Credit Union* (N.D.Ga. 2018) 335 F.Supp.3d 1278 (*Piedmont Plus*).)

In *FedFinancial,* the court found the nexus test satisfied based on the plaintiff's allegations that the credit union's website "is a service of Defendant's physical, brick and mortar location," and " 'provides access to [the credit union's] array of services, privileges, advantages, and accommodations including, but not limited to, a branch locator for the [credit union's] facility, shared branch locations, and ATMs so that a potential customer may determine from the website the closest location for them to visit, descriptions of its types of banking services and accounts, online banking and bills pay

24

services, loan information and documents, location service hours, special offers, an "About" page so that users may determine [the credit union's] services . . . and qualifications for membership.' Plaintiff . . . also alleged that the access barriers on Defendant's website . . . prevented him from . . . visiting Defendant's physical location." (*FedFinancial, supra,* 324 F.Supp.3d at pp. 666-667.)

In finding these allegations sufficient, the *FedFinancial* court rejected the credit union's argument that the nexus test was not met because the plaintiff did not allege he was " 'require[d] . . . to do business with [the credit union] only over its website' " or that the use of the website was "necessary . . . to facilitate the use of the [credit union's] brick-and-mortar places." (*FedFinancial, supra,* 324 F.Supp.3d at p. 667.) The court reasoned that the credit union was "mischaracteriz[ing] the harm alleged by Plaintiff. Plaintiff has alleged that the accessibility barriers on Defendant's website prevent him from acquiring full information about Defendant's services. . . . And Defendant's argument ignores the fact that Plaintiff has been denied equal access to information that would enable him to visit Defendant's brick-and-mortar location." (*Ibid.*)

In *Fort McPherson*, the court likewise found the nexus test satisfied based on the plaintiff's allegations that the credit union's website "allows users to find the physical location of Defendant's facility, provides information about Defendant's services (including twelve online calculators), advantages, accommodations, and amenities, and enables visitors to the website to 'pre-shop' before visiting the physical location to purchase a mortgage." (*Fort McPherson, supra,* 347 F.Supp.3d at p. 1354.) Similarly, the *Piedmont Plus* court found the nexus test was satisfied based on the plaintiff's

25

allegations that the website provides " 'information concerning [Defendant's] locations it operates [and] information and descriptions of its amenities and services, privileges, advantages, and accommodations,' and it 'allowed users to find the locations for them to visit.' " (*Piedmont Plus, supra,* 335 F.Supp.3d at p. 1282.)

Other courts have similarly applied the nexus test to ADA website accessibility claims asserted against other types of businesses. (See, e.g., *Haynes, supra,* 741 Fed.Appx. at pp. 753-754 [nexus requirement met based on allegations store's website allowed customers to locate physical store locations, purchase gift cards online, and access information about goods and services and accommodations of the donut shops]; *Gil, supra,* 242 F.Supp.3d at pp. 1320-1321 [finding blind plaintiff satisfied nexus theory by alleging grocery/pharmacy chain's website allows customers to locate physical store locations and fill/refill prescriptions for in-store pickup or delivery]; *General Nutrition, supra,* 323 F.Supp.3d at pp. 1375-1376 [nexus test met where website "operates as a gateway to physical stores," including that "website . . . provid[es] a store locater"; permit[s] customers to "purchase products remotely"; and provides "information about store" and "product promotions and deals"].)

Guided by these decisions and the policies underlying the nexus standard, we determine Martinez's allegations are sufficient to bring his case within this standard. Martinez alleged the manner in which the Credit Union's website was formatted precluded him from using his screen reading software to allow him to read the website's content. He alleged this defect precluded him from determining what is on the website, looking for the Credit Union locations, "check[ing] out" the services, and determining

26

which location to visit. He alleged that he could not "effectively browse for Defendant's locations, products and services online." He claimed that if the website were accessible, he could "independently investigate services and products, and find the locations to visit via Defendant's website as sighted individuals can and do."

These allegations are sufficient to show the requisite nexus between the website and Credit Union's physical locations. As in *Robles*, *Thurston*, *FedFinancial*, *Fort McPherson*, and *Piedmont Plus*, the allegations support that Credit Union's website connects customers to the goods and services offered at Credit Union's physical locations. Although the Domino's website in *Robles* was more heavily integrated with the physical locations than what is alleged here because it was a critical tool for ordering the product (a pizza), Martinez's allegations are similar to the allegations found sufficient to establish a nexus in *Thurston*, *FedFinancial*, *Fort McPherson*, and *Piedmont Plus*. In each of those cases, the website was not necessary to obtaining the goods and services offered by the defendant, but it facilitated the customer's experience by providing information and making it easier (faster, more efficient, and/or more effective) for the customer to locate the physical facility and to understand and access the products and services offered at the defendant's location. Similarly here, Martinez alleged the Credit Union's website permits the customer to research and prepare before going to the physical facility, including to make informed decisions about its products and services and thus to have full and equal access to the entity's offerings.

To the extent Martinez's pleading was not as detailed as in *FedFinancial*, *Fort McPherson*, and *Piedmont Plus*, Credit Union never brought a timely pleading challenge

that would have permitted Martinez the opportunity to amend his complaint to provide more detail. The record supports that Credit Union had the full opportunity to conduct discovery to obtain more specific information on the allegations and relevant factual issues. Thus, any challenge now to the lack of specificity in the complaint is unavailing.[8]

Arguing the allegations do not satisfy the nexus standard, Credit Union relies on *Price v. Everglades College, Inc.* (M.D.Fla., July 16, 2018, 6:18-cv-492-Orl-31GJK) 2018 WL 3428156 (*Everglades*), in which the federal district court found the plaintiff's allegations were insufficient to show the required nexus. There, the visually impaired plaintiff alleged the defendant's administrator told him he could find information about the college on the website, but when he went to the website, it was not compatible with screen reading software, thus allegedly preventing him from learning about the application process; researching available degree types, prerequisites, and course descriptions; viewing the course catalog; and obtaining information about living arrangements that could accommodate his disability. (*Id.* at p. *1.)

In finding these allegations inadequate to establish the required nexus, the court relied on two other unpublished Eleventh Circuit district court decisions that distinguished between "an inability to use a website to gain information about a physical location" from the "inability to use a website that impedes access to enjoy a physical

---

[8]     We note "[w]hether a particular facility is a 'public accommodation' under the ADA is a question of law." (*Jankey v. Twentieth Century Fox Film Corp.* (C.D.Cal. 1998) 14 F.Supp.2d 1174, 1178.) On remand, the court's determination on this issue will depend on proof of Martinez's allegations.

location," and had found the former to be " 'insufficient to state a claim.' " (*Everglades, supra,* 2018 WL 3428156, at p. *2.) The *Everglades* court stated "a contrary finding would require all websites with *any* nexus to a physical public accommodation to be formatted in such a way that they are accessible to screen reader software," and that, as with other courts, it was "unwilling to take a leap with such far-reaching implications." (*Ibid.*) The court further found the plaintiff alleged "only facts indicating that his ability to gain information about the location, rather than his access to enjoyment of the university itself, was compromised," noting "the Plaintiff does not claim that he was unable to apply to the university, pay tuition, or use the student portal on the website." (*Ibid.*)

We are unconvinced by *Everglades*'s reasoning. First, the plaintiff's allegations did reflect his inability to obtain critical information necessary to decide whether to apply and/or enroll in the college, and thus, in our view, the allegations supported that the website deficiencies precluded his " 'access to enjoy the physical university.' " (*Everglades, supra,* 2018 WL 3428156, at pp. *1-*2.) Second, the *Everglades* court based its holding on its conclusion that a plaintiff must allege the challenged website is a *necessary tool* for obtaining access to the college's facilities. This rule is contrary to the majority position and would improperly exclude ADA coverage for many vital services that aid in connecting individuals to a business's physical site. Third, we find unpersuasive the *Everglades* court's concern that broadly interpreting the nexus standard would mean "all websites with *any* nexus to a physical public accommodation" would be required to be accessible to screen reader software. (*Id.* at p. *2.) The fact that many

29

disabled plaintiffs challenging an inaccessible website would be successful in showing the required nexus derives from the fact that websites often provide important tools to connect customers to a physical place. That is a primary reason for many websites. Depriving a person with a covered disability from access to such an essential amenity is precisely the inequity the ADA was enacted to prevent.

Because we have concluded Martinez's allegations were sufficient to satisfy the nexus standard, we do not reach the legal issue whether the ADA applies to websites even without a nexus to a physical place. We must reverse a judgment on the pleadings if the plaintiff has stated a cause of action on any legal theory (*Rossberg, supra*, 219 Cal.App.4th at p. 1490), and an appellate court generally will not address an issue unnecessary to the resolution of the appeal (*Young v. Three for One Oil Royalties* (1934) 1 Cal.2d 639, 647-648; *Oxbow Carbon & Minerals, LLC v. Dept. of Industrial Relations* (2011) 194 Cal.App.4th 538, 552, fn. 11; see *Robles, supra*, 913 F.3d at p. 905, fn. 6 [declining to decide broader issue where requisite nexus found]; *Thurston, supra*, 39 Cal.App.5th at p. 644 [same]).

C. *Other Asserted Grounds for Affirming the Dismissal of the Complaint*

Credit Union contends that if we find Martinez sufficiently alleged that the ADA applies to its website, we should affirm the dismissal on the ground that courts have no jurisdiction to require a private entity to alter its website to comply with the ADA because the United States Congress has the exclusive role to establish website standards, and Congress has not established such standards. Credit Union maintains that "if Congress intended to regulate the [I]nternet" to require visually impaired individuals to

30

be able to "read" websites, "it should have spoken clearly on the subject," and that "[i]t is inappropriate for the Court—almost 27 years after the passage of the ADA—to announce sudden, new regulation of an industry (online commerce) that has existed for years."

The argument is factually and legally unsupported.

First, Martinez is not asking the trial court to impose a "sudden" or "new" regulation on the "online commerce" industry. The statutory and regulatory rules have long mandated that a "public accommodation" ensure that its online services are made available to disabled persons (absent undue burdens or changes to the fundamental nature of the business). (See *Robles*, *supra*, 913 F.3d at p. 907 ["at least since 1996 Domino's has been on notice that *its online offerings* must effectively communicate with its disabled customers and facilitate 'full and equal enjoyment' of Domino's goods and services"]; see also *Target*, *supra*, 452 F.Supp.2d at p. 956 [court holding in 2006 that national retailer's website may violate Title III if its inaccessibility "impedes the full and equal enjoyment of goods and services offered" at its stores].) Consistent with this conclusion, the existing DOJ regulations state a public accommodation must provide "auxiliary aids and services" to ensure "effective communication" with disabled persons (28 C.F.R. § 36.303(a), (c)(1)), and that these requirements may include "screen reader software . . . or other effective methods of making visually delivered materials available to individuals who are blind or have low vision" (28 C.F.R. § 36.303(b)(2)). These regulations also require this assistance to "*be provided in accessible formats*, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." (28 C.F.R. § 36.303(c)(1)(ii), italics added.)

31

Additionally, Martinez is not seeking to "regulate" the entire "online commerce" industry. Rather, he seeks an injunction requiring *Credit Union* to "take the steps necessary" to make *its own website* "accessible to and usable by visually-impaired individuals," and limits any requested remedial measures to $50,000.

Further, we find unavailing Credit Union's legal contention that the alleged defects in its website can be remedied only by Congress's enactment of a specific website accessibility standard. The argument is inconsistent with the fundamental principle that a legislature has the authority to enact general laws and delegate enforcement issues to a regulatory body and/or to leave it to the judicial branch to interpret the law and determine whether the party has complied in the particular case. (*See Marbury v. Madison* (1803) 5 U.S. 137, 177 [discussing role of the judiciary under separation of powers, and concluding "[i]t is emphatically the province and duty of the judicial department to say what the law is"].) This is particularly true with respect to the ADA, which often requires a flexible approach to enforcement. (*Robles, supra,* 913 F.3d at p. 908.) " '[T]he ADA and its implementing regulations are intended to give public accommodations maximum flexibility in meeting the statute's requirements. This flexibility is a feature, not a bug,' " of the statutory scheme. (*Ibid.; see Andrews, supra,* 268 F.Supp.3d at p. 403 [ADA's antidiscrimination standards "are meant to be applied contextually and flexibly"].)

Credit Union relies on *Marsh v. Edwards Theater Circuit, Inc.* (1976) 64 Cal.App.3d 881 for a rule that only a legislature can determine appropriate accessibility standards. *Marsh* is inapposite. *Marsh* involved architectural barriers (theatre seating) that existed long before the laws requiring enhanced protections for

32

disabled individuals, and the court interpreted statutes applicable before the enactment of the ADA and before the current version of the Unruh Civil Rights Act. (*Id.* at pp. 886-892; see *Flowers v. Prasad* (2015) 238 Cal.App.4th 930, 941, fn. 8.)

Credit Union also relies on a line of United States Supreme Court decisions in which the court found certain administrative rules (arising in other contexts such as greenhouse gas, tobacco, telephone regulations) to be beyond the agency's delegated powers. (See, e.g., *MCI Telecommunications Corp. v. American Tel. & Tel. Co.* (1994) 512 U.S. 218, 231; *FDA v. Brown & Williamson Tobacco Corp.* (2000) 529 U.S. 120, 146; *Gonzales v. Oregon* (2006) 546 U.S. 243, 267; *Util. Air Regulatory Group v. EPA* (2014) 573 U.S. 302.) This issue is not before us because it is undisputed the DOJ has the delegated authority to promulgate regulations on website accessibility. (§ 12186(b); see *Robles, supra*, 913 F.3d at p. 903, fn. 2.) And the fact that the DOJ has not yet issued specific regulations does not bar the courts from addressing these issues. (*Robles*, at pp. 909-911; *Thurston, supra*, 39 Cal.App.5th at p. 654.)

In this regard, *Robles* and *Thurston* recently rejected arguments that a court should abstain from ruling on an ADA website claim because the DOJ has not identified specific standards for website accessibility compliance. (*Robles, supra*, 913 F.3d at pp. 909-911; *Thurston, supra*, 39 Cal.App.5th at p. 654.) The *Robles* court stated: "Our Constitution does not require that Congress or DOJ spell out exactly how [a private entity] should fulfill its obligation" that its website provide "effective communication and facilitate 'full and equal enjoyment' of [its] goods and services to its [disabled] customers . . . ." (*Robles*, at p. 909.) The court further observed: "[T]he application of the ADA to the

33

facts of this case are well within the court's competence. Properly framed, the issues for the district court to resolve on remand are whether [the defendant's] website and app provide the blind with auxiliary aids and services for effective communication and full and equal enjoyment of its products and services. Courts are perfectly capable of interpreting the meaning of 'equal' and 'effective' and have done so in a variety of contexts. In addition, if the court requires specialized or technical knowledge to understand [the plaintiff's] assertions, the parties can submit expert testimony. [Citations.] Whether [the defendant]'s website and app are effective means of communication is a fact-based inquiry within a court's competency." (*Id.* at pp. 910-911.)

We concur with this reasoning. (See *Thurston, supra*, 39 Cal.App.5th at pp. 654-655 [agreeing with "the Ninth Circuit's recent rejection of the [abstention] doctrine to a lawsuit involving a website and app alleged to be inaccessible under the ADA" and finding the trial court's consideration of issues involving the scope of an injunction "well within the court's competence to administer"].)

Finally, we comment briefly on Credit Union's lengthy discussion in its appellate briefs about its subjective concerns with the Accessibility Guidelines (the online industry's current accessibility standards, sometimes called WCAG 2.0).

First, the discussion is based on facts that are not properly before us. In reviewing a judgment on the pleadings, we are limited to examining the factual allegations and any matter for which judicial notice may be taken. (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 999.) In challenging the Accessibility Guidelines, Credit Union relies on facts and sources of information that are not contained in the

34

pleadings and are outside the appellate record, and for which it never sought judicial notice.

Second, the assertions are not ripe as they concern the remedies issues that the court has not yet addressed. (See *Robles, supra*, 913 F.3d at p. 908; *Reed v. CVS Pharmacy. Inc.* (C.D.Cal., Oct. 3, 2017, No. CV 17-3877-MWF (SKx)) 2017 WL 4457508, at p. *4.) In his complaint, Martinez alleged the manner in which Credit Union formats its website prevents "free and full use by blind persons using screen reading software"; compliance with online industry standards would make Credit Union's website accessible to blind and visually impaired persons; these "guidelines are successfully followed by numerous large business entities to ensure their websites are accessible"; and that without the "basic components" identified in the guidelines, a website will be inaccessible to a blind or visually impaired person using a screen reader.

These allegations are sufficient to support that if Martinez proves an ADA violation, there are alleged workable and legally enforceable remedies that would address the ADA violations. In reaching this conclusion, we do not suggest the Accessibility Guidelines create a particular legal standard for ADA compliance. But Martinez's pleading does not seek to impose liability based solely on Credit Union's failure to comply with the Accessibility Guidelines; rather he seeks to impose liability on the Credit Union for failing to comply with provisions of the Unruh Civil Rights Act and the ADA. Although the Guidelines may be admissible for limited purposes, such as showing the feasibility of remedying the defects in the website or to assist in preparing a workable injunction if Martinez proves his claim, Martinez's cause of action is not necessarily

35

dependent on the viability or validity of the Guidelines. (See *Thurston, supra*, 39 Cal.App.5th at pp. 646-648.) During the hearing on the motions in limine, counsel stated their intent to present expert testimony on the technical website issues, and the court may rely on that evidence to determine an appropriate remedy if liability is proven.[9]

Additionally, to the extent Credit Union is suggesting that any remedy would be overly burdensome, this argument is not the basis for a pleading challenge. As Credit Union acknowledged in its trial brief, such claims constitute affirmative defenses. (See *Andrews, supra*, 268 F.Supp.3d at p. 404; *Brooklyn Center for Independence of Disabled v. Bloomberg* (S.D.N.Y. 2013) 980 F.Supp.2d 588, 657.) Moreover, what is reasonable, unduly burdensome, or a fundamental alteration depends on the particular facts and circumstances of the case. (See *Andrews*, at p. 404; see also *Staron v. McDonald's Corp.* (2d Cir. 1995) 51 F.3d 353, 356.)

III. *Motions For Judicial Notice*

Martinez brought two motions for judicial notice. In the first motion, he asked that we take judicial notice of (1) the DOJ's Statement of Interest filed in May 2012 in a case brought by the National Association of the Deaf in a Massachusetts federal district court (*see Netflix, supra*, 869 F.Supp.2d at p. 199); and (2) three unpublished Central

---

[9] Many, if not most, of Credit Union's challenges to the *Thurston* decision involve its conclusions on remedies and the scope of the issued injunction. That case was at a different stage than here (granting summary judgment in the disabled plaintiff's favor), and thus we do not reach these arguments. We likewise do not address Credit Union's comments about standing issues, which Credit Union admits are not before us on this appeal. (See Respondent's Brief at p. 36 ["the issue of standing is not presently before the Court"].)

District of California federal court orders filed in 2014 and 2015 discussing the DOJ's position on ADA website coverage and/or reflecting the court's adoption of the "nexus" theory.

We decline to take judicial notice of these materials as unnecessary to the resolution of the appellate issues before us.

With respect to the DOJ's 2012 Statement of Interest, we have already noted (based on statements in published federal cases) that the DOJ has been historically generally supportive of ADA website accessibility but has declined to issue specific regulations (see fn. 5, *ante*). We do not find that the DOJ's single statement in one particular case eight years ago adds helpful or material information on this point or to our analysis.

With respect to the unpublished federal district court decisions, two of the orders are available on an online platform (e.g., Westlaw) and therefore judicial notice is unnecessary. (See *Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 817-818.) As reflected in our opinion, we have reviewed various unpublished federal district court decisions, and can do so without specifically taking judicial notice of each decision. (*Ibid.*; see *Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18.) With respect to the third order that is not on an available database, the order does not add anything material to our analysis. As to this and the other proffered federal district court orders, we have considered more recent published Ninth Circuit authority on these same points in reaching our conclusions.

37

In his second motion, Martinez requests that we take judicial notice of a consent decree and several settlement agreements in unrelated cases. This motion was untimely (filed after Credit Union filed its respondent's brief) and contains information unnecessary to our analysis and determination in this case. We thus decline to grant the motion.[10]

## DISPOSITION

Judgment reversed. Respondent Credit Union to bear appellant Martinez's costs on appeal.

HALLER, J.

WE CONCUR:

McCONNELL, P. J.

DATO, J.

KEVIN J. LANE, Clerk of the Court of Appeal, Fourth Appellate District, State of California, does hereby Certify that the preceding is a true and correct copy of the Original of this document/order/opinion filed in this Court, as shown by the records of my office.

WITNESS, my hand and the Seal of this Court.

**06/19/2020**

KEVIN J. LANE, CLERK

By _____ Galvez
Deputy Clerk

---

[10]     We note additionally that we have consolidated this appeal with an appeal from the same case filed prematurely by Martinez.

38

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660.

On June 22, 2020, I served the foregoing document described as **PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY RE: DEFENDANT'S DEMURRER TO COMPLAINT** on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

☐   (BY MAIL)   I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐   (BY FEDERAL EXPRESS OVERNIGHT)   I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by Federal Express that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by Federal Express with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by Federal Express at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐   (BY HAND DELIVERY) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for hand delivery by courier. I caused such document t be delivered by hand to the addressee(s) designated.

☒   (BY ELECTRONIC TRANSMISSION)   I served electronically from the electronic notification address of mjung@pacifictrialattorneys.com the document described above and a copy of this declaration to the person and at the electronic notification address set forth herein. The electronic transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on June 22, 2020, at Newport Beach, California.

Mandy K. Jung

1

**SERVICE LIST**

2
3
4
5

Carter L. Norfleet, Esq.
Joel C. Griswold, Esq.
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
cnorfleet@bakerlaw.com
jcgriswold@bakerlaw.com

Attorneys for Defendant
Genesco Inc.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 4 -

SUPERIOR COURT - COUNTY OF SAN BERNARDINO
San Bernardino District - Civil
247 West Third Street

San Bernardino CA 924150210

Office Hours: 8 a.m.- 4 p.m.

TO:

FROM: SAN BERNARDINO COUNTY SUPERIOR COURT-San Bernardino District - Civil

---

### NOTICE OF RETURN OF DOCUMENT(S)

---

CASE NUMBER: CIVDS1939376
CASE NAME:    LICEA V GENESCO INC.

COMMENTS:

Stip to continue 6/23/20 demurrer & 6/30/20 TSC is returned by
Court for the following reason(s): motion date unavailable-need
2 stips for different h

*8/4/20 first available date for Demr.   S32*

Note:  Please keep this notice attached when resubmitting.  Thank You.

06/17/20                        By:  KIM ALLAIN
                                     _____
                                         Deputy Clerk

---

### NOTICE RETURNING DOCUMENT(S)

Notice 'NOR' has been printed for the following Attorneys/Firms
or Parties for Case Number CIVDS1939376 on  6/17/20:


PACIFIC TRIAL ATTORNEYS                BAKER & HOSTETLER LLP
4100 NEWPORT PLACE DRIVE               11601 WILSHIRE BOULEVARD
SUITE 800                              SUITE 1400
NEWPORT BEACH, CA 92660                LOS ANGELES, CA 90025



| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY:
Scott J. Ferrell, Esq.
Pacific Trial Attorneys
4100 Newport Place Dr., Ste. 800, Newport Beach, CA 92660

STATE BAR NUMBER
**202091**

Reserved for Clerk's File Stamp

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JUN 17 2020

BY _____
ANGELINE GARCIA, DEPUTY

TELEPHONE NO.: 949-706-6464
E-MAIL ADDRESS: sferrell@pacifictrialattorneys.com
ATTORNEY FOR (Name): Luis Licea
FAX NO. (Optional):

TRIAL SETTING CONFERENCE DATE: June 30, 2020
UNLIMITED CASE: X
LIMITED CASE:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO**

COURTHOUSE ADDRESS:
247 W. Third Street, San Bernardino, CA 92415-0210, Central Justice Center

PLAINTIFF: LUIS LICEA

DEFENDANT: GENESCO INC., et al.

| **INITIAL TRIAL SETTING CONFERENCE STATEMENT** | CASE NUMBER: CIVDS1939376 |
|---|---|

**INSTRUCTIONS:** All applicable boxes must be checked, and the specified information must be provided. **This document must be filed and served at least 15 days prior to the trial setting conference date.**

1. **Party or parties** (answer one):
   a. ■ This statement is submitted by party (*name*): Plaintiff Luis Licea
   b. ☐ This statement is submitted jointly by parties (*names*):

2. **Service of Complaint** on all parties has ☑ has not ☐ been completed.

3. **Service of Cross-Complaint** on all parties has ☐ has not ☐ been completed.

4. **Description of case** in Complaint: This complaint states causes of action under the Unruh Civil Rights Act, Cal. Civ. Code sec. 51.

5. **Description of case** in Cross-Complaint:

6. Has all discovery been completed: Yes ☐ No ☑ Date discovery anticipated to be completed: November 2020

7. Do you agree to mediation? Yes ☑ No ☐ Please check type agreed to: Private: _____ Court-sponsored: X

8. **Related cases, consolidation, and coordination:** Please attach a Notice of Related Case.

   ☐ A motion to ☐ consolidate ☐ **Trial dates requested: Yes** ☐ No ☐ Available dates: _____ Time estimate: _____

9. **Other issues:**
   ☐ The following additional matters are requested to be considered by the Court:

10. **Meet and Confer:**
    ☐ The parties represent that they have met and conferred on all subjects required by California Rules of Court, Rule 3.724.

    ☐ The parties have entered into the following stipulation(s):

11. Total number of pages attached (*if any*): _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the Initial Trial Setting Conference, including the written authority of the party where required.
Date: 6/16/2020

Scott J. Ferrell
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PARTY OR ATTORNEY)

Form # 13-09001-360
Rev.6-2020 Mandatory

**INITIAL TRIAL SETTING CONFERENCE STATEMENT**

FAXED

1   Scott J. Ferrell (Bar No. 202091)
    sferrell@pacifictrialattorneys.com
2   **PACIFIC TRIAL ATTORNEYS, APC**
    4100 Newport Place Drive, Suite 800
3   Newport Beach, California 92660
    Telephone: (949) 706-6464
4   Facsimile:  (949) 706-6469

5   Attorneys for Plaintiff

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

JUN 1 0 2020

VERONICA GONZALEZ, DEPUTY

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                 **FOR THE COUNTY OF SAN BERNARDINO**

10

11  LUIS LICEA, an individual,              Case No. CIVDS1939376

12              Plaintiff,                  **PLAINTIFF'S MEMORANDUM OF
                                            POINTS AND AUTHORITIES IN
13      v.                                  SUPPORT OF HIS RESPONSE IN
                                            OPPOSITION TO DEFENDANT'S
14  GENESCO INC., a Tennessee corporation; and   DEMURRER TO COMPLAINT
    DOES 1-10, inclusive,
15                                          [Evidentiary Objections filed concurrently
                Defendants.                 herewith]
16
                                            Date:  June 23, 2020
17                                          Time: 8:30 a.m.
                                            Dept.: S32
18                                          Judge:  Hon. Wilfred J. Schneider, Jr.

19                                          Action Filed:  December 30, 2019
                                            Trial Date:    TBA
20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................10

II.  ARGUMENT...............................................................................................................10

   A.   The Website Barriers Alleged in the Complaint Are Actionable Under the Unruh Act
        Independent of the ADA. ..................................................................................10

        1.   The Unruh Act Applies to "Business Establishments," Which Are Broader Than
             "Places of Public Accommodations" and Not Subject to a "Nexus"
             Requirement.................................................................................................11

        2.   The Complaint Alleges Sufficient Facts of Intentional Discrimination. ...........12

             a)   Only Ultimate Facts Are Required to Be Pled.......................................12

             b)   This Court Is Bound by the California Court of Appeal's Decision in
                  *Ruiz v. Musclewood Inv. Props., LLC.*.....................................................13

             c)   Two Federal Court Judges Recently Held that Nearly Identical
                  Complaints Plausibly Alleged Intentional Discrimination in Violation of
                  the Unruh Act...........................................................................................13

             d)   The Ninth Circuit's Decision in *Greater Los Angeles Agency on
                  Deafness, Inc. v. Cable News Network, Inc.* Is Distinguishable............13

             e)   The Ninth Circuit's Unpublished Decision in *Earll v. eBay, Inc.* Has No
                  Persuasive Value Here and Is Distinguishable. ......................................14

   B.   The Complaint Also Alleges an Unruh Act Cause of Action Based Upon ADA
        Violations, Which Is Expressly Permissible Under Section 51(f) of the Civil Code. ....15

   C.   The Website Barriers Alleged in the Complaint Are Actionable Under the ADA
        Because the Complaint Pleads a "Nexus" Between Defendant's Commercial Website
        and Its Brick and Mortar Store Locations....................................................................15

        1.   Title III of the ADA Prohibits Discrimination in the Enjoyment of Services "of"
             Any Place of Public Accommodation, Instead of "at" or "in". ..........................16

        2.   The ADA's Statute Merely Identifies a Few Examples Within Each of the 12
             Categories of Places of Public Accommodations, Which Are Innumerable. .....16

        3.   This Court Is Bound to Liberally Construe the ADA's Categories of Public
             Accommodation....................................................................................................16

        4.   Congress Intended the ADA to Adapt to Changes in Technology. ....................17

        5.   This Court Is Bound by *Carolyn v. Orange Park Community Ass'n*..................17

PLAINTIFF'S OPPOSITION TO DEMURRER TO COMPLAINT

6. The Supreme Court of the U.S. Recently Characterized "Cyberspace" as a "Place". ...................................................................................................18

7. Both the California Court of Appeal and the Ninth Circuit Have Expressly Recognized the Viability of ADA Claims Predicated Upon Communication Barriers on Commercial Websites. ..................................................................18

8. Assuming *Arguendo* that a "Nexus" Standard Is Applicable, a Sufficient Connection Exists Between Defendant's Website and Its Brick and Mortar Locations.............................................................................................................20

D. Defendant's Telephone Service Accommodation Raises Factual Questions that Are Inappropriate for Resolution Via a Demurrer.................................................................21

E. Leave to Amend Should Be Granted. ...............................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Andrews v. Blick Art Materials, LLC,*
    268 F. Supp. 3d 381 (E.D.N.Y. 2017) (Weinstein, J.) ........................................................19

*Baughman v. Walt Disney World Co.,*
    685 F.3d 1131 (9th Cir. 2012) ........................................................17

*Brintley v. Aeroquip Credit Union,*
    321 F. Supp. 3d 785 (E.D. Mich. 2018), *rev'd on other grounds*, 936 F.3d 489 (6th
    Cir. 2019) ........................................................19, 20

*Brown v. BPS Direct, LLC, et al.,*
    Case No. LACV 14-04622 JAK (JEMx) [Dkt. 30 at 4-7] (C.D. Cal. Oct. 6, 2014)
    (Krondstadt, J.) ........................................................21

*Butler v. Adoption Media, LLC,*
    486 F. Supp. 2d 1022 (N.D. Cal. 2007) ........................................................12

*Carparts Distribution Ctr., Inc. v. Automotive Wholesalers Assoc. of New England,
Inc.,*
    37 F.3d 12 (1st Cir. 1994) ........................................................20

*Carroll v. FedFinancial Fed. Credit Union,*
    324 F. Supp. 3d 658 (E.D. Va. 2018) ........................................................19, 20

*Chapman v. Pier 1 Imports (U.S.) Inc.,*
    631 F.3d 939 (9th Cir. 2011) ........................................................15, 16

*Cullen v. Netflix, Inc.,*
    880 F. Supp. 2d 1017 (N.D. Cal. 2012) ........................................................14

*Davis v. Orlando Wilshire Investments Ltd., et al.,*
    No. 5:15-cv-01738-MWF-KK [Dkt. 17 at 10] (C.D. Cal. Nov. 2, 2015) (Fitzgerald,
    J.) ........................................................21

*Del-Orden v. Bonobos, Inc.,*
    2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017) ........................................................19, 20

*Doe v. Mutual of Omaha Ins. Co.,*
    179 F.3d 557 (7th Cir. 1999) (Posner, C.J.) ........................................................19

*Dominguez v. Banana Republic, LLC,*
    -- F. Supp. 3d –, 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020) ........................................................19

*Earll v. eBay, Inc.,*
    599 Fed. Appx. 695 (9th Cir. 2015) ........................................................14

4

*Enyart v. National Conference of Bar Examiners, Inc.,*
  630 F.3d 1153 (9th Cir. 2011) .......................................................................17

*Feldman v. Pro Football, Inc.,*
  419 Fed. Appx. 381 (4th Cir. 2011)................................................................21

*Ford v. Schering-Plough Corp.,*
  145 F.3d 601 (3d Cir. 1998)...........................................................................18

*Gniewkowski v. Lettuce Entertain You Enterprises, Inc.,*
  251 F. Supp. 3d 908 (W.D. Pa. 2017).............................................................20

*Gorecki v. Dave & Buster's Inc.,*
  2017 WL 6371367 (C.D. Cal. Oct. 10, 2017) .................................................21

*Gorecki v. Hobby Lobby Stores, Inc.,*
  2017 WL 2957736 (C.D. Cal. June 15, 2017) (Walter, J.) .............................21

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.,*
  742 F.3d 414 (9th Cir. 2014) ............................................................13, 14, 15

*Harty v. Nyack Motor Hotel Inc.,*
  No. 19-CV-1322 (KMK), 2020 WL 1140783 (S.D.N.Y. Mar. 9, 2020) ..........19

*Haynes v. Dunkin' Donuts LLC,*
  741 Fed. Appx. 752 (11th Cir. 2018).........................................................19, 20

*Jones v. Fort McPherson Credit Union,*
  347 F. Supp. 3d 1351 (N.D. Ga. 2018) ......................................................19, 20

*Markett v. Five Guys Enterprises LLC,*
  2017 WL 5054568 (S.D.N.Y. July 21, 2017) .................................................20

*Martinez v. Adidas America, Inc.,*
  2019 WL 3002864 (C.D. Cal. July 9, 2019) (Bernal, J.) ...............................13

*Molski v. M.J. Cable, Inc.,*
  481 F.3d 724 (9th Cir. 2007) .........................................................................15

*Morgan v. Joint Admin. Bd., Ret. Plan of the Pillsbury Co. and Am. Fed'n of Grain Millers, AFL-CIO-CLC,*
  268 F.3d 456 (7th Cir. 2001) (Posner, J.) .....................................................19

*National Ass'n of the Deaf v. Netflix, Inc.,*
  869 F. Supp. 2d 196 (D. Mass. 2012) .............................................................17

*National Fed'n of the Blind v. Scribd Inc.,*
  97 F. Supp. 3d 565 (D. Vt. 2015).....................................................................20

*National Fed'n of the Blind v. Target Corp.,*
  452 F. Supp. 2d 946 (N.D. Cal. 2006) ............................................................20

PLAINTIFF'S OPPOSITION TO DEMURRER TO COMPLAINT

*National Fed'n of the Blind v. Target Corp.,*
 582 F. Supp. 2d 1185 (N.D. Cal. 2007) .................................................................11, 12

*Organization for the Advancement of Minorities v. Brick Oven Rest.,*
 406 F. Supp. 2d 1120 (S.D. Cal. 2005) ........................................................................11

*Packingham v. North Carolina,*
 137 S. Ct. 1730 (2017) ...................................................................................................18

*Pedroza v. BRB,*
 624 F.3d 926 (9th Cir. 2010) .........................................................................................14

*Penney v. Kohl's Dep't Stores, Inc., et al.,*
 No. 8:14-cv-01100-CJC-DFM [Dkt. 12 at 3] (C.D. Cal. Sept. 23, 2014) (Carney, J.).....................21

*PGA Tour, Inc. v. Martin,*
 532 U.S. 661 (2001) .......................................................................................................17

*Reed v. CVS Pharmacy, Inc.,*
 2017 WL 4457508 (C.D. Cal. Oct. 3, 2017) ..................................................................21

*Rios v. New York & Co., Inc.,*
 2017 WL 5564530 (C.D. Cal. Nov. 16, 2017) ...............................................................21

*Robles v. Domino's Pizza, LLC,*
 913 F.3d 898 (9th Cir. 2019), *cert. denied,* 140 S. Ct. 122 (2019) ................................16, 18, 19, 21

*Robles v. Yum! Brands, Inc.,*
 2018 WL 566781 (C.D. Cal. Jan. 24, 2018) ..................................................................21

*Schutza v. McDonald's Corp.,*
 133 F. Supp. 3d 1241 (S.D. Cal. 2015) .........................................................................11

*Shields v. Walt Disney Parks and Resorts US, Inc.,*
 279 F.R.D. 529 (C.D. Cal. 2011) ..................................................................................21

*South Dakota v. Wayfair,*
 - U.S. -, 138 S. Ct. 2080 (2018) ....................................................................................18

*Tawam v. APCI Fed. Credit Union,*
 2018 WL 3723367 (E.D. Pa. Aug. 6, 2018) ............................................................19, 20

*Thorne v. Formula 1 Motorsports, Inc.,*
 2019 WL 6916098 (S.D.N.Y. Dec. 19, 2019) ...............................................................21

*Thurston v. Chino Commercial Bank, N.A.,*
 2017 WL 3224681 (C.D. Cal. July 27, 2017) ...............................................................21

*Thurston v. ClearPath Lending, Inc.,*
 2019 WL 366405 (C.D. Cal. Jan. 28, 2019) (Selna, J.) .................................................13

PLAINTIFF'S OPPOSITION TO DEMURRER TO COMPLAINT

*Weyer v. Twentieth Century Fox Film Corp.,*
  198 F.3d 1104 (9th Cir. 2000) ................................................................................20

*Young v. Facebook, Inc.,*
  790 F. Supp. 2d 1110 (N.D. Cal. 2011) ..................................................................14

**California Cases**

*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County,*
  57 Cal.2d 450 (1962) ..............................................................................13, 18, 19

*Bounds v. Superior Ct.,*
  229 Cal. App. 4th 468 (2014) ..............................................................13, 20, 24

*Carolyn v. Orange Park Community Ass'n,*
  177 Cal. App. 4th 1090 (2009) ...................................................................17, 18

*Daniels v. Select Portfolio Servicing, Inc.,*
  246 Cal. App. 4th 1150 (2016) ..........................................................................11

*Del E. Webb Corp. v. Structural Materials Co.,*
  123 Cal. App. 3d 593 (1981) .............................................................................12

*Doe v. City of Los Angeles,*
  42 Cal. 4th 531 (2007) .......................................................................................12

*Ion Equip. Corp. v. Nelson,*
  110 Cal. App. 3d 868 (1980) .............................................................................22

*Koebke v. Bernardo Heights Country Club,*
  36 Cal.4th 824, 31 Cal.Rptr.3d 565, 115 P.3d 1212 (2005) .............................14

*Martinez v. California Pizza Kitchen, Inc.,*
  30 Cal.App.5th Supp. 14 (2018) .......................................................................21

*Moore v. Regents of Univ. of Cal.,*
  51 Cal. 3d 120 (1990) ........................................................................................12

*Munson v. Del Taco, Inc.,*
  46 Cal.4th 661 (2009) .................................................................................12, 15

*Nicholls v. Holiday Panay Marina, L.P.,*
  173 Cal. App. 4th 966 (2009) ......................................................................16, 17

*People v. Morales,*
  25 Cal. App. 5th 502 (2018) ..............................................................................22

*Ragland v. U.S. Bank N.A.,*
  209 Cal. App. 4th 182 (2012) ............................................................................22

PLAINTIFF'S OPPOSITION TO DEMURRER TO COMPLAINT

*Rotary Club of Duarte v. Board of Directors*,
178 Cal. App. 3d 1035 (1986) .................................................................................................11

*Ruiz v. Musclewood Inv. Props., LLC*,
28 Cal. App. 5th 15 (2018) ...............................................................................10, 13, 14, 15

*Thurston v. Midvale Corp.*,
39 Cal. App. 5th 634 (2019) ......................................................................................... *passim*

*White v. Square, Inc.*,
7 Cal. 5th 1019 (2019) .................................................................................................11, 12

**Federal Statutes**

42 U.S.C.
§ 12181 *et seq.* ...........................................................................................................10
§ 12181(7) ..................................................................................................................16
§ 12182(a) ..................................................................................................................16
ADA ................................................................................................................... *passim*
Title III of the ADA ............................................................................................ *passim*

**Federal Regulations**

28 C.F.R.
§ 36.303...................................................................................................................22, 24
§ 36.303(a) ..............................................................................................................22, 23
§ 36.303(b)(2) ...............................................................................................................23
§ 36.303(c)(1)(ii)...........................................................................................................23
pt. 36, Appendix C (2019) .............................................................................................16

56 Fed. Register 35544-01, 35566 (July 26, 1991)...........................................................17

**California Statutes**

Cal. Civ. Code
§ 51 *et seq.* ...................................................................................................................10
§ 51(b)...........................................................................................................................11
§ 51(f)......................................................................................................................10, 15
§ 52................................................................................................................................15
Disabled Persons Act .....................................................................................................12
Unruh Act............................................................................................................... *passim*

**Other Authorities**

Advance Notice of Public Rulemaking, 75 Fed. Reg. 43460 (July 26, 2010).......................22

Judicial Council of California Civil Jury Instruction No. 3060.............................................11

"Directions of Use" of Judicial Council of California Civil Jury Instruction No. 3060...........11

H.R. Rep. 101-485(II), at 108 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303 .........................17

News Release (testimony of Principal Deputy Assistant Attorney General for Civil
    Rights, Samuel R. Bagenstos, before the House Subcommittee on Constitution,
    Civil Rights and Civil Liberties), 2010 WL 1634981 (Apr. 22, 2010)............................................23

Nondiscrimination on the Basis of Disability; Notice of Withdrawal of Four Previously
    Announced Rulemaking Actions, 82 Fed. Reg. 60932-01 (Dec. 26, 2017) [2017 WL
    6555806] ............................................................................................................................................22

The Rutter Group, Civil Procedure Before Trial (2019)
    ¶ 7:8..................................................................................................................................................22
    ¶ 7:9..................................................................................................................................................22

PLAINTIFF'S OPPOSITION TO DEMURRER TO COMPLAINT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff Luis Licea ("Plaintiff"), a blind individual, has sued Defendant Genesco Inc. ("Defendant") because he encountered discriminatory communication barriers on Defendant's website at www.journeys.com (the "Website"), hindering his full and equal use and enjoyment of such Website, which constitutes disability discrimination under California's Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51 *et seq.* Plaintiff's Unruh Act cause of action is predicated upon two separate and distinct theories of liability. First, such cause of action is predicated upon Defendant's intentional discrimination, which is the traditional theory of Unruh Act liability, in light of Defendant's refusal to remove the communication barriers from its Website despite being specifically notified about their existence. Second, such cause of action is predicated upon a violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq.*, which is a permissible basis for an Unruh Act cause of action. (Civ. Code § 51(f).)

Defendant's Demurrer is predicated upon four fundamental errors. First, the Demurrer incorrectly contends that the Complaint's intentional discrimination theory of liability is not cognizable as a matter of law based upon non-binding federal case authority. The Demurrer, however, ignores the binding guidance in *Ruiz v. Musclewood Inv. Props., LLC*, 28 Cal. App. 5th 15, 22 (2018), which is directly on point in addressing how an inference of intent can be inferred from notice seeking corrective action to remove accessibility barriers. As a published court of appeal decision, *Ruiz* is binding on this Court. Second, the Demurrer wrongly assumes that the Complaint is solely predicated upon an intentional discrimination theory of liability despite the fact that it expressly alleges a violation of the ADA as an additional ground. Third, the Demurrer completely ignores the fact that the Complaint sufficiently alleges a "nexus" between the Website and its brick-and-mortar locations including in California. Fourth, the Demurrer seeks to impermissibly rely upon extrinsic facts regarding a purported telephone service accommodation defense that the U.S. Department of Justice ("DOJ") merely proposed, but never adopted. In fact, the DOJ withdrew such proposed regulation. Accordingly, the Demurrer should be overruled in its entirety.

## II. ARGUMENT

### A. The Website Barriers Alleged in the Complaint Are Actionable Under the Unruh Act Independent of the ADA.

1    The Demurrer contends that the Complaint fails to state a claim under the Unruh Act independent

2    of the ADA.  (Def.'s Mem. at 3:25-6:12.)  Not so.[1]

3    As a general matter, a claim under the Unruh Act requires a plaintiff to allege an intentional act or

4    omission on behalf of defendant.  *See Organization for the Advancement of Minorities v. Brick Oven Rest.*,

5    406 F. Supp. 2d 1120, 1129 (S.D. Cal. 2005).  Thus, "[a] violation of the Unruh Act may be maintained

6    independent of an ADA claim where a plaintiff pleads 'intentional discrimination in public

7    accommodations in violation of the terms of the [Unruh] Act.' "  *Schutza v. McDonald's Corp.*, 133 F.

8    Supp. 3d 1241, 1247 (S.D. Cal. 2015) (citations omitted).  Judicial Council of California Civil Jury

9    Instruction 3060 ("CACI No. 3060") sets forth essential factual elements of an Unruh Act claim.

10
11
### 1. The Unruh Act Applies to "Business Establishments," Which Are Broader Than "Places of Public Accommodations" and Not Subject to a "Nexus" Requirement.

12    The Unruh Act provides in part that "[a]ll persons within the jurisdiction of [California] are free

13    and equal, and no matter what their ... disability ... are entitled to the full and equal accommodations,

14    advantages, facilities, privileges, or services in all ***business establishments*** of every kind whatsoever."

15    Cal. Civ. Code § 51(b) (emphasis added).  The "Directions of Use" of CACI No. 3060 provide that, "The

16    judge may decide the issue of whether the defendant is a business establishment as a matter of law."  *Id.*

17    (citing *Rotary Club of Duarte v. Board of Directors*, 178 Cal. App. 3d 1035, 1050 (1986)).

18    The Complaint alleges that Defendant's Website is a "business establishment" within the meaning

19    of the Unruh Act.  (Compl. ¶ 23.)  This Court can and should determine as a matter of law that Defendant

20    is a "business establishment[]" under Civil Code § 51(b), in accordance with the California Supreme

21    Court's recent precedent in *White v. Square, Inc.*, 7 Cal. 5th 1019, 1027 (2019) ("The case before us

22    involves a plaintiff who neither paid a fee nor requested equal treatment before leaving the ***business***

23    ***establishment*** – in this case, ***a website***, not a brick-and-mortar vendor.") (emphasis added).  This is

24    irrefutable confirmation that the California Supreme Court broadly construes the Unruh Act such that

25    "business establishments" include commercial websites.  *See also National Fed'n of the Blind v. Target*

26    *Corp.*, 582 F. Supp. 2d 1185, 1196 (N.D. Cal. 2007) ("the Unruh Act and the DPA reach Target.com as a

27

28    [1] If the Court finds that either theory of relief is viable under the Unruh Act, then Defendant's general demurrer should be overruled.  *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1167 (2016) ("Ordinarily, a general demurrer may not be sustained ... as to a portion of a cause of action.").

1   kind of business establishment and an accommodation, advantage, facility, and privilege of a place of

2   public accommodation respectively. ***No nexus to the physical stores need be shown***.") (emphasis added);

3   *Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1056 (N.D. Cal. 2007) ("the ParentProfiles.com

4   website is plainly a business establishment as defined under California law."). This outcome is consistent

5   with the interpretation that the Unruh Act is to be "construed liberally" in order to carry out its purpose to

6   eradicate discrimination. *Munson v. Del Taco, Inc.*, 46 Cal.4th 661, 666 (2009); *White*, 7 Cal. 5th at 1025

7   ("In enforcing the [Unruh] Act, courts must consider its broad remedial purpose and overarching goal of

8   deterring discriminatory practices by businesses.").

9            **2.       The Complaint Alleges Sufficient Facts of Intentional Discrimination.**

10              **a)       Only Ultimate Facts Are Required to Be Pled.**

11            Given the allegations pled in the Complaint regarding Defendant's intentional discrimination

12   against Plaintiff, which this Court is required to assume as true,[2] the Court can and should determine that

13   Plaintiff has satisfied his burden to plead ultimate facts,[3] if not evidentiary facts, of intentional

14   discrimination by Defendant because Defendant, the owner and operator of the Website, knew of the

15   accessibility problems Plaintiff had with the Website by no later than the timeframe when Defendant

16   received Plaintiff's counsel's pre-filing demand letter dated April 2, 2019, but nevertheless took no steps

17   to address the communication barriers specifically encountered by Plaintiff to make the Website

18   accessible, making the filing of this action necessary. (Compl. ¶ 24) (alleging that Defendant "failed to

19   take adequate actions to correct these barriers even after being ***notified*** of the discrimination that such

20   barriers cause") (emphasis added). Such evidentiary facts and ultimate facts regarding Defendant's

21   wrongdoing under an intentional discrimination theory of liability is sufficient to allow Defendant to

22   understand the Complaint and to mount a defense against such theory. A plaintiff need only plead such

23   facts as are necessary "to acquaint a defendant with the nature, source and extent of his claims." *Doe*, 42

24   Cal. 4th at 550. To the extent that the Court would like Plaintiff to amend his Complaint to plead such

25   _____

26   [2] In deciding a demurrer, a California court must "***assume that the complaint's properly pleaded material
     allegations are true*** and give the complaint a reasonable interpretation by reading it as a whole and all its

27   parts in their context." *Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 125 (1990) (emphasis added).
     "[I]n testing a pleading against a demurrer the facts alleged . . . are deemed to be true, *however improbable*

28   *they may be*." *Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal. App. 3d 593, 604 (1981).
     [3] A plaintiff is required to allege only "ultimate rather than evidentiary facts." *Doe v. City of Los Angeles*,
     42 Cal. 4th 531, 550 (2007).

PLAINTIFF'S OPPOSITION TO DEMURRER TO COMPLAINT

1   facts in greater detail, Plaintiff is amenable to doing so. *Bounds v. Superior Ct.*, 229 Cal. App. 4th 468,

2   484 (2014).

3               **b)     This Court Is Bound by the California Court of Appeal's Decision in**
                        ***Ruiz v. Musclewood Inv. Props., LLC.***
4
            As in *Ruiz v. Musclewood Inv. Props., LLC,* 28 Cal. App. 5th 15 (2018), Defendant's knowledge
5
    of the defects in the Website, and lack of action to rectify them promptly in response to Plaintiff's attempt
6
    to inform Defendant to obtain corrective action, permits an inference of intent. *Ruiz*, 28 Cal. App. 5th at
7
    22. This Court is bound to follow *Ruiz*. *See Auto Equity Sales, Inc. v. Superior Court of Santa Clara*
8
    *County*, 57 Cal.2d 450, 455 (1962).
9
                **c)     Two Federal Court Judges Recently Held that Nearly Identical**
10                      **Complaints Plausibly Alleged Intentional Discrimination in Violation**
                        **of the Unruh Act.**
11
            Defendant ignores two recent federal district court decisions, which held that nearly identical
12
    complaints plausibly alleged intentional discrimination in violation of the Unruh Act. In *Martinez v.*
13
    *Adidas America, Inc.*, 2019 WL 3002864, at *2-*5 (C.D. Cal. July 9, 2019) (Bernal, J.), the plaintiffs
14
    asserted a single cause of action under the Unruh Act, which sought statutory damages and injunctive
15
    relief under the Unruh Act. *Id.* at *4. Significantly, the federal district court held that ***the complaint***
16
    ***plausibly alleged a theory of intentional discrimination***, which indicated a non-ADA legal theory. *Id.*
17
            Similarly, in *Thurston v. ClearPath Lending, Inc.*, 2019 WL 366405, at *2-*4 (C.D. Cal. Jan. 28,
18
    2019) (Selna, J.), the federal district court remanded a nearly identical complaint asserting a single Unruh
19
    Act claim. In so doing, the court held that the allegations of intentional discrimination were plausible.
20
    *ClearPath*, 2019 WL 366405, at *3. The court held, "***Here, it is possible that Plaintiff will obtain***
21
    ***injunctive relief based on a theory independent of the ADA***." *Id.* at *4 (emphasis added). *Adidas America*
22
    and *ClearPath* are both directly on point and indistinguishable from the instant action.
23
                **d)     The Ninth Circuit's Decision in *Greater Los Angeles Agency on***
24                      ***Deafness, Inc. v. Cable News Network, Inc.* Is Distinguishable.**

25          Defendant's reliance upon *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network,*

26  *Inc.*, 742 F.3d 414 (9th Cir. 2014) ("*CNN*"), is misplaced because the *CNN* decision is factually

27  distinguishable. In *CNN*, the defendant in that case, CNN, attempted to accommodate the plaintiffs at least

28  in part. 742 F.3d at 426 ("In response to GLAAD's captioning request, CNN stated that it offered a number

PLAINTIFF'S OPPOSITION TO DEMURRER TO COMPLAINT

of text-based services and explained that it would be "ready to provide whatever web access is ultimately required" by the FCC's then-pending captioning rules."). In stark contrast, here, no such attempt was made to accommodate Plaintiff's request to remove communication barriers from Defendant's Website (despite Defendant being put on notice as to Plaintiff's explicit accommodation request for more than eight months before filing suit), which hindered Plaintiff's use of such Website. In addition, the *CNN* decision failed to have the benefit of the recent guidance provided by the California Court of Appeal in the *Ruiz* decision mentioned above. *Ruiz*, 28 Cal. App. 5th at 22. Surely, the outcome in *CNN* would have been different if the *CNN* panel had received the benefit of the *Ruiz* decision's guidance at the time that *CNN* was decided.[4]

e)   **The Ninth Circuit's Unpublished Decision in *Earll v. eBay, Inc.* Has No Persuasive Value Here and Is Distinguishable.**

Although Defendant relies upon the Ninth Circuit's *unpublished* decision in *Earll v. eBay, Inc.*, 599 Fed. Appx. 695 (9th Cir. 2015), such "unpublished decision is not precedent for" the Ninth Circuit. *Pedroza v. BRB*, 624 F.3d 926, 931 (9th Cir. 2010). Nor does it have persuasive value in addressing whether the facts pled in the Complaint can constitute intentional discrimination under the Unruh Act. That decision, after citing *CNN* for the general proposition that intentional discrimination is required to plead an Unruh Act claim independent of an ADA violation, held as follows:

"eBay's aural identification system applies to all eBay users, whether hearing-impaired or not. Its failure to provide a deaf-accessible alternative to its aural identification system does not amount to willful, affirmative misconduct sufficient to constitute intentional discrimination under the Unruh Act. *See Koebke v. Bernardo Heights Country Club*, 36 Cal.4th 824, 31 Cal.Rptr.3d 565, 115 P.3d 1212, 1228 (2005). Because Earll has not alleged intentional discrimination, Earll's Unruh Act claim fails as a matter of law."

*Earll*, 599 Fed. Appx. at 696. Significantly, the Ninth Circuit's *Earll* decision failed to have the benefit of the recent guidance provided by the California Court of Appeal in the *Ruiz* decision mentioned above. *Ruiz*, 28 Cal. App. 5th at 22. Surely, the outcome in *Earll* would have been different had the facts at issue in *Ruiz* been at issue in *Earll*.

Moreover, the Ninth Circuit panel in *Earll* cited the *CNN* decision for the legal standard regarding

---

[4] Similarly, the decisions in *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1024 (N.D. Cal. 2012), and *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1116 (N.D. Cal. 2011), are similarly distinguishable.

1  intentional discrimination in Unruh Act claims that are not predicated upon ADA violations. That is

2  significant because, as mentioned above, *CNN* is distinguishable because the plaintiffs therein were at least

3  partially accommodated for their disability. Here, in contrast, no such accommodation was provided

4  despite Defendant being put on notice as to Plaintiff's explicit accommodation request. This suffices under

5  *Ruiz* to constitute indicia of intentional discrimination.

### B.   The Complaint Also Alleges an Unruh Act Cause of Action Based Upon ADA Violations, Which Is Expressly Permissible Under Section 51(f) of the Civil Code.

Defendant's Demurrer is facially disingenuous because it characterizes the Complaint as only

seeking relief under a traditional Unruh Act theory predicated upon intentional discrimination. (Def.'s

Mem. at 2:11-16; 5:5-6.) The Complaint, however, is expressly predicated upon two separate and distinct

legal theories, both of which are cognizable under the Unruh Act. First, the Complaint pleads an

intentional discrimination theory as recognized by Defendant. (Compl. ¶¶ 23-24.) Second, the Complaint

also pleads the existence of violations of Title III of the ADA, which is actionable under the Unruh Act.

(Compl. ¶ 25; Cal. Civ. Code § 51(f).) "Any violation of the ADA necessarily constitutes a violation of

the Unruh Act. § 51(f)." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). A showing of

intentional discrimination is not required where a plaintiff brings an Unruh Act claim on the grounds that

a defendant has violated the ADA. *Munson*, 46 Cal. 4th at 665 ("A plaintiff who establishes a violation

of the ADA, therefore, need not prove intentional discrimination in order to obtain damages under section

52 . . . ."). Thus, Defendant's failure to acknowledge that the existing Complaint already pleads the

existence of ADA violations as an additional basis for Plaintiff's Unruh Act cause of action is highly

deceptive and misleading.

### C.   The Website Barriers Alleged in the Complaint Are Actionable Under the ADA Because the Complaint Pleads a "Nexus" Between Defendant's Commercial Website and Its Brick and Mortar Store Locations.

In general, a Title III ADA claim has only three elements as explained by the Ninth Circuit. "To

prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the

meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public

accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his

disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

"The concept of 'discrimination' under the ADA does not extend only to obviously exclusionary

1  conduct. . . . Rather, the ADA proscribes more subtle forms of discrimination ... that interfere with disabled

2  individuals' 'full and equal enjoyment' of places of public accommodation." *Chapman v. Pier 1 Imports*

3  *(U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). "[The ADA's] passage was premised on Congress's finding

4  that discrimination against the disabled is 'most often the product, not of invidious animus, but rather of

5  thoughtlessness and indifference,' of 'benign neglect,' and of 'apathetic attitudes rather than affirmative

6  animus.'" *Id.* at 944-45.

### 1.   Title III of the ADA Prohibits Discrimination in the Enjoyment of Services "of" Any Place of Public Accommodation, Instead of "at" or "in".

The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of ***the goods, services, facilities, privileges, advantages, or accommodations of*** any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added). The ADA's general nondiscrimination statute, 42 U.S.C. § 12182(a), refers to "services" "of any place of public accommodation" as opposed to "at" or "in." That distinction matters as recognized recently by both the Ninth Circuit and the California Court of Appeal. *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019) ("The statute applies to the services *of* a place of public accommodation, not services *in* a place of public accommodation."), *cert. denied*, 140 S. Ct. 122 (2019); *Thurston v. Midvale Corp.*, 39 Cal. App. 5th 634, 642 (2019) ("To limit the ADA to discrimination in the provision of ***services occurring on the premises of a public accommodation*** would contradict the plain language of the statute.'") (emphasis added).

### 2.   The ADA's Statute Merely Identifies a Few Examples Within Each of the 12 Categories of Places of Public Accommodations, Which Are Innumerable.

The 12 expansive categories identified as "public accommodations" are set forth in 42 U.S.C. § 12181(7). According to the U.S. Department of Justice ("DOJ"), "While the list of categories is exhaustive, the representative examples of facilities within each category are not. Within each category only a few examples are given. . . . [For] example, the category of sales or rental establishments would include an ***innumerable*** array of facilities that would sweep far beyond the few examples given in the regulation." 28 C.F.R. Pt. 36, App. C (2019) (emphasis added); *Nicholls v. Holiday Panay Marina, L.P.*, 173 Cal. App. 4th 966, 970-71 (2009).

### 3.   This Court Is Bound to Liberally Construe the ADA's Categories of Public Accommodation.

16

1     "The phrase 'public accommodation' is defined in terms of 12 extensive categories, which the

2 legislative history indicates 'should be ***construed liberally***' to afford people with disabilities 'equal access'

3 to the wide variety of establishments available to the nondisabled." *PGA Tour, Inc. v. Martin*, 532 U.S.

4 661, 676–77 & n.25 (2001) (emphasis added), *quoted in Carolyn v. Orange Park Community Ass'n*, 177

5 Cal. App. 4th 1090, 1098 (2009); *Nicholls*, 173 Cal. App. 4th at 970 (citing *PGA Tour*). "A broad

6 interpretation of the [ADA] statute allows the ADA to enhance self-autonomy and human dignity in day

7 to day living." *Nicholls*, 173 Cal. App. 4th at 970. Indeed, in *Thurston v. Midvale Corp., supra*, the

8 California Court of Appeal once again confirmed that the ADA must be liberally construed consistent with

9 its remedial purpose. 39 Cal. App. 5th at 642-43 ("***The ADA is a remedial statute and as such should be***

10 ***construed broadly to implement its fundamental purpose of eliminating discrimination against***

11 ***individuals with disabilities***.") (emphasis added). Under *PGA Tour*, *Midvale*, *Carolyn*, and *Nicholls*, this

12 Court is bound to make a broad interpretation of the ADA's "public accommodation" phrase.

13                 **4.**     **Congress Intended the ADA to Adapt to Changes in Technology.**

14     As one federal court explained, "the legislative history of the ADA makes clear that Congress

15 intended the ADA to adapt to changes in technology." *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F.

16 Supp. 2d 196, 200-01 (D. Mass. 2012) (quoting H.R. Rep. 101-485(II), at 108 (1990), *reprinted in* 1990

17 U.S.C.C.A.N. 303, 391) ("the Committee intends that the types of accommodation and services provided

18 to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing

19 technology of the times."); *Enyart v. National Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163

20 (9th Cir. 2011) ("[A]ssistive technology is not frozen in time: as technology advances, ... accommodations

21 should advance as well."); 56 Fed. Register 35544-01, 35566 (July 26, 1991) (stating in DOJ's preamble

22 to 1991 Title III regulations stated that regulations should be interpreted to keep pace with "emerging

23 technology"). "New technology presents risks as well as opportunities; we must now allow fear of the

24 former to deprive us of the latter." *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1137 (9th Cir.

25 2012) (reversing district court's granting of defendant's motion for summary judgment in ADA case

26 seeking the modification of policy prohibiting use of Segway at Disneyland).

27                 **5.**     **This Court Is Bound by *Carolyn v. Orange Park Community Ass'n*.**

28     The published decision in *Carolyn v. Orange Park Community Ass'n*, 177 Cal. App. 4th 1090,

1104 (2009), supports Plaintiff's position.  The Court of Appeal therein held, "[P]laces of public accommodation are **places** designed and intended to provide services, goods, privileges, and advantages to members of the public, usually in exchange for payment (and when not requiring payment, often motivated by some other advantage to the entity providing the accommodation, such as promoting its good will to the community)."  *Carolyn*, 177 Cal. App. 4th at 1104 (emphasis added).  Notably, the *Carolyn* court did not limit such "places" to physical places.  This Court is bound to follow *Carolyn*.

### 6. The Supreme Court of the U.S. Recently Characterized "Cyberspace" as a "Place".

The Supreme Court of the U.S. has recently characterized "cyberspace" as the most important "place[]" for the exchange of views. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1375 (2017).  It has also recognized the importance of the Internet by noting that its "'prevalence and power have changed the dynamics of the national economy.'"  *Thurston*, 39 Cal. App. 5th at 643 (quoting *South Dakota v. Wayfair*, - U.S. -, 138 S. Ct. 2080, 2097 (2018)).

### 7. Both the California Court of Appeal and the Ninth Circuit Have Expressly Recognized the Viability of ADA Claims Predicated Upon Communication Barriers on Commercial Websites.

The California Court of Appeal has recognized the viability of ADA claims predicated upon communication barriers on commercial websites. *Thurston v. Midvale Corp.*, 39 Cal. App. 5th 634, 642 (2019) ("To limit the ADA to discrimination in the provision of **services occurring on the premises of a public accommodation** would contradict the plain language of the statute.'") (emphasis added).  In *Thurston*, the California Court of Appeal expressly rejected the "minority" position of the Third Circuit expressed in *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612, 614 (3d Cir. 1998).  *Thurston*, 39 Cal. App. 5th at 642 ("We decline to adopt what is clearly the minority position") ("We agree with the numerous courts which have found the definition of public accommodation clear and unambiguous, and **encompassing more than a physical place**.") (emphasis added).  In support, *Thurston* cited with approval the Ninth Circuit's holding finding an ADA claim predicated upon a website barrier to be actionable in *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019) ("The statute applies to the services *of* a place of public accommodation, not services *in* a place of public accommodation."), *cert. denied*, 140 S. Ct. 122 (2019).  This Court is bound to follow *Thurston*.  *See Auto Equity Sales, Inc. v. Superior Court of Santa Clara County*, 57 Cal.2d 450, 455 (1962) ("Decisions of every division of the District Courts of

1  Appeal are binding upon all the justice and municipal courts and upon all the superior courts of this state,

2  and this is so whether or not the superior court is acting as a trial or appellate court. Courts exercising

3  inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function

4  to attempt to overrule decisions of a higher court.").

5         Indeed, the lengthy list of federal cases (besides *Robles*) nationwide recognizing the viability of

6  ADA claims predicated upon website barriers is staggering. *See, e.g.*, *Doe v. Mutual of Omaha Ins. Co.*,

7  179 F.3d 557, 559 (7th Cir. 1999) (Posner, C.J.) (noting that a "place of public accommodation"

8  encompasses facilities open to the public in both physical and electronic space, including websites);

9  *Morgan v. Joint Admin. Bd., Ret. Plan of the Pillsbury Co. and Am. Fed'n of Grain Millers, AFL-CIO-*

10 *CLC*, 268 F.3d 456, 459 (7th Cir. 2001) (Posner, J.) ("The defendant asks us to interpret 'public

11 accommodation' literally, as denoting a physical site, such as a store or hotel but we have already rejected

12 that interpretation.") (citing *Doe*) ("The site of the sale is irrelevant to Congress's goal of granting the

13 disabled equal access to sellers of goods and services. What matters is that the good or service be offered

14 to the public."); *Haynes v. Dunkin' Donuts LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018); *Dominguez v.*

15 *Banana Republic, LLC*, -- F. Supp. 3d –, 2020 WL 1950496, at *9 (S.D.N.Y. Apr. 23, 2020) ("***courts in***

16 ***the Second Circuit have found that it would be absurd to exclude cyberspace from the ADA's mandate***.")

17 (emphasis added); *Harty v. Nyack Motor Hotel Inc.*, No. 19-CV-1322 (KMK), 2020 WL 1140783, at *4

18 (S.D.N.Y. Mar. 9, 2020) (citing cases); *Thorne v. Formula 1 Motorsports, Inc.*, 2019 WL 6916098, at *2

19 (S.D.N.Y. Dec. 19, 2019) ("Formula 1's website is a place of public accommodation."); *Jones v. Fort*

20 *McPherson Credit Union*, 347 F. Supp. 3d 1351, 1354 (N.D. Ga. 2018); *Brintley v. Aeroquip Credit Union*,

21 321 F. Supp. 3d 785, 793 (E.D. Mich. 2018) ("Defendant's argument that its website is insufficiently

22 linked with its physical locations is simply illogical."), *rev'd on other grounds*, 936 F.3d 489 (6th Cir.

23 2019); *Tawam v. APCI Fed. Credit Union*, 2018 WL 3723367, at *8 (E.D. Pa. Aug. 6, 2018); *Carroll v.*

24 *FedFinancial Fed. Credit Union*, 324 F. Supp. 3d 658, 667 (E.D. Va. 2018); *Andrews v. Blick Art*

25 *Materials, LLC*, 268 F. Supp. 3d 381, 390, 392-93, 397 (E.D.N.Y. 2017) (Weinstein, J.); *Del-Orden v.*

26 *Bonobos, Inc.*, 2017 WL 6547902, at *7 (S.D.N.Y. Dec. 20, 2017) ("A commercial website itself qualifies

27 as a place of 'public accommodation' to which Title III of the ADA affords a right of equal access."); *id.*

28 at *8 (noting "Congress's intention that the ADA be read broadly in light of its remedial aims and that it

1   be construed to keep pace with changing technology"); *Markett v. Five Guys Enterprises LLC*, 2017 WL

2   5054568, at *2 (S.D.N.Y. July 21, 2017); *Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, 251 F.

3   Supp. 3d 908, 916-18 (W.D. Pa. 2017); *National Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565,

4   570 (D. Vt. 2015).

5         **8.    Assuming *Arguendo* that a "Nexus" Standard Is Applicable, a Sufficient Connection Exists Between Defendant's Website and Its Brick and Mortar**

6         **Locations.**

7       Assuming *arguendo* that a "nexus" standard is applicable,[5] the Complaint sufficiently alleges such

8   nexus between Defendant's website and its physical retail locations in California.[6]  (Compl. ¶¶ 7, 9); *see,*

9   *e.g.*, *Haynes v. Dunkin' Donuts LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018); *Jones v. Fort McPherson*

10  *Credit Union*, 347 F. Supp. 3d 1351, 1354 (N.D. Ga. 2018); *Brintley v. Aeroquip Credit Union*, 321 F.

11  Supp. 3d 785, 793 (E.D. Mich. 2018) ("Defendant's argument that its website is insufficiently linked with

12  its physical locations is simply illogical."), *rev'd on other grounds*, 936 F.3d 489 (6th Cir. 2019); *Tawam*

13  *v. APCI Fed. Credit Union*, 2018 WL 3723367, at *8 (E.D. Pa. Aug. 6, 2018); *Carroll v. FedFinancial*

14  *Fed. Credit Union*, 324 F. Supp. 3d 658, 667 (E.D. Va. 2018) ("Defendant's argument ignores the fact

15  that Plaintiff has been denied equal access to information that would enable him to visit Defendant's brick-

16  and-mortar location.").

17  [5] In *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000), the Ninth Circuit interpreted the ADA as indicating that "some connection between the good or service complained of and

18  an actual physical place is required". *Weyer*, 198 F.3d at 1114.  In *National Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006), the federal district court construed *Weyer* as requiring that

19  "a plaintiff must allege that there is a 'nexus' between the challenged service and the place of public accommodation". *Target*, 452 F. Supp. 2d at 952.  Notably, federal circuit case authority exists indicating

20  that no such "nexus" requirement applies.  *Carparts Distribution Ctr., Inc. v. Automotive Wholesalers Assoc. of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994) ("***Congress clearly contemplated that "service***

21  ***establishments" include providers of services which do not require a person to physically enter an actual physical structure.***  Many travel services conduct business by telephone or correspondence without

22  requiring their customers to enter an office in order to obtain their services.  Likewise, one can easily imagine the existence of other service establishments conducting business by mail and phone without

23  providing facilities for their customers to enter in order to utilize their services.  ***It would be irrational to conclude that persons who enter an office to purchase services are protected by the ADA, but persons***

24  ***who purchase the same services over the telephone or by mail are not.  Congress could not have intended such an absurd result.***") (emphasis added).  This Court need not decide whether a "nexus" is required or

25  not in order to state an ADA claim for relief based upon a website barrier.  Indeed, *Thurston* expressly declined to decide whether the ADA requires a nexus between a website and a physical place of public

26  accommodation.  *Thurston*, 39 Cal. App. 5th at 644 ("we need not consider here the wholly hypothetical question whether Title III of the ADA governs a website unconnected to a physical place of public

27  accommodation offering only purely Internet-based services or products.").

28  [6] To the extent that the Court desires additional allegations, leave to amend should be granted.  *Bounds v. Superior Ct.*, 229 Cal. App. 4th 468, 484 (2014) (holding that court should grant leave to amend if in all probability plaintiff will cure defect).

PLAINTIFF'S OPPOSITION TO DEMURRER TO COMPLAINT

1    According to the Ninth Circuit, a website that "advertise[s]" products provides a sufficient

2  "connect[ion]" if the so-called "nexus" threshold is applied. *Robles*, 913 F.3d at 905-06.  It is undisputed

3  that Defendant's Website provides advertising/marketing of Defendant's products offered for sale to the

4  general public at its physical locations.  That matters.  *Robles*, 913 F.3d at 905 ("Domino's website and

5  app facilitate access to the goods and services of a place of public accommodation—Domino's physical

6  restaurants.  They are two of the primary (***and heavily advertised***) means of ordering Domino's products

7  to be picked up at or delivered from Domino's restaurants.") (emphasis added); *Feldman v. Pro Football,*

8  *Inc.*, 419 Fed. Appx. 381, 391 (4th Cir. 2011) ("Title III of the ADA also requires defendants to provide

9  auxiliary aids for the content of emergency information, ***advertisements***, and public service

10  announcements broadcast over the stadium bowl's public address system."); *Martinez v. California Pizza*

11  *Kitchen*, 30 Cal. App. 5th Supp. at 21 ("Unlike the facts in *Feldman*, there is no indication here that the

12  speaker system was playing ***advertisements***[.]") (emphasis added); *Thurston*, 39 Cal. App. 5th at 646

13  ("The Ninth Circuit stated its nexus requirement very broadly[.]").

14    Defendant has failed to recognize the existence of numerous federal district court cases within the

15  Ninth Circuit that recognized that ADA claims could be maintained under a "nexus" theory.[7]  The Ninth

16  Circuit's recent decision in *Robles* clearly shows that the foregoing case authority was not an aberration.

17  **D.    Defendant's Telephone Service Accommodation Raises Factual Questions that Are
      Inappropriate for Resolution Via a Demurrer.**

18    Defendant's purported defense asserting a telephone service accommodation is premature to be

19  decided in the instant action as it seeks to introduce purported facts that are inappropriate for this Court to

20  address via a demurrer (and fails to address other pertinent facts necessary to address its purported

21  defense).  Defendant seeks to have the Court consider extrinsic evidence asserted in its Memorandum,

22

23  _____

[7] *See, e.g., Robles v. Yum! Brands, Inc.*, 2018 WL 566781, at *8 (C.D. Cal. Jan. 24, 2018); *Rios v. New
24  York & Co., Inc.*, 2017 WL 5564530, at *2-*7 (C.D. Cal. Nov. 16, 2017); *Gorecki v. Dave & Buster's
   Inc.*, 2017 WL 6371367, at *2-*6 (C.D. Cal. Oct. 10, 2017); *Reed v. CVS Pharmacy, Inc.*, 2017 WL
25  4457508, at *3-*6 (C.D. Cal. Oct. 3, 2017); *Thurston v. Chino Commercial Bank, N.A.*, 2017 WL 3224681,
   at *5 (C.D. Cal. July 27, 2017); *Gorecki v. Hobby Lobby Stores, Inc.*, 2017 WL 2957736, at *3-*7 (C.D.
26  Cal. June 15, 2017) (Walter, J.); *Davis v. Orlando Wilshire Investments Ltd., et al.*, No. 5:15-cv-01738-
   MWF-KK [Dkt. 17 at 10] (C.D. Cal. Nov. 2, 2015) (Fitzgerald, J.); *Brown v. BPS Direct, LLC, et al.*, Case
27  No. LACV 14-04622 JAK (JEMx) [Dkt. 30 at 4-7] (C.D. Cal. Oct. 6, 2014) (Krondstadt, J.); *Penney v.
   Kohl's Dep't Stores, Inc., et al.*, No. 8:14-cv-01100-CJC-DFM [Dkt. 12 at 3] (C.D. Cal. Sept. 23, 2014)
28  (Carney, J.); *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011);
   *Target I*, 452 F. Supp. 2d at 953 ("To limit the ADA to discrimination in the provision of services occurring
   on the premises of a public accommodation would contradict the plain language of the statute.").

1    which is inappropriate in the context of a demurrer.  The Rutter Group, Civil Procedure Before Trial ¶ 7:8

2    (2019) (citing *Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d 868, 881 (1980)).

3           Contrary to Defendant's assertion, the contents of its privately-operated, non-governmental

4    Website is not subject to judicial notice.  Although California courts consider information on official

5    government websites as the proper subject of judicial notice, *People v. Morales*, 25 Cal. App. 5th 502, 511

6    n.7 (2018) (citing non-California decisions for the proposition that "courts may take judicial notice of

7    information published on official government websites"), the contents of Defendant's non-governmental

8    Website is not subject to judicial notice.  *Ragland v. U.S. Bank N.A.*, 209 Cal. App. 4th 182, 193 (2012)

9    ("While we may take judicial notice of the existence of the . . . Web sites, and blogs, we may not accept

10   their contents as true.").

11          And, Defendant's purported telephone service defense does not challenge a defect that appears on

12   the face of the Complaint.   The Complaint does not disclose Defendant's purported telephonic

13   accommodation defense.  Rutter Group, *supra*, ¶ 7:9.

14          Moreover, Defendant's reliance on the ***proposed*** regulation regarding a staffed telephone line is

15   highly misleading and disingenuous.  (Def.'s Mem. at 6:21-23) (citing the Advance Notice of Public

16   Rulemaking ("ANPRM"), 75 Fed. Reg. 43460 (July 26, 2010)).  ***That proposed regulation was never***

17   ***promulgated as an actual regulation***.  In particular, the DOJ withdrew the ANPRM on December 26,

18   2017. (Nondiscrimination on the Basis of Disability; Notice of Withdrawal of Four Previously Announced

19   Rulemaking Actions, 82 Fed. Reg. 60932-01 (Dec. 26, 2017) [2017 WL 6555806].)  Thus, it is beyond

20   dispute that the DOJ's currently existing regulation governing auxiliary aids and services, which is set

21   forth in 28 C.F.R. § 36.303, continues to remain in effect, and that Defendant is subject to its ***existing***

22   requirements.  In particular, 28 C.F.R. § 36.303(a) states:

23          "A public accommodation shall take those steps that may be necessary to ensure that no

24          individual with a disability is excluded, denied services, segregated or otherwise treated differently

25          than other individuals because of the absence of auxiliary aids and services, unless the public

26          accommodation can demonstrate that taking those steps would ***fundamentally alter*** the nature of

27          the goods, services, facilities, privileges, advantages, or accommodations being offered or would

28          result in an ***undue burden***, i.e., significant difficulty or ***expense***."

1   28 C.F.R. § 36.303(a) (emphasis added). "The term 'auxiliary aids and services' **includes [] screen reader**

2   **software**." 28 C.F.R. § 36.303(b)(2) (emphasis added). "In order to be effective, auxiliary aids and

3   services must be provided in accessible formats, in a ***timely manner***, and in such a way as to protect the

4   ***privacy and independence*** of the individual with a disability." 28 C.F.R § 36.303(c)(1)(ii) (emphasis

5   added).

6       Significantly, the California Court of Appeal applied such existing regulation in *Thurston*. 39 Cal.

7   App. 5th at 650.

8       Defendant cannot prevail as a matter of law under the existing regulation for several reasons.

9       First, Defendant has failed to satisfy its burden to demonstrate that making its Website accessible

10   to blind individuals like Plaintiff would "fundamentally alter" the nature of the services offered on such

11   Website.

12       Second, Defendant has failed to satisfy its burden to demonstrate that making its Website

13   accessible to blind individuals would result in an "undue burden" such as significant expense. Indeed, the

14   DOJ's congressional testimony suggests that making websites accessible is neither difficult nor costly.

15   News Release (testimony of Principal Deputy Assistant Attorney General for Civil Rights, Samuel R.

16   Bagenstos, before the House Subcommittee on Constitution, Civil Rights and Civil Liberties), 2010 WL

17   1634981 (Apr. 22, 2010) ("Making websites accessible is neither difficult nor especially costly, and in

18   most cases providing accessibility will not result in changes to the format or appearance of a site."). Thus,

19   the fact that Defendant has failed to satisfy its burden of demonstrating that taking steps to make its website

20   accessible to blind individuals "would ***fundamentally alter*** the nature of the goods, services, facilities,

21   privileges, advantages, or accommodations being offered or would result in an ***undue burden***," 28 C.F.R.

22   § 36.303(a) (emphasis added), precludes Defendant from avoiding its legal obligation to "take those steps

23   that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated

24   or otherwise treated differently than other individuals because of the absence of auxiliary aids and

25   services[.]" *Id.* In other words, there is no need to address the "timely manner" and "privacy and

26   independence" factors set forth in 28 C.F.R § 36.303(c)(1)(ii) because Defendant has failed to satisfy its

27   burden to demonstrate the threshold requirements of either a fundamental alteration of the nature of the

28   goods, services, facilities, privileges, advantages, or accommodations being offered or an undue burden.

1    Third, it is undisputed that Defendant's telephonic accommodation would not protect the

2    "independence" of blind individuals like Plaintiff.  Rather, such proposed accommodation would require

3    the intervention of another individual whereas a website is automated.  Indeed, that is precisely what the

4    California Court of Appeal recognized in *Thurston*.  39 Cal. App. 5th at 651 ("Appellant did not offer any

5    evidence refuting [plaintiff's] statement that the use of a telephone number . . . would deprive her of

6    independence.").

7    Fourth, Defendant's accommodation would not be "timely" as required.  Defendant's Website is

8    intended to be operational 24 hours a day and seven days a week; whereas, a customer service

9    representative who fields calls would surely be reachable only during business hours.  Thus, the delay in

10   receiving a response from a live customer service representative would not be "timely" as required.

11   The foregoing demonstrates that Defendant's argument is baseless or, at minimum, premature to

12   raise without an opportunity to conduct full and fair discovery to investigate Defendant's purported

13   telephonic accommodation.

14   In essence, Defendant's position is that the Court should ignore the specific requirements of the

15   DOJ's formal regulation in 28 C.F.R. § 36.303 and rely instead on an amorphous, but fact-specific

16   "reasonableness" test (that the DOJ has never adopted) to ascertain whether Defendant has complied with

17   its obligation to provide effective communication to Plaintiff and other blind individuals.  Thus,

18   Defendant's attempt to argue that it is entitled to rely upon a proposed regulation regarding a staffed

19   telephone line as a substitute for a barrier-free website is contrary to the applicable law.

20   **E.  Leave to Amend Should Be Granted.**

21   To the extent that the Court desires additional allegations, leave to amend should be granted.

22   *Bounds v. Superior Ct.*, 229 Cal. App. 4th 468, 484 (2014).

23

24   Dated:  June 10, 2020                          PACIFIC TRIAL ATTORNEYS, P.C.

25

26                                                 By: _____

27                                                     Scott J. Ferrell
                                                       Attorneys for Plaintiff
28

PLAINTIFF'S OPPOSITION TO DEMURRER TO COMPLAINT

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660.

On June 10, 2020, I served the foregoing document described as **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS RESPONSE IN OPPOSITION TO DEFENDANT'S DEMURRER TO COMPLAINT** on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

☐ (BY MAIL) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☒ (BY FEDERAL EXPRESS OVERNIGHT) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by Federal Express that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by Federal Express with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by Federal Express at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐ (BY HAND DELIVERY) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for hand delivery by courier. I caused such document to be delivered by hand to the addressee(s) designated.

☐ (BY ELECTRONIC SERVICE) I am causing the document(s) to be served by email or electronic transmission via One Legal sent on the date shown below to the email addresses of the persons listed in the attached service list.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on June 10, 2020, at Newport Beach, California.

Mandy K. Jung

- 25 -

1

**SERVICE LIST**

2

Carter L. Norfleet, Esq.
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509

Attorney for Defendant
Genesco Inc.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 26 -

1  PACIFIC TRIAL ATTORNEYS
   A Professional Corporation
2  Scott J. Ferrell, Bar No. 202091
   sferrell@pacifictrialattorneys.com
3  4100 Newport Place Drive, Ste. 800
   Newport Beach, CA  92660
4  Tel: (949) 706-6464
   Fax: (949) 706-6469
5
   Attorneys for Plaintiff
6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF SAN BERNARDINO

10

11  LUIS LICEA, an individual,              Case No.   CIVDS1939376

12            Plaintiff,                    **PLAINTIFF'S EVIDENTIARY
                                            OBJECTIONS TO: (1) DECLARATION OF
13        v.                                JOHN TIGHE IN SUPPORT OF
                                            DEFENDANT'S DEMURRER TO
14  GENESCO INC, a Tennessee corporation; and   COMPLAINT; AND (2) DEFENDANT'S
    DOES 1-10, inclusive,                   REQUEST FOR JUDICIAL NOTICE IN
15                                          SUPPORT OF DEMURRER TO
            Defendants.                     COMPLAINT**
16
                                            [Pl.'s Memorandum of Points and Authorities filed
17                                          concurrently herewith]

18                                          Date:   June 23, 2020
                                            Time:  8:30 a.m.
19                                          Dept.:  S32
                                            Judge:  Hon. Wilfred J. Schneider, Jr.
20
                                            Date Filed: December 30, 2019
21                                          Trial Date:  Not Set

22

23

24

25

26

27

28

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

JUN 1 0 2020

VERONICA GONZALEZ, DEPUTY

**EVIDENTIARY OBJECTIONS**

**OBJECTIONS TO DECLARATION OF JOHN TIGHE**

Plaintiff objects to the Declaration of John Tighe ("Tighe Decl.") including Exhibit A filed in support of Defendant's Demurrer to Complaint, as follows:

**OBJECTION NO. 1**

"2.     My job responsibilities include oversight and management of the teams that provide customer support through our national customer service center. This includes customers who visit the website journeys.com ("Website").

3.     Attached as Exhibit A to this Declaration is a true and correct screenshot from the Website as it existed on March 3, 2020. As depicted in the screenshot, the Website contains an accessibility banner that reads as follows: "If you are using a screen reader and are having problems using this website, please call 1-888-324-6356 for assistance in English or 1-866-322-9099 for assistance in Spanish." (Ex. A.)

4.     The accessibility banner has been affixed to the Website since at least February 6, 2018, and remains on the Website today. At all times since its inclusion on the Website, the accessibility banner has been assessible to screen reader users. That is, the accessibility banner has been thoroughly tested and can be identified and accurately dictated by commonly used screen reading technology.

5.     Quarterly WCAG tests are run on journeys.com to ensure its continued compatibility with screen reading technology. The WCAG tests to date have not identified any compatibility issues with the accessibility banner.

6.     Journeys provides customer support with live customer service representatives through the toll-free numbers listed in the accessibility banner. The customer service representatives are trained to assist all Website users, including blind or visually impaired users, with making purchases, completing orders, and navigating the Website.

7.     Should blind or visually impaired Website users encounter any issue with the Website, they have the opportunity to call the toll-free number in the accessibility banner to receive assistance from a live customer service representative to access the information, goods,

1   and services on the Website.

2         8.    Journeys maintains records of all calls placed to customer service representatives

3   through the toll-free numbers listed in the accessibility banner. I reviewed these call records and

4   determined that, as of March 5, 2020, Journeys has not received a single phone call from Luis

5   Licea."

6   (Tighe Decl. ¶¶ 2-8.)

7

8   <u>Grounds for Objection</u>: Defendant's purported defense asserting a telephone service accommodation is

9   premature to be decided in the instant action via a demurrer as it seeks to introduce purported facts that

10   are inappropriate for this Court to address via a demurrer (and fails to address other pertinent facts

11   necessary to address its purported defense). Defendant seeks to have the Court consider extrinsic

12   evidence asserted in its Memorandum, which is inappropriate in the context of a demurrer. The Rutter

13   Group, Civil Procedure Before Trial ¶ 7:8 (2019) (citing *Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d

14   868, 881 (1980)).

15       Irrelevant (Evid. Code §§ 210, 350-351); any probative value is substantially outweighed by the

16   probability that its admission will (a) necessitate undue consumption of time or (b) create substantial

17   danger of undue prejudice, of confusing the issues, or of misleading the jury. Evid Code § 352.

18

19   **RULING**

20       Granted _____

21       Denied _____

22

23   **OBJECTIONS TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE**

24       Plaintiff objects to the Request for Judicial Notice ("RJN") including Exhibit A to the

25   Declaration of John Tighe and Attachment 1 to the RJN filed in support of Defendant's Demurrer to

26   Complaint.

27   **OBJECTION NO. 1**

28   <u>Grounds for Objection:</u>

1    Contrary to Defendant's assertion, the contents of its privately-operated, non-governmental

2    Website is not subject to judicial notice.  Although California courts consider information on official

3    government websites as the proper subject of judicial notice, *People v. Morales*, 25 Cal. App. 5th 502,

4    511 n.7 (2018) (citing non-California decisions for the proposition that "courts may take judicial notice

5    of information published on official government websites"), the contents of Defendant's non-

6    governmental Website is not subject to judicial notice.  *Ragland v. U.S. Bank N.A.*, 209 Cal. App. 4th

7    182, 193 (2012) ("While we may take judicial notice of the existence of the . . . Web sites, and blogs,

8    we may not accept their contents as true.").

9    And, Defendant's purported telephone service defense does not challenge a defect that appears

10   on the face of the Complaint.  The Complaint does not disclose Defendant's purported telephonic

11   accommodation defense.  Rutter Group, *supra*, ¶ 7:9.

12   Irrelevant (Evid. Code §§ 210, 350-351); any probative value is substantially outweighed by the

13   probability that its admission will (a) necessitate undue consumption of time or (b) create substantial

14   danger of undue prejudice, of confusing the issues, or of misleading the jury. Evid Code § 352.

15

16   **RULING**

17   Granted    _____

18   Denied    _____

19

20   Dated:  June 10, 2020

PACIFIC TRIAL ATTORNEYS

21

22   By:_____

23   Scott J. Ferrell
     Attorneys for Plaintiff

24

25

26

27

28

- 4 -

PLAINTIFF'S EVIDENTIARY OBJECTIONS

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660.

On June 10, 2020, I served the foregoing document described as **PLAINTIFF'S EVIDENTIARY OBJECTIONS TO: (1) DECLARATION OF JOHN TIGHE IN SUPPORT OF DEFENDANT'S DEMURRER TO COMPLAINT; AND (2) DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEMURRER TO COMPLAINT** on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

☐ (BY MAIL) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☒ (BY OVERNIGHT FEDERAL EXPRESS) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by Federal Express that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by Federal Express with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by Federal Express at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐ (BY HAND DELIVERY) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for hand delivery by courier. I caused such document t be delivered by hand to the addresse(s) designated.

☐ (BY ELECTRONIC TRANSMISSION) I served electronically from the electronic notification address of mjung@pacifictrialattorneys.com the document described above and a copy of this declaration to the person and at the electronic notification address set forth herein. The electronic transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on June 10, 2020, at Newport Beach, California.

Mandy Jung

1

2

## SERVICE LIST

3  Carter L. Norfleet, Esq.                    Attorneys for Defendant
   BAKER & HOSTETLER LLP                        Genesco Inc.
4  11601 Wilshire Boulevard, Suite 1400
   Los Angeles, CA 90025-0509
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPERIOR COURT - COUNTY OF SAN BERNARDINO
San Bernardino District - Civil
247 West Third Street

San Bernardino CA 924150210

Office Hours: 8 a.m.- 4 p.m.


TO:

FROM: SAN BERNARDINO COUNTY SUPERIOR COURT-San Bernardino District - Civil

---

NOTICE OF RETURN OF DOCUMENT(S)

---

CASE NUMBER: CIVDS1939376
CASE NAME:   LICEA V GENESCO INC.


COMMENTS:

DEMURRER TO COMPLAINT is returned by Court for the following
reason(s): FILED ON 3/11/20. DUPLICATE.


Note:  Please keep this notice attached when resubmitting.  Thank You.


05/18/20                          By:  DAISY BAILON
                                       _____
                                       Deputy Clerk


---

NOTICE RETURNING DOCUMENT(S)

Notice 'NOR' has been printed for the following Attorneys/Firms
or Parties for Case Number CIVDS1939376 on  5/18/20:


    BAKER & HOSTETLER LLP
    11601 WILSHIRE BOULEVARD
    SUITE 1400
    LOS ANGELES, CA 90025

COUNTY OF SAN BERNARDINO SUPERIOR COURT
SAN BERNARDINO JUSTICE CENTER
247 WEST THIRD STREET
SAN BERNARDINO, CA  92415-0210

CLERK'S NOTICE OF CONTINUANCE
CASE NO: CIVDS1939376

Title of Case: LICEA V GENESCO INC.

Party Noticed:

PLEASE TAKE NOTICE:

On the Court's Motion, the hearing re: DEMURRER TO COMPLAINT
presently set in this case, is hereby reset for hearing on:


         06/23/20 AT  8:30 IN DEPARTMENT S32


No further notice will be sent by the court.
If an answer has not been filed with the court, Plaintiff must serve
Defendant(s) with this notice.

---

CERTIFICATE OF SERVICE BY MAIL

I hereby certify that I am a citizen of the United States of America,
over the age of 18, a resident of the above named County and State, &
not a party to, nor interested in, the proceedings named in the title
of the above Notice of Continuance.
I am a Deputy Clerk in the above named County. On the date of mailing
shown below, I deposited in the U. S. Mail, at the location shown,  a
sealed envelope (postage prepaid) which contained a true copy of this
notice and was addressed as shown above.

Date of Mailing: 04/03/20
Place of Mailing: San Bernardino, California


Executed on 04/03/20, at San Bernardino, CA.
                    By:  KIM ALLAIN

                         Deputy Clerk

Notice 'HCONT' has been printed for the following Attorneys/Firms
or Parties for Case Number CIVDS1939376 on  4/03/20:


PACIFIC TRIAL ATTORNEYS                BAKER & HOSTETLER LLP
4100 NEWPORT PLACE DRIVE               11601 WILSHIRE BOULEVARD
SUITE 800                              SUITE 1400
NEWPORT BEACH, CA 92660                LOS ANGELES, CA 90025

Carter L. Norfleet SBN 318152
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:    cnorfleet@bakerlaw.com

*Attorneys for Defendant*
GENESCO INC.

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

MAR 1 8 2020

BY _____
DAISY BAILON, DEPUTY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN BERNARDINO**

| | |
|---|---|
| LUIS LICEA, an individual,<br><br>        Plaintiff,<br><br>   v.<br><br>GENESCO INC., a Tennessee corporation;<br>and DOES 1-10, inclusive,<br><br>        Defendant. | Case No.: CIVDS1939376<br><br>[Hon. Wilfred J. Schneider, Jr., Dept. S32]<br><br>**DECLARATION OF JOEL GRISWOLD IN SUPPORT OF DEFENDANT'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF LUIS LICEA'S COMPLAINT**<br><br>Hearing Date:  April 30, 2020<br>Hearing Time:  8: 30 a.m.<br>Courtroom:  S32<br><br>Date Action Filed:  December 30, 2019<br>Trial Date: |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF JOEL GRISWOLD IN SUPPORT OF DEMURRER
CASE NO. CIVDS1939376

## DECLARATION OF JOEL GRISWOLD

I, Joel Griswold, declare as follows:

1. I am an attorney duly licensed to practice law before all courts of the State of Florida and Illinois, and I am a partner with Baker & Hostetler LLP, counsel of record for Defendant. I have personal knowledge of the facts stated below and, if called upon to do so, could and would competently testify as follows.

2. This declaration is submitted in support of Defendant's Demurrer to Plaintiff Luis Licea's Complaint.

3. On March 6, 2020, I conferred with Plaintiff's counsel via electronic mail in which I set forth the legal bases for filing the Demurrer. On March 9, 2020, I met and conferred by telephone with Plaintiff's counsel, Victoria Knowles. I explained Defendant's reasons for filing the Demurrer. Ms. Knowles informed me that Plaintiff contends that the claims in the Complaint against Defendant are sufficiently pleaded and Plaintiff does not believe Defendant would prevail on the Demurrer.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 11th day of March, 2020, at Windermere, Florida.

_____
JOEL GRISWOLD

- 2 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**PROOF OF SERVICE**

I am employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509. On March 11, 2020, I served a copy of the within document(s):

**DECLARATION OF JOEL GRISWOLD IN SUPPORT OF DEFENDANT'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF LUIS LICEA'S COMPLAINT**

☑ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill in the care and custody of **Golden State Overnight,** and causing the envelope to be delivered to a **Golden State** Overnight agent for delivery on the next business date.

☐ by transmitting via electronic mail the document(s) listed above to the e-mail address(es) set forth below on this date and the transmission was reported as complete and without error.

Scott J. Ferrell, Esq.
Pacific Trial Attorney, APC
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax (949) 706-6469

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 11, 2020, at Los Angeles, California.

_____
Denise Walker

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   Carter L. Norfleet SBN 318152
**BAKER & HOSTETLER LLP**
2   11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
3   Telephone:     310.820.8800
Facsimile:     310.820.8859
4   Email:         cnorfleet@bakerlaw.com

5   *Attorneys for Defendant*
GENESCO INC.

6

7

8                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                         **COUNTY OF SAN BERNARDINO**

10

11   LUIS LICEA, an individual,              Case No.: CIVDS1939370

12                 Plaintiff,                 [Hon. Wilfred J. Schneider, Jr., Dept. S32]

13        v.                                  **DEFENDANT'S NOTICE OF**
                                             **DEMURRER AND DEMURRER TO**
14   GENESCO INC., a Tennessee corporation;   **PLAINTIFF LUIS LICEA'S**
and DOES 1-10, inclusive,                **COMPLAINT**
15
                 Defendant.                 Filed Concurrently With:
16                                           1)  Demurrer
                                             2)  Declaration of Joel Griswold
17                                           3)  Declaration of John Tighe
                                             4)  Request for Judicial Notice
18
                                             Hearing Date: April 30, 2020
19                                           Hearing Time: 8:30 a.m.
                                             Courtroom: Dept. S32
20
                                             Date Action Filed:  December 30, 2019
21                                           Trial Date:

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on April 30, 2020, at 8:30 a.m., or as soon thereafter as the matter may be heard, in Department S32 of the Superior Court of the County of San Bernardino located at 247 West Third Street, San Bernardino, CA 92415-0210, Defendant GENESCO INC. (hereafter "Defendant") will and hereby does demur to the causes of action asserted in LUIS LICEA's ("Plaintiff") Complaint against Defendant, pursuant to California Code of Civil Procedure ("CCP") Section 430.10(e), on the following grounds:

The Demurrer is brought pursuant to Code of Civil Procedure section 430.10(e), on the grounds that Plaintiff has failed to plead sufficient facts in his Complaint to state a claim upon which relief can be granted.

The Demurrer is based on this Notice, the Demurrer, the Declaration of Joel Griswold, the Declaration of John Tighe, Defendant's Request for Judicial Notice and all other matters which the Court properly may consider.

Dated: March 11, 2020

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: _____
Carter L. Norfleet

Attorneys for Defendant
GENESCO INC., a Tennessee corporation

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

1

## PROOF OF SERVICE

2    I am employed in Los Angeles County, California.  I am over the age of eighteen years

3  and not a party to the within-entitled action.  My business address is 11601 Wilshire Boulevard,

4  Suite 1400, Los Angeles, CA  90025-0509.  On March 11, 2020, I served a copy of the within

5  document(s):

6    **DEFENDANT'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF**

7  **LUIS LICEA'S COMPLAINT**

8    ☑   by placing the document(s) listed above in a sealed envelope with postage
9        thereon fully prepaid, the United States mail at Los Angeles, California
         addressed as set forth below.  I am readily familiar with the firm's
10       practice of collection and processing correspondence for mailing.  Under
         that practice it would be deposited with the U.S. Postal Service on that
11       same day with postage thereon fully prepaid in the ordinary course of
         business.  I am aware that on motion of the party served, service is
12       presumed invalid if postal cancellation date or postage meter date is more
         than one day after date of deposit for mailing in affidavit.

13   ☐   by placing the document(s) listed above in a sealed envelope and affixing
14       a pre-paid air bill in the care and custody of **Golden State Overnight,**
         and causing the envelope to be delivered to a **Golden State** Overnight
15       agent for delivery on the next business date.

16   ☐   by transmitting via electronic mail the document(s) listed above to the
         e-mail address(es) set forth below on this date and the transmission was
         reported as complete and without error.

17

18  Scott J. Ferrell, Esq.
    Pacific Trial Attorney, APC
19  4100 Newport Place Drive, Suite 800
    Newport Beach, CA 92660
20  Tel: (949) 706-6464
    Fax (949) 706-6469

21    I declare under penalty of perjury under the laws of the State of California that the above

22  is true and correct.

23    Executed on March 11, 2020, at Los Angeles, California.

24

25    X_____
                          _____
26                        Denise Walker

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Carter L. Norfleet SBN 318152
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:        cnorfleet@bakerlaw.com

*Attorneys for Defendant*
GENESCO INC.

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

MAR 11 2020

BY VERONICA GONZALEZ, DEPUTY

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN BERNARDINO

| | |
|---|---|
| LUIS LICEA, an individual,<br><br>          Plaintiff,<br><br>     v.<br><br>GENESCO INC., a Tennessee corporation; and DOES 1-10, inclusive,<br><br>          Defendant. | Case No.: CIVDS1939376<br><br>[Hon. Wilfred J. Schneider, Jr., Dept. S32]<br><br>**DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT DEMURRER TO COMPLAINT**<br><br>**Filed Concurrently With**<br>**1)  Notice of Demurrer**<br>**2)  Demurrer**<br>**3)  Declaration of Joel Griswold**<br>**4)  Declaration of John Tighe**<br><br>Hearing Date:<br>Hearing Time:<br>Courtroom:<br><br>Date Action Filed:  December 30, 2019<br>Trial Date: |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Defendant Genesco Inc. ("Defendant" or "Genesco"), by and through its undersigned

2    counsel, pursuant to California Rules of Court, Rule 3.1113(l) and 3.1320, hereby respectfully

3    submits this Request for Judicial Notice.  Defendant asks the Court to take judicial notice of the

4    document attached as Exhibit A to the Declaration of John Tighe, which Defendant also attaches

5    here as Attachment 1 to this Request for Judicial Notice.

6    Pursuant to Defendant's Request and based on Evidence Code section 452(h) the Court may

7    take judicial notice of Defendant's web page and the fact that the webpage expressly states, "If you

8    are using a screen reader and are having problems using this website, please call 1-888-324-6356

9    for assistance in English or 1-866-322-9099 for assistance in Spanish."

10

11   Dated:    March 11, 2020                              Respectfully submitted,

12

13                                                         **BAKER & HOSTETLER LLP**

14                                                         By:

15                                                              Carter L. Norfleet

16                                                         Attorneys for Defendant
                                                           GENESCO INC., a Tennessee corporation
17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

# ATTACHMENT 1




 BRANDS    WOMEN    MEN    KIDZ    SALE



Vans Slip On Skate Shoe - White
$49.99



Vans Slip On Checkerboard Skate Shoe - Black / White
$49.99



Vans Old Skool Skate Shoe - Black
$59.99



Converse Chuck Taylor All Star Hi Color-Block Sneaker
$64.99

**SIGN UP FOR EMAIL**

email address    SIGN UP

Journeys offers are only a text message away. Sign Up

**FIND A STORE**

zip code    FIND STORE

**FOLLOW US**

   

**CUSTOMER SERVICE**

CONTACT US

FAQ

RETURNS & EXCHANGES

PAYMENT OPTIONS

SITE FEEDBACK

SITE MAP

SHIPPING & DELIVERY

**FOR YOU**

ORDER TRACKING

BIRTHDAY CLUB

SIZE GUIDE

GIFT CARDS

CATALOGS

WISHLIST

PROMOTIONS

**COMPANY**

PRIVACY POLICY

TERMS OF USE

CA STATEMENT

INVESTOR RELATIONS

ATTITUDE THAT CARES

CAREERS

**SHOP**

BRANDS

WOMEN

MEN

KIDZ

SALE

© Genesco 2020

If you are using a screen reader and are having problems using this website, please call 1-888-324-6356 for assistance in English or 1-866-322-9099 for assistance in Spanish.

## PROOF OF SERVICE

I am employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA  90025-0509.  On March 11, 2020, I served a copy of the within document(s):

**DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT DEMURRER TO COMPLAINT**

☑     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐     by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill in the care and custody of **Golden State Overnight,** and causing the envelope to be delivered to a **Golden State** Overnight agent for delivery on the next business date.

☐     by transmitting via electronic mail the document(s) listed above to the e-mail address(es) set forth below on this date and the transmission was reported as complete and without error.

Scott J. Ferrell, Esq.
Pacific Trial Attorney, APC
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax (949) 706-6469

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 11, 2020, at Los Angeles, California.

_____
Denise Walker

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  Carter L. Norfleet, SBN 318152
   **BAKER & HOSTETLER LLP**
2  11601 Wilshire Boulevard, Suite 1400
   Los Angeles, CA 90025-0509
3  Telephone:    310.820.8800
   Facsimile:    310.820.8859
4  *Email:*      *cnorfleet@bakerlaw.com*
5
   *Attorneys for Defendant*
6  GENESCO INC

7

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

MAR 11 2020

BY_____
VERONICA GONZALEZ, DEPUTY

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                   **FOR THE COUNTY OF SAN BERNARDINO**

10

11  LUIS LICEA, an individual,                 Case No. CIVDS1939376

12              Plaintiff,                      [Hon. Wilfred J. Schneider, Jr., Dept. S32]

13      v.                                      **DECLARATION OF JOHN TIGHE IN**
                                                **SUPPORT OF DEFENDANT'S**
14  GENESCO INC., a Tennessee corporation;      **DEMURRER TO COMPLAINT**
    and DOES 1-10, inclusive,
15                                              Hearing Date:  April 30, 2020
                Defendants.                     Hearing Time: 8:30 a.m.
16                                              Courtroom:  S32

17                                              Action Filed:        December 30, 2019
                                                Trial Date:
18

19

20

21

22

23

24

25

26

27

28

---

DECLARATION OF JOHN TIGHE IN SUPPORT OF DEFENDANT'S DEMURRER TO COMPLAINT
CASE NO CIVDS1939370

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## DECLARATION OF JOHN TIGHE

I, John Tighe, declare as follows:

1. I am the Senior Vice President for Journeys a division of Genesco Inc. This declaration is offered in support of Defendant Genesco Inc.'s ("Defendant" or "Genesco") Demurrer to Plaintiff Luis Licea's Complaint. I am over the age of 18. I have personal knowledge of the facts stated in this declaration. If called as a witness, I could and would testify competently as to its contents.

2. My job responsibilities include oversight and management of the teams that provide customer support through our national customer service center. This includes customers who visit the website journeys.com ("Website").

3. Attached as Exhibit A to this Declaration is a true and correct screenshot from the Website as it existed on March 3, 2020. As depicted in the screenshot, the Website contains an accessibility banner that reads as follows: "If you are using a screen reader and are having problems using this website, please call 1-888-324-6356 for assistance in English or 1-866-322-9099 for assistance in Spanish." (Ex. A.)

4. The accessibility banner has been affixed to the Website since at least February 6, 2018, and remains on the Website today. At all times since its inclusion on the Website, the accessibility banner has been assessible to screen reader users. That is, the accessibility banner has been thoroughly tested and can be identified and accurately dictated by commonly used screen reading technology.

5. Quarterly WCAG tests are run on journeys.com to ensure its continued compatibility with screen reading technology. The WCAG tests to date have not identified any compatibility issues with the accessibility banner.

6. Journeys provides customer support with live customer service representatives through the toll-free numbers listed in the accessibility banner. The customer service representatives are trained to assist all Website users, including blind or visually impaired users, with making purchases, completing orders, and navigating the Website.

7.      Should blind or visually impaired Website users encounter any issue with the Website, they have the opportunity to call the toll-free number in the accessibility banner to receive assistance from a live customer service representative to access the information, goods, and services on the Website.

8.      Journeys maintains records of all calls placed to customer service representatives through the toll-free numbers listed in the accessibility banner. I reviewed these call records and determined that, as of March 5, 2020, Journeys has not received a single phone call from Luis Licea.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.

Executed March _11_, 2020, at Nashville, Tennessee.

                                            John Tighe

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF JOHN TIGHE IN SUPPORT OF DEFENDANT'S DEMURRER TO COMPLAINT
CASE NO CIVDS1939370
Error! Unknown document property name.

# EXHIBIT A



BRANDS     WOMEN     MEN     KIDZ     SALE



Vans Slip On Skate Shoe - White
$49.99

Vans Slip On Checkerboard Skate Shoe - Black / White
$49.99

Vans Old Skool Skate Shoe - Black
$59.99

Converse Chuck Taylor All Star Hi Color-Block Sneaker
$64.99

### SIGN UP FOR EMAIL

email address    **SIGN UP**

Journeys offers are only a text message away. **Sign Up**

### FIND A STORE

zip code    **FIND STORE**

### FOLLOW US

### CUSTOMER SERVICE
CONTACT US
FAQ
RETURNS & EXCHANGES
PAYMENT OPTIONS
SITE FEEDBACK
SITE MAP
SHIPPING & DELIVERY

### FOR YOU
ORDER TRACKING
BIRTHDAY CLUB
SIZE GUIDE
GIFT CARDS
CATALOGS
WISHLIST
PROMOTIONS

### COMPANY
PRIVACY POLICY
TERMS OF USE
CA STATEMENT
INVESTOR RELATIONS
ATTITUDE THAT CARES
CAREERS

### SHOP
BRANDS
WOMEN
MEN
KIDZ
SALE

© Genesco 2020

If you are using a screen reader and are having problems using this website, please call 1-888-324-6356 for assistance in English or 1-866-322-9099 for assistance in Spanish.

**PROOF OF SERVICE**

. I am employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA  90025-0509.  On March 11, 2020, I served a copy of the within document(s):

**DECLARATION OF JOHN TIGHE IN SUPPORT OF DEFENDANT'S DEMURRER TO COMPLAINT**

☑      by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐      by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill in the care and custody of **Golden State Overnight,** and causing the envelope to be delivered to a **Golden State** Overnight agent for delivery on the next business date.

☐      by transmitting via electronic mail the document(s) listed above to the e-mail address(es) set forth below on this date and the transmission was reported as complete and without error.

Scott J. Ferrell, Esq.
Pacific Trial Attorney, APC
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax (949) 706-6469

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 11, 2020, at Los Angeles, California.

_____
Denise Walker

Carter L. Norfleet SBN 318152
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:     310.820.8800
Facsimile:     310.820.8859
Email:     cnorfleet@bakerlaw.com

*Attorneys for Defendant*
GENESCO INC.



FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

MAR 11 2020

BY _____
VERONICA GONZALEZ, DEPUTY

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN BERNARDINO

|  |  |
|---|---|
| LUIS LICEA, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>GENESCO INC., a Tennessee corporation; and DOES 1-10, inclusive,<br><br>        Defendant. | Case No.: CIVDS1939376<br><br>[Hon. Wilfred J. Schneider, Jr., Dept. S32]<br><br>**DECLARATION OF JOEL GRISWOLD IN SUPPORT OF DEFENDANT'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF LUIS LICEA'S COMPLAINT**<br><br>Hearing Date:  April 30, 2020<br>Hearing Time:  8: 30 a.m.<br>Courtroom:  S32<br><br>Date Action Filed:  December 30, 2019<br>Trial Date: |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

## DECLARATION OF JOEL GRISWOLD

2       I, Joel Griswold, declare as follows:

3       1.      I am an attorney duly licensed to practice law before all courts of the State of Florida

4 and Illinois, and I am a partner with Baker & Hostetler LLP, counsel of record for Defendant. I

5 have personal knowledge of the facts stated below and, if called upon to do so, could and would

6 competently testify as follows.

7       2.      This declaration is submitted in support of Defendant's Demurrer to Plaintiff Luis

8 Licea's Complaint.

9       3.      On March 6, 2020, I conferred with Plaintiff's counsel via electronic mail in which

10 I set forth the legal bases for filing the Demurrer. On March 9, 2020, I met and conferred by

11 telephone with Plaintiff's counsel, Victoria Knowles. I explained Defendant's reasons for filing

12 the Demurrer. Ms. Knowles informed me that Plaintiff contends that the claims in the Complaint

13 against Defendant are sufficiently pleaded and Plaintiff does not believe Defendant would prevail

14 on the Demurrer.

15       I declare under penalty of perjury under the laws of the State of California that the foregoing

16 is true and correct.

17       Executed this 11th day of March, 2020, at Windermere, Florida.

18

19                       JOEL GRISWOLD

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**PROOF OF SERVICE**

I am employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509. On March 11, 2020, I served a copy of the within document(s):

**DECLARATION OF JOEL GRISWOLD IN SUPPORT OF DEFENDANT'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF LUIS LICEA'S COMPLAINT**

☑     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐     by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill in the care and custody of **Golden State Overnight,** and causing the envelope to be delivered to a **Golden State** Overnight agent for delivery on the next business date.

☐     by transmitting via electronic mail the document(s) listed above to the e-mail address(es) set forth below on this date and the transmission was reported as complete and without error.

Scott J. Ferrell, Esq.
Pacific Trial Attorney, APC
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax (949) 706-6469

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 11, 2020, at Los Angeles, California.

_Denise Walker_
Denise Walker

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Carter L. Norfleet SBN 318152
     **BAKER & HOSTETLER LLP**
2    11601 Wilshire Boulevard, Suite 1400
     Los Angeles, CA 90025-0509
3    Telephone:    310.820.8800
     Facsimile:    310.820.8859
4    Email:        cnorfleet@bakerlaw.com

5    *Attorneys for Defendant*
     GENESCO INC.

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                       **COUNTY OF SAN BERNARDINO**

10

11   LUIS LICEA, an individual,              Case No.: CIVDS1939370

12                 Plaintiff,                 [Hon. Wilfred J. Schneider, Jr., Dept. S32]

13         v.                                 **DEFENDANT'S NOTICE OF**
                                              **DEMURRER AND DEMURRER TO**
14   GENESCO INC., a Tennessee corporation;   **PLAINTIFF LUIS LICEA'S**
     and DOES 1-10, inclusive,                **COMPLAINT**
15
                 Defendant.                   Filed Concurrently With:
16                                            1)  Demurrer
                                              2)  Declaration of Joel Griswold
17                                            3)  Declaration of John Tighe
                                              4)  Request for Judicial Notice
18
                                              Hearing Date: April 30, 2020
19                                            Hearing Time: 8:30 a.m.
                                              Courtroom: Dept. S32
20
                                              Date Action Filed:  December 30, 2019
21                                            Trial Date:

22

23

24

25

26

27

28

─────────────────────────────────────────────

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 30, 2020, at 8:30 a.m., or as soon thereafter as the matter may be heard, in Department S32 of the Superior Court of the County of San Bernardino located at 247 West Third Street, San Bernardino, CA 92415-0210, Defendant GENESCO INC. (hereafter "Defendant") will and hereby does demur to the causes of action asserted in LUIS LICEA's ("Plaintiff") Complaint against Defendant, pursuant to California Code of Civil Procedure ("CCP") Section 430.10(e), on the following grounds:

The Demurrer is brought pursuant to Code of Civil Procedure section 430.10(e), on the grounds that Plaintiff has failed to plead sufficient facts in his Complaint to state a claim upon which relief can be granted.

The Demurrer is based on this Notice, the Demurrer, the Declaration of Joel Griswold, the Declaration of John Tighe, Defendant's Request for Judicial Notice and all other matters which the Court properly may consider.

Dated:    March 11, 2020

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:    _____
       Carter L. Norfleet

Attorneys for Defendant
GENESCO INC., a Tennessee corporation

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S COMPLAINT
CASE NO. CIVDS1939370

**PROOF OF SERVICE**

I am employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA  90025-0509.  On March 11, 2020, I served a copy of the within document(s):

**DEFENDANT'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF LUIS LICEA'S COMPLAINT**

☑     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐     by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill in the care and custody of **Golden State Overnight,** and causing the envelope to be delivered to a **Golden State** Overnight agent for delivery on the next business date.

☐     by transmitting via electronic mail the document(s) listed above to the e-mail address(es) set forth below on this date and the transmission was reported as complete and without error.

Scott J. Ferrell, Esq.
Pacific Trial Attorney, APC
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax (949) 706-6469

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 11, 2020, at Los Angeles, California.

_____
Denise Walker

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

```
                                    F I L E D
                          SUPERIOR COURT OF CALIFORNIA
                            COUNTY OF SAN BERNARDINO
                             SAN BERNARDINO DISTRICT

                                MAR 0 5 2020

                          By _____
                                              Deputy
```

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN BERNARDINO

| | |
|---|---|
| LUIS LICEA, an individual | Case No.: CIVDS1939376 |
| Plaintiff, | [Hon. Wilfred J. Schneider, Dept. S32] |
| vs. | [~~PROPOSED~~] ORDER GRANTING STIPULATION TO EXTEND TIME TO RESPOND TO COMPLAINT |
| GENESCO INC., a Tennessee corporation; and DOES 1-10, inclusive, | |
| Defendants. | Complaint filed:  December 30, 2019 |

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

MAR 0 6 2020

RECEIVED
FEB 0 6 2020
SUPERIOR COURT
SAN BERNARDINO COUNTY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ORDER

Upon consideration of the foregoing stipulation of the Parties, and good cause appearing, it is hereby **ORDERED** as follows:  Defendant Genesco Inc. shall have through and including March 11, 2020 to respond to the Complaint in this matter.

**IT IS SO ORDERED.**

Dated: __3/5__ , 2020

HONORABLE WILFRED J. SCHNEIDER, JR.
JUDGE OF THE SUPERIOR COURT

Wilfred J. Schneider, Jr.

2

1

## PROOF OF SERVICE

2       I am employed in Los Angeles County, California.  I am over the age of eighteen years

3   and not a party to the within-entitled action.  My business address is 11601 Wilshire Boulevard,

4   Suite 1400, Los Angeles, CA  90025-0509.  On February 6, 2020, I served a copy of the within
document(s):

5   **(PROPOSED) ORDER GRANTING STIPULATION TO EXTEND TIME TO**
**RESPOND TO COMPLAINT**

6

7   ☑   by placing the document(s) listed above in a sealed envelope with postage thereon fully
prepaid, the United States mail at Los Angeles, California addressed as set forth below.  I

8       am readily familiar with the firm's practice of collection and processing correspondence for
mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same

9       day with postage thereon fully prepaid in the ordinary course of business.  I am aware that
on motion of the party served, service is presumed invalid if postal cancellation date or
postage meter date is more than one day after date of deposit for mailing in affidavit.

10

11   ☐   by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill
in the care and custody of **Golden State Overnight**, and causing the envelope to be

12       delivered to a **Golden State Overnight** agent for delivery on the next business day.

13   ☐   by transmitting via electronic mail the document(s) listed above to the e-mail address(es)
set forth below on this date and the transmission was reported as complete and without
error.

14

15   ☐   by electronic service via the Court's Electronic Filing Service Provider pursuant to
California Rules of Court, Rule 2.251(C)(3) the document(s) listed above to the person(s)
at the e-mail address(es) set forth below.

16

17   Scott J. Ferrell, Esq.
PACIFIC TRIAL ATTORNEYS, APC

18   4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660

19   Tel: (949) 706-6464
Fax: (949) 706- 6469

20

21       I declare under penalty of perjury under the laws of the State of California that the above
is true and correct.  Executed on February 6, 2020, at Los Angeles, California.

22

23                             */s/ Mary Williams*
                          Mary Williams

24

25

26

27

28

- 1 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  Carter L. Norfleet, SBN 318152
   **BAKER & HOSTETLER LLP**
2  11601 Wilshire Boulevard, Suite 1400
   Los Angeles, CA  90025-0509
3  Telephone:     310.820.8800
   Facsimile:     310.820.8859
4  *Email:*        cnorfleet@bakerlaw.com

5  *Attorneys for Defendant*
   GENESCO INC.

6

7  Scott J. Ferrell, SBN 202091
   **PACIFIC TRIAL ATTORNEYS**
8  **A PROFESSIONAL CORPORATION**
   4100 Newport Place Drive, Ste. 800
9  Newport Beach, CA 92660
   Tel: (949) 706-6464
10 Fax: (949) 706-6469

11 Attorneys for Plaintiff
   LUIS LICEA

12            SUPERIOR COURT OF THE STATE OF CALIFORNIA

13               FOR THE COUNTY OF SAN BERNARDINO

14 LUIS LICEA, an individual              Case No.: CIVDS1939376

15                Plaintiff,              [Hon. Wilfred J. Schneider, Jr., Dept. S32]

16        vs.                            **STIPULATION TO EXTEND TIME TO**
                                         **RESPOND TO COMPLAINT**
17 GENESCO INC., a Tennessee corporation;
   and DOES 1-10, inclusive,
18
                  Defendants.            Complaint filed:  December 30, 2019
19

20

21

22

23

24

25

26

27

28

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

FEB 2 4 2020

BY_____
VERONICA GONZALEZ, DEPUTY

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES



1      LUIS LICEA ( "Plaintiff") and GENESCO INC. ("Defendant") (collectively, the "Parties")

2  by and through their counsel of record, hereby stipulate and agree as follows:

3      On December 30, 2019, Plaintiff filed the Complaint in this matter. Defendant's responsive

4  pleading is currently due on February 10, 2020.

5      On February 4, 2020, the Parties met and conferred regarding potential early resolution of

6  the matter and agreed to a 30-day extension of time for Defendant to file its responsive pleading

7  while those discussions are pending.

8      Because the Parties have agreed to discuss early resolution of the matter, the Parties believe

9  that extending Defendant's deadline to respond to the Complaint will promote judicial economy

10  and result in a more efficient use of the Parties' time and resources, as it does not make sense for

11  Defendant to respond to the Complaint if early resolution is possible.

12      Based on the facts and reasons stated above and the Parties' agreement on the matter, it is

13  hereby stipulated that Defendant shall have up to and including March 11, 2020 to answer or

14  otherwise respond to Plaintiff's Complaint.

15    **IT IS SO STIPULATED.**

16

17                        Respectfully submitted,

18  Dated:   February 5, 2020         **BAKER & HOSTETLER LLP**

19

20                       By: _____
                               Carter L. Norfleet

21                       *Attorneys for Defendant*
                       GENESCO INC.

22  Dated:   February 5, 2020         **PACIFIC TRIAL ATTORNEYS**

23                       **A PROFESSIONAL CORPORATION**

24

25                       By: _____
                               Scott J. Ferrell

26                       *Attorneys for Plaintiff*
                       LUIS LICEA

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## PROOF OF SERVICE

I am employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509. On February 6, 2020, I served a copy of the within document(s):

**STIPULATION TO EXTEND TIME TO RESPOND TO COMPLAINT**

☑ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill in the care and custody of **Golden State Overnight**, and causing the envelope to be delivered to a **Golden State Overnight** agent for delivery on the next business day.

☐ by transmitting via electronic mail the document(s) listed above to the e-mail address(es) set forth below on this date and the transmission was reported as complete and without error.

☐ by electronic service via the Court's Electronic Filing Service Provider pursuant to California Rules of Court, Rule 2.251(C)(3) the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Scott J. Ferrell, Esq.
PACIFIC TRIAL ATTORNEYS, APC
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706- 6469

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on February 6, 2020, at Los Angeles, California.

*/s/ Mary Williams*
Mary Williams

PROOF OF SERVICE
Case No.: CIVDS1939376
4849-0067-7556.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

SUPERIOR COURT - COUNTY OF SAN BERNARDINO
San Bernardino District - Civil
247 West Third Street

San Bernardino CA 924150210

Office Hours: 8 a.m.- 4 p.m.


TO:

FROM: SAN BERNARDINO COUNTY SUPERIOR COURT-San Bernardino District - Civil

---

NOTICE OF RETURN OF DOCUMENT(S)

---

CASE NUMBER: CIVDS1939376
CASE NAME:   LICEA V GENESCO INC.

   COMMENTS:

      STIP/ORDER TO EXTEND TIM TO RESPOND + $20 CK is returned by
      Court for the following reason(s): RE-SUBMIT WITH 1ST APPEARANCE
      FEE OF $435.


Note:  Please keep this notice attached when resubmitting.   Thank You.


02/21/20                    By:  VERONICA GONZALEZ
                                 ─────────────────────
                                  Deputy Clerk

---

NOTICE RETURNING DOCUMENT(S)

Notice 'NOR' has been printed for the following Attorneys/Firms
or Parties for Case Number CIVDS1939376 on  2/21/20:


BAKER & HOSTETLER LLP
11601 WILSHIRE BOULEVARD
SUITE 1400
LOS ANGELES, CA 90025

<table>
<tr>
<td colspan="2">

ATTORNEY OR PARTY WITHOUT ATTORNEY (name and Address):
**SCOTT J. FERRELL, (SBN 202091)**
**PACIFIC TRIAL ATTORNEYS**
**A PROFESSIONAL CORPORATION**
**4100 NEWPORT PLACE DRIVE, STE. 800**
**NEWPORT BEACH, CA 92660**

TELEPHONE NO.: **(949) 706-6464**        FAX NO. (Optional):
E-MAIL ADDRESS (Optional) :
ATTORNEY FOR (Name): **PLAINTIFF**

</td>
<td>

FOR COURT USE ONLY

</td>
</tr>
</table>

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO**
STREET ADDRESS: 247 W. THIRD ST.
MAILING ADDRESS:
CITY AND ZIP CODE: SAN BERNARDINO, CA 92415
BRANCH NAME:

| | |
|---|---|
| PLAINTIFF/PETITIONER: LUIS LICEA, AN INDIVIDUAL<br><br>DEFENDANT/RESPONDENT: GENESCO INC., ET AL. | CASE NUMBER: **CIVDS1939376** |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: **1103115JS** |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of :
   a.☒  Summons
   b.☒  Complaint
   c☒  Alternative Dispute Resolution (ADR) package
   d☒  Civil Case Cover Sheet *(served in complex cases only)*
   e☐  cross-complaint
   f.☒  other *(specify documents):* CERTIFICATE OF ASSIGNMENT; NOTICE OF TRIAL SETTING CONFERENCE

3. a. Party served: *(specify name of party as shown on documents served):*
      GENESCO INC., A TENNESSEE CORPORATION
   b. Person served (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made)*(specify name and relationship to the person named in item 3a):*
      REGISTERED AGENT, CSC LAWYERS INCORPORATING SERVICE, BY SERVING BECKY DE GEORGE, PROCESS SPECIALIST

4. Address where the party was served:  2710 GATEWAY OAKS DR., SUITE 150N
                                         SACRAMENTO, CA 95833

5. I served the party *(check proper box)*
   a.☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* JANUARY 8, 2020  (2) at: *(time)* 2:20 PM

   b.☐ **by substituted service.** On *(date):*        at: *(time)*         . I left the documents listed in item 2 with or in the presence of (name and title or relationship to the person indicated in item 3):
      (1) ☐    **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) ☐    **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☐    **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) ☐    I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*        *(city):*        or ☐ a declaration of mailing is attached.
      (5) ☐    I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| PLANTIFF/PETITIONER: LUIS LICEA, AN INDIVIDUAL | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: GENESCO INC., ET AL. | **CIVDS1939376** |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) (date):          (1) (city):

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* (form 982(a)(4)) and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt *(form 982(a)(4).)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** (specify means of service and authorizing code section):

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant

  b. ☐ as the person sued under the fictitious name of (specify):

  c. ☒ on behalf of (specify): GENESCO INC., A TENNESSEE CORPORATION

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

  a.  Name: ROBERT J. MASON

  b.  Address: 800 W. 1ST STREET, SUITE 200-B
      LOS ANGELES, CALIFORNIA 90012

  c.  Telephone number: (213) 607-9000

  d.  The fee for service was: $ 119.00

  e.  I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☒ registered California process server:

        (i) ☐ owner ☐ Employee ☒ independent contractor.

        (ii) ☒ Registration No.:03-007

        (iii) ☒ County: PLACER

**USA Legal Network**

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Or

9. ☐ I am a California sherif or marshal and I certify that the foregoing is true and correct.

Date: JANUARY 15, 2020

ROBERT J. MASON

_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHALL)

_____
(SIGNATURE)

Page 2 of 2

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure § 417.10

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO**

LUIS LICEA, an individual,

Case No. CIV DS 1 9 3 9 3 7 6

vs.

**CERTIFICATE OF ASSIGNMENT**

GENESCO INC., a Tennessee corporation; and DOES 1-10, inclusive,

---

A civil action or proceeding presented for filing must be accompanied by this certificate. If the ground is the residence of a party, name and residence shall be stated.

---

The undersigned declares that the above-entitled matter is filed for proceedings in the _____ Civil Division _____ District of the Superior Court under Rule 404 of this court for the checked reason:

[X] General     [ ] Collection

| | Nature of Action | Ground |
|---|---|---|
| [ ] 1 | Adoption | Petitioner resides within the district. |
| [ ] 2 | Conservator | Petitioner or conservatee resides within the district. |
| [ ] 3 | Contract | Performance in the district is expressly provided for. |
| [ ] 4 | Equity | The cause of action arose within the district. |
| [ ] 5 | Eminent Domain | The property is located within the district. |
| [ ] 6 | Family Law | Plaintiff, defendant, petitioner or respondent resides within the district. |
| [ ] 7 | Guardianship | Petitioner or ward resides within the district or has property within the district. |
| [ ] 8 | Harassment | Plaintiff, defendant, petitioner or respondent resides within the district. |
| [ ] 9 | Mandate | The defendant functions wholly within the district. |
| [ ] 10 | Name Change | The petitioner resides within the district. |
| [ ] 11 | Personal Injury | The injury occurred within the district. |
| [ ] 12 | Personal Property | The property is located within the district. |
| [ ] 13 | Probate | Decedent resided or resides within the district or had property within the district. |
| [ ] 14 | Prohibition | The defendant functions wholly within the district. |
| [ ] 15 | Review | The defendant functions wholly within the district. |
| [ ] 16 | Title to Real Property | The property is located within the district. |
| [ ] 17 | Transferred Action | The lower court is located within the district. |
| [ ] 18 | Unlawful Detainer | The property is located within the district. |
| [ ] 19 | Domestic Violence | The petitioner, defendant, plaintiff or respondent resides within the district. |
| [ ] 20 | Other _____ | |
| [X] 21 | THIS FILING WOULD NORMALLY FALL WITHIN JURISDICTION OF SUPERIOR COURT. | |

The address of the accident, performance, party, detention, place of business, or other factor which qualifies this case for filing in the above-designated district is:

Location of incident              15627 Nisqualli Rd.
(NAME - INDICATE TITLE OR OTHER QUALIFYING FACTOR)       ADDRESS

Victorville            California          92395
(CITY)              (STATE)            (ZIP CODE)

I declare, under penalty of perjury, that the foregoing is true and correct and that this declaration was executed on

December 29, 2019       at   Newport Beach          , California

                                             Signature of Attorney/Party

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

San Bernardino District - Civil
247 West Third Street

San Bernardino, CA. 924150210
--------------------------------------------------------------------
--------------------------------------------------------------------
CASE NO: CIVDS1939376

NOTICE OF TRIAL SETTING CONFERENCE

IN RE: LICEA V GENESCO INC.

THIS CASE HAS BEEN ASSIGNED TO: WILFRED J SCHNEIDER JR. IN DEPARTMENT S32
FOR ALL PURPOSES.

Notice is hereby given that the above-entitled case has been set for
Trial Setting Conference at the court located at 247 WEST THIRD STREET
SAN BERNARDINO, CA  92415-0210.

        HEARING DATE: 06/30/20 at  8:30 in Dept. S32


DATE: 12/30/19  Nancy Eberhardt, Court Executive Officer
                                   By: DAISY BAILON
--------------------------------------------------------------------
--------------------------------------------------------------------
CERTIFICATE OF SERVICE

I am a Deputy Clerk of the Superior Court for the County of San
Bernardino at the above listed address. I am not a party to this
action and on the date and place shown below, I served a copy of the
above listed notice:
( ) Enclosed in a sealed envelope mailed to the interested party
addressed above, for collection and mailing this date, following
standard Court practices.
( ) Enclosed in a sealed envelope, first class postage prepaid in the
U.S. mail at the location shown above, mailed to the interested party
and addressed as shown above, or as shown on the attached listing.
(X) A copy of this notice was given to the filing party at the counter
( ) A copy of this notice was placed in the bin located at this office
and identified as the location for the above law firm's collection of
file stamped documents.

Date of Mailing: 12/30/19
I declare under penalty of perjury that the foregoing is true and
correct. Executed on 12/30/19 at San Bernardino, CA

                         BY: DAISY BAILON


civ-ntsc-20130417

Notice 'NTSC' has been printed for the following Attorneys/Firms
or Parties for Case Number CIVDS1939376 on 12/30/19:


    PACIFIC TRIAL ATTORNEYS
    4100 NEWPORT PLACE DRIVE
    SUITE 800
    NEWPORT BEACH, CA 92660

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Scott J. Ferrell (Bar No. 202091)<br>PACIFIC TRIAL ATTORNEYS, A Professional Corporation<br>4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660 | **F I L E D**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN BERNARDINO<br>SAN BERNARDINO DISTRICT |
| TELEPHONE NO.: (949) 706-6464        FAX NO.: | **DEC 30 2019** |
| ATTORNEY FOR *(Name):* Plaintiff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN BERNARDINO**

BY _____
DAISY BAILON, DEPUTY

STREET ADDRESS: 247 West Third Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Bernardino 92415-0210
BRANCH NAME: San Bernardino District – Civil Division

CASE NAME:
Licea v. Genesco Inc., et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **CIV DS 1 9 3 9 3 7 6**<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[X] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[X] monetary   b.[X] nonmonetary; declaratory or injunctive relief   c.[ ] punitive
4. Number of causes of action *(specify):* One (1)
5. This case [ ] is   [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 30, 2019

Scott J. Ferrell
*(TYPE OR PRINT NAME)*                                    *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

*LexisNexis® Automated California Judicial Council Forms*

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
    *case involves an uninsured*
    *motorist claim subject to*
    *arbitration, check this item*
    *instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
Product Liability *(not asbestos or*
    *toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil*
    *harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer*
      *or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
Insurance Coverage *(not provisionally*
    *complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent*
      *domain, landlord/tenant, or*
      *foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
    *drugs, check this item; otherwise,*
    *report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex*
    *case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-*
      *domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified*
    *above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-*
      *harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified*
    *above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

*LexisNexis® Automated California Judicial Council Forms*

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
GENESCO INC., a Tennessee corporation; and DOES 1-10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
LUIS LICEA, an individual,

| FOR COURT USE ONLY |
| --- |
| *(SOLO PARA USO DE LA CORTE)* |

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

**DEC 30 2019**

BY _____ *Daisy Bailon*
DAISY BAILON, DEPUTY

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
| --- | --- |
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO<br>San Bernardino District – Civil Division<br>247 West Third Street, San Bernardino, CA 92415-0210 | CASE NUMBER:<br>*(Número del Caso):*<br>CIV DS 1 9 3 9 3 7 6 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Scott J. Ferrell, Bar No. 202091
PACIFIC TRIAL ATTORNEYS, APC                                    Phone No.: (949) 706-6464
4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660

| DATE:<br>*(Fecha)* **DEC 30 2019** | Clerk, by<br>*(Secretario)* *Daisy Bailon* Daisy Bailon | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
         ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
| --- | --- | --- |
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov* |

*LexisNexis® Automated California Judicial Council Forms*

1

## <u>PROOF OF SERVICE</u>

2

    I am employed in Los Angeles County, California.  I am over the age of eighteen years

3

and not a party to the within-entitled action.  My business address is 11601 Wilshire Boulevard,
Suite 1400, Los Angeles, CA  90025-0509.  On September 8, 2020, I served a copy of the within

4

document(s):

5

### NOTICE OF REMOVAL

6

   ☑      by placing the document(s) listed above in a sealed envelope with postage

7

thereon fully prepaid, in the United States mail at Los Angeles, California
addressed as set forth below.

8

   ☐      by placing the document(s) listed above in a sealed  envelope and affixing

9

a pre-paid air bill, and causing the envelope to be delivered to a
**FEDERAL EXPRESS** agent for delivery.

10

   ☐      by personally delivering the document(s) listed above to the person(s) at

11

the address(es) set forth below.

12

   ☐      by causing to be personally delivered the document(s) listed above to the
person(s) at the address(es) set forth below.

13

   ☐      by transmitting via electronic mail the document(s) listed above to the

14

e-mail address(es) set forth below on this date before 5:00 p.m. and the
transmission was reported as complete and without error.

15

Scott J. Ferrell, Esq.               *Attorneys for Plaintiff*

16

Victoria C. Knowles, Esq.        LUIS LICEA
**PACIFIC TRIAL ATTORNEYS, APC**

17

4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660

18

Tel.: (949) 706-6464
Fax: (949) 706-6469

19

Email: sferrell@pacifictrialattorneys.com
       vknowles@pacifictrialattorneys.com

20

    I am readily familiar with the firm's practice of collection and processing correspondence

21

for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same
day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on

22

motion of the party served, service is presumed invalid if postal cancellation date or postage
meter date is more than one day after date of deposit for mailing in affidavit.

23

    I declare under penalty of perjury under the laws of the State of California that the above

24

is true and correct.

25

    Executed on September 8, 20200, at Los Angeles, California.

26

27

                  */s/Denise Walker*

28

                   Denise Walker

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES